FILED
DECEMBER 17, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

KC FILED
DEC 17 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| Shawnetta T. Graham | ) | United States District Court |
| Plaintiff, pro se | ) | Northern District of Illinois   DEC 17 2007 |
| -VS- | ) | |
| State of Illinois and the Illinois Department | ) | Civil Action #: _____ |
| Of Corrections | ) | |
| Defendant | ) | 07CV7078<br>JUDGE DER-YEGHIAYAN<br>MAGISTRATE JUDGE MASON |
| | ) | |
| | ) | |

## COMPLAINT

For unlawful discrimination and unlawful employment practice against the physical handicap

Allegation and Charges

About a <u>federal question</u>: United States Code Title 28 < Part IV> 1331

1. This is a complaint which addresses a <u>federal question</u> if in fact the defendant has violated the following <u>United States Civil Code Statues of Title 42</u>:

    (a) <u>Finding and Purpose</u>

    <u>Title 42 United States Code Chapter 126 > 12101</u>:

    (b) <u>Unlawful Employment Practice</u>

    <u>Title 42 United States Code Chapter 21 > Subchapter VI > 2000-e-2</u>:

    (c) <u>Equal Rights under the Law</u>

    <u>Title 42 United States Code Chapter 21 > Subchapter I > 1981</u>;

2. This is a complaint which addresses a <u>federal question</u> if in fact the defendant has violated the following <u>United States Federal Act</u>.

    (a) Americans with Disabilities Act of 1990

Sec. 12101 (section 2) – 5 the defendant has overprotective rules and policies and intentional exclusion.

1

Sec. 12102 (section 3) -2 a, b, & c the plaintiff has a major impairment which affected a major life activities which was walking and standing

Sec. 12111. (Section) subchapter (title 1) Employment

    (3) The plaintiff was not a direct threat to the safety of others

    (5a) the defendant has 20 or more employees in calendar weeks.

    (8) The plaintiff was a qualified individual with a disability

    (b) The Civil Rights Act of 1964: Title VII

Unlawful Employment Practices

Sec. 2000e-2 (Section 703)

    (a) Respect to terms, conditions and privileges of employment base on disability.

    (b) To limit, segregate, and classify base on disability

3. This is a <u>federal question</u> if in fact the defendant has violated the plaintiff rights and if this is true than the plaintiff should have the right to recover damages under the following United States Codes:

    (a)    <u>Civil Action for Deprivation</u>

United States Code Title 42 &lt;chapter 21&gt; Subchapter I 1983

    (b)    <u>Civil Rights and Elective Franchise</u>

United States Code Title 28 &lt; Part IV&gt; Chapter 85 1343

    (c)    <u>Proceeding in Vindication of Civil Rights</u>

United States Code Title 42 &lt;chapter 21&gt; Subchapter 1988

    (d)    <u>Damages in cases of intentional discrimination in Employment</u>

    <u>United States Code Title 42&lt;1981&gt; a</u>

4. This is a <u>federal question</u> if the facts that are stated in this complaint meet the <u>definition</u> of United States Civil Codes

    (a) Title 42 &lt;chapter 126&gt; subchapters II Part A&gt; 12131

    (b)    Title 42<chapter 126< subchapter > 12111

**Conspiracy to interfere with Civil Rights**

    (c)    Title 42 <chapter 21> subchapters I 1985

5.        **Brief Statement of Cause**

This violation occurred because of my disability. My disability occurred because of an on the job injury which caused me to have physical limitation and restriction. The defendant is being charged for failure to accommodate the plaintiff.

6.        **Plaintiff's Background**

The plaintiff, who is <u>Shawnetta T. Graham</u>, began her career with the Illinois Department of Corrections as a full time state employee in May of 1994. She started her career at Illinois Youth Center St. Charles, where she was a Library Technical Assistant. After about eight weeks at IYC St. Charles the plaintiff was transferred to Illinois Youth Center Valley View where she became a Library Associate. In July 2002 IYC Valley View was closed by former Governor Ryan. So, the plaintiff was transferred to Illinois Youth Center Warrenville. She began at IYC Warrenville in July 2002. At IYC Warrenville, Graham reported unusual incidents. (See Exhibit 1)

7.        **Introduction to Charge**

An Illinois Department of Human Rights Complaint was filed against the Illinois Department of Corrections in November 2004. (See Exhibit A) This complaint was filed against the department because of negligence towards the plaintiff in the work setting at Illinois Youth Center Warrenville. The charge was crossed filled with the United States Equal Opportunity Commission.

The action sought was to recover damages for lost of paid, everlasting physical and emotional damages, which have caused pain and suffering for the plaintiff.

The charges were dismissed by the Investigator Sandra Kelly who appeared not to understand the body and the issues of the complaint and given evidence. (See Exhibit B) So, I requested a review, from the Chief Legal Counsel of the Illinois Department of Human Rights. (See Exhibit C) The Chief Legal Counsel dismissed

3

the case as well. However, his decision was base on what appeared to be his choice of selective evidence. (See Exhibit D) The United States Equal Opportunity Commission adopted the findings of the Illinois Department of Human Rights. (See Exhibit E) The Illinois Department of Human Rights charges were developed with errors and was not corrected as the plaintiff requested. (See Exhibit F) So, a fact finding conference was scheduled. (See Exhibit G) When reviewing the charge Cynthia N. Miller race is noted as white and her race is African American. The plaintiff race was noted as black and on the complaint application the plaintiff notes her race as Mix-Breed; African Indian. (See Exhibit F) Some one called the plaintiff from the Illinois Department of Human Rights to tell the plaintiff that in the State of Illinois such a race selected does not exist. So, the plaintiff selected African Other to complete the application process. (See Exhibit F)

8.                    Statement of Jurisdiction

This case falls under Federal Civil Law and its nature is about discrimination in the employment setting and discrimination against the handicaps in the work setting The Americans with Disabilities Act of 1990 , signed into law by President Bush on July 26, 1990, was hailed as the most significant piece of civil rights legislation since the Civil Rights Act of 1964… and under this federal law, individuals with disabilities gained legal protections against discrimination …( See Employment Discrimination Second Edition Volume 9 Lexis Nexis). Also under United Stated Federal Laws qualify individual are protected. The United States Equal Employment Commission adopted a finding under a cross filing policy from the Illinois Department of Human Rights. EEOC mailed a letter of Dismissal and Notice of Rights which was dated September 21, 2007. (See Exhibit E) This letter stated I had ninety days to exercise my sue rights. This letter was signed by John P. Rowe, District Director. (See Exhibit E)

Authorized by 1983 and 1985 of title 42 is within Federal Court's Jurdiction is based on United States Law…District Court  have/had Federal question jurisdiction

over action brought under 1983 and had pendent jurisdiction over related State law claims (See 28 USCA 1331 Chapter 85 Note 417 page 301)

<u>Pro Se complaints</u> litigant properly involved Federal Question jurisdiction by attempting to plead a Federal Civil Rights Action under 1983... Courts must examine <u>Pro Se Civil Rights complaint</u> to see weather the fact alleged... (See USCA 28 1343 Note 50 page 466)

With all things said the United Stated District Court Northern District of Illinois Eastern Division at Chicago has jurisdiction under the law and by geographic.

9. <u>Statement of Facts of the beginning</u>

On January 06, 2004 I slipped on some ice near the garage at the Illinois Youth Center Warrenville. (See Exhibit H) The parking lot was not treated for the morning icy condition; there were neither salt nor sand on the parking lot foundation. I was walking from the garage because I checked out a tool. The tool was needed for a job assignment in the institution canteen. This injury became a new handicap for me, and it is called <u>Chondromalacia</u>. Due to the fact of the facility negligence, I sustain injuries to both knees. This was settled under the Illinois Workman Compensation Act. (See Exhibit J) This injury became a handicap, but I still had the <u>ability to work as a qualified individual with a disability (ADA Title 1; Definition Sec.12111 (Section 101) (8)</u>. All my duties as a Library Associate were done without bringing any undue hardship to my employer (ADA <u>Title1; Definition Sec.12111 (Section 101) (10) A & B ii, ii, iii & IV)</u>

10. <u>Statement of Facts for the beginning of the charges and injury</u>

My employer has all documentation of the incident and treatment for <u>Chondromalacia.</u> I have limitation and struggles, but I worked through them to continue my career working with trouble youths.

I was hirer from a list of job titles and which is a certified job title under Illinois Central Management Services. On July 01, 2004 I reported to work in the hiring job title of Library Associate. The assigned security was removed from the library area

after lunch time, and my supervisor Mrs. Cynthia N. Miller assigned me to the library security post which consists of securing the youth movements of the inner library area. The inner library area consist of classroom, two bathrooms, principal office, copy room, library area, library phone, and the library office. I was standing giving directional direct orders to youths and my "knees gave out" and this is a handicap called Chondromalacia. I was not near anything to hold myself up, and I was afraid. I manage to walk in a crunch position while making noises which represented and stated that I needed emergency assistant. When I entered into the facility the morning of July 1, 2004 I walked in a normal matter, and close to 1:00 o'clock in the p.m.; I had and abnormal walk. At that time, I needed mobile assistant from the nurse or any emergency medical assistant. (See Exhibit I)

11.     **Statement of Facts of the defendant wrong doing**

As I stood in front of my supervisor in a crunch position I tell her in a helpless matter that my knees gave out, and she just looked at me, and other staff did as well. At this time, I was denied the same privilege as others have received in an emergency medical situation on the facility grounds. We are trained annually on medical first responses. My supervisor was near a phone and she had a radio in her office. She stood by her secretary desk. At that time, the school secretary was Ms. Vivian Travis and she was near a phone as well. Neither one of them helped a fellow member of their department; therefore, I started walking in a crunch position to the nurses' station. On this day I was dressed in India/Pakistan garments.

Before I reached the nurses' station, I walk passed and area called the school desk. At the school desk it was a staff posted, and her name is La-Sonya Eggleston-Gillian. She had a radio, phone, and an intercom available. She did not help a fellow member of her work team. As I continued to walk in a crunch position to the nurses' station, two more staff who I have worked with daily and they both have witness my normal walking position. One person name is Tomeka Morman and the

other name Theodore Gargantiel both walked right passed me. Both were equipped with radios and neither called for medical assistant.

I manage to walk in a crunched position to the nurses' station and I gave myself a rub stimulation treatment as I sat in a chair near the nurse. After the hand therapy, I was able to stand straight-up. Nurse Middleton did not examine me in a matter that a medical professional of Orthopedic or Podiatrist. Nurse Carolyn Middleton did not put her hands on the injuried area at anytime while I was at the nurses' station. She boldly told me that their main job was to care for the female youths and not the employees. I continue my days work which was to take a bulletin board display material off the wall in the facility canteen area. I sat in a chair while the female youths removed the items. When I returned to my office, I completed a notification of absent slip and I selected service connective time for the next work day.

12.     **Statement of Facts for Medical Treatment of injury**

That evening July 01, 2004 I went to see the Chiropractic who is Dr. Lindstrom who has many years of experience and he belongs to some Chiropractic Professional Association. (See Exhibit J) He referred me to the orthopedic doctor. Since Dr. Lindstrom referred me to a specialist , I went on my intermission to stay at home and called in on the next work day as service connective and sick personal to cover me in a dispute over a job injury with an unauthorized absent. (See Exhibit J)

On July 19, 2004 I had a doctor visit with Dr. Bartel of Fox Valley Orthopedic Institute he ordered a MRI of both knees and water therapy. The MRI was done on July 27, 2004 and this report proves that my handicap is <u>Chondromalacia</u>. (See Exhibit K) This condition can occurred all of a sudden and without warning, and the person can not walk in a normal matter as a human being has in the history of mankind. Dr. Bartel ordered me to wear knee supports. (See Exhibit K) His nurse made sure I had them and I still use them today.

On August 18, 2004 I was called in a meeting with Mrs. Cynthia N. Miller and Assistant Warden Mendoza. The subject of the meeting was about workman compensation packages, and injuries on the job, and making up injuries. In this meeting Miller referred to me as a nuisance. As I sat their in Miller's office my ankles continued to hurt. So, I went to Dreyer Clinic Walk-In-Care that evening on August 18, 2004. The treating doctor ordered an X-ray on both ankles. The treating doctor ordered me to take some medication and sent me to work with a doctor statement. (See Exhibit L)

My ankles continued to hurt and they were swollen. So, I went to see Dr. Lyon of Lyon Foot and Ankle Clinic on August 23, 2004, and she ordered a MRI of both ankles. Also, she ordered physical therapy. (See Exhibit M)

13.     **Statement of Facts on Employment Discrimination**

On August 24, 2004 I reported to work and I worked the entire day and at the end of the day my supervisor Cynthia N. Miller asked me to signed a prepared statement which stated I was going on a medical leave. I explained to her that I did not have an opportunity to get union representation, and I was not comfortable signing a document that I did not prepare by myself or agreed with. I asked if she could give me a chance to seek a lawyer advice and speak to and have a union representative. (See Exhibit N)

The morning of August 25, 2004, I was called into a meeting with Youth Supervisor Tesh, and my supervisor Cynthia N. Miller. (See Exhibit O) Mrs. Miller led the conversation that discussed the rules and regulation of the Illinois Department of Corrections on their hirer employees working with medical restriction, medical issues, limitation, disability, or handicaps at any facility. Mrs. Cynthia N. Miller presented me with a fax copy of the administrative directive 03-02-215 ( See Exhibit P), and she handed me a copy of the administrative directive which stated that all Illinois Department of Corrections Employee must walk and stand for at least 60 minutes. When reading Administrative Directive 03-02-215, it does not state the 60 minutes walking or standing requirement. Such a directive is separate from A.D. 03-

02-215. This directive which is A. D.03-02-215 has <u>intentional exclusion pretexts</u> that states that an employee of the Illinois Department of Corrections can work for 90 days with a physical limitation and restriction. (See Exhibit P)

The meeting continued with Mrs. Cynthia N. Miller telling me if I did not leave voluntarily they would have to call the authority. I explained to Mrs. Miller that I did the same job the other day with the same medical limitation. I asked if I had any other time on the books that I could used to cover me for the day. I had already use up my sick-time benefits. Mrs. Miller stated that I had nothing available, and as soon as I get time I used it. Mr. Tesh asked if I had anything I could use to cover the time. (See Exhibit O) Miller answer no, she stated the only time available to me was dock-time. Most of the time dock-time leads to an administrative disciplinary hearing facing discharge.

14.  <u>Statement of Facts on Force Medical Leave Statement</u>

Mrs. Cynthia N. Miller stated that I needed to prepare and write a statement stating that I am requesting a medical leave. Mrs. Cynthia N. Miller stated this would cover me from unauthorized absence. Mrs. Cynthia N. Miller stated that if I did not prepare the statement and I walk out the gate without the statement in her hands it would be considered an unauthorized absent for any days that I did not report to work. An unauthorized absent can lead to a disciplinary hearing facing discharge. Therefore, I wrote a statement stating that I was asked to go on a medical leave, because of Illinois Department of Corrections rules and regulation of their employee working with medical restriction and limitation on the facility grounds. Also, on this incident I telephoned the President of the Local Union, Jan Bradley, who confirmed that I should write the statement for protection from discharge or a hearing.

As I sat in my office and prepared the statement Mrs. Cynthia N. Miller called me and said are you finish, because you need to leave grounds. I explained to her, that I have a learning disability and I needed to lookup hard to spell words and read my document a couple of times before I handed to her. I asked her if she could give me

9

a little more time than others who have been in the same situation, but did not have writing and a learning struggle as I. I left grounds about 11:00 am, I did not fill out a notification of absent, but I did do the force medical leave statement and handed it to Mrs. Cynthia N. Miller as she ordered. (See Exhibit Q)

15.     **Statement of Facts of additional medical treatment**

The evening of August 25, 2004, I had an appointment with Dr. Lyons, and she ordered an ultra-sound of both ankles and sent me back to work with new limitations in a medical note. This doctor statement complied with the Illinois Department of Corrections Administrative Directive on employee working with medical limitation and medical restriction, which states that all employees must walk or stand at least 60 minutes. (See Exhibit M)

16.     **Statement of Facts for the return to work**

On August 26, 2004 at 8:00 am I came to work with a new statement that compiled with the Illinois Department of Corrections rules and regulation on their employee working on facility grounds with medical limitation and medical restriction. (See Exhibit M) This medical note stated I could walk and stand up to 60 minutes. I walked towards the facility entrance gate and I buzzed the gate to order entrance and the Youth Supervisor who was on duty hesitated to buzz me in. So, I stood their patiently. After a few minutes, I was allowed into the control area, but my keys were not issue to me like other mornings. The youth supervisor called Mrs. Cynthia N. Miller over the facility intercom. It appeared that the Youth Supervisor told Mrs. Cynthia N. Miller I was on grounds. In a few minutes Mrs. Cynthia N. Miller was present at the control area, and I presented her with a new doctor statement from Dr. Lyon. After careful review of the statement, Mrs. Cynthia N. Miller told the on duty youth supervisor to give me my keys. After my keys were granted to me, I walked to my immediate work area and started my days work

10

On August 26, 2004 I was called into another meeting with YSII Daryl Tesh and Cynthia N. Miller. I was presented another statement which stated the following: If I could not walk or stand for 60 minutes I would leave grounds (See Exhibit R)
On September 09, 2004 I presented Mrs. Cynthia N. Miller with a statement from Dr. Lyon which stated I was going on a short medical leave and will be recovering at home. (See Exhibit P) After someone spoke to my doctor on September 09, 2004 Mrs. Cynthia N. Miller called me into her office with Youth Supervisor Mathis. (See Exhibit S) Mrs. Cynthia N. Miller stated that my doctor had fax over a statement, which stated my medical leave started immediately. Therefore, Mrs. Cynthia N. Miller let me use vacation time to cover the force medical leave situation. Apparently, it was a mix-up with the treating doctors, so I reported back to work the next business day with a physician statement and the doctor order me to wear Cam-Walkers. (See Exhibit T) I had a total of five physical statements for Dr. Lyon office. (See Exhibit T)


17.         Statement of Facts of Physical damages

After Dr. Lyon medical findings were completed she sent me to work with Cam-Walkers on both feet, she ordered weekly ultra-sound treatment, my feet were wrapped by her nurses for heal and pain support. One of the feet was wrapped in a soft cast. Then she ordered her nurses to take molds of my feet for permanent orthopedic support in my shoes. Also, she completed a form for the Illinois Secretary of State for a handicap driver's plate. (See Exhibit U)
It was granted and I drove to work with Cam-Walkers on both feet until Dr. Lyon order me not to wear them. I continued to work with limitation, and Dr. Lyon did not complete the physician statement for a medical leave but referred me to the neurologist for nerve damage testing. The neurologist order some test. (See Exhibit V)
I continued to work and I parked in the facility handicap parking space. Currently, I have to wear orthopedic shoe support full time or I will walk with a limp. I have permanent flat feet because of the incident on July 01, 2004. It is December 2007

11

and the injuries to my knees and my foot and ankle are still present. This is an <u>everlasting impairment.</u> (See Exhibit W) Dr Misty McNeill doctor, a doctor in Dr. Lyon general practice, statement states that my ankle injury may have been aggravated by her knee injury. (See Exhibit X)

18.  <u>Statement of Facts of fail union grievance with summary of incidents</u>

After a fail union grievance hearing about the situation, which was on October 13, 2004, and the following individuals were present were Sandi Ivemeyer, Cynthia N, Miller, and Kathy Weaver. (See Exhibit Y) I addressed in the grievance hearing that I felt like my <u>Bill of Rights</u> were <u>violated</u> in the employment setting. So, I decided to take the issue out of the facility to a higher jurisdiction who knew the law. The relief I sought in the grievance was simple it was for lost of pay. I was docked for 5 hours on August 25, 2004 and I did have available vacation benefit time. (See Exhibit Z) I was not allowed to use the other benefit time like other employee have done in my department. When reviewing my time sheet, I had two days of vacation and 3 hours of vacation. (See Exhibit Z) I was sent home on September 09, 2004 and was allowed to use vacation benefit time that was available. (See Exhibit AA) My doctor ordered me to wear Cam-Walker which is an orthopedic shoe boot. (See Exhibit BB) On August 25, 2004 I was told I had no time to cover the hours, and I was docked 5 hours (See Exhibit AA)

19.  <u>Statement of Facts of Administration Agency Remedies</u>

After reviewing all incidents I decided to file a complaint against the Illinois Department of Corrections for a violation of my Human Rights. (See Exhibit A) My completed complaint application against the Illinois Department of Corrections was for <u>failure to accommodate</u> and not providing me with emergency medical treatment on July 01, 2004 and failure to accommodate me by forcing me to take a medical leave on August 25, 2004 and September 09, 2004, and lost of pay with cost and suffering. (See Exhibit A)

12

After the investigation, a fact finding conference was schedule, and the date of the fact finding conference was September 14, 2005 at 11:00 am. (See Exhibit G) Present at conference was Sandra Kelly, Cynthia N. Miller, and Janet Richmond and I. The investigator was Ms. Sandra Kelly and at the fact finding conference Mrs. Cynthia N. Miller stated in front of the investigator that," she did not called for medical assistant because I did not hit the floor. If in fact I would have hit the floor she would have called for medical assistant." Investigator Sandra Kelly appeared not to understand the incident of the charges. Investigator Sandra Kelly dismissed the charges, so I requested a review by the Chief Legal Counsel of the Illinois Department of Human Rights. (See Exhibit C) Once the Chief Legal counsel completed his investigation he ruled on a foot and ankle injury. (See Exhibit D) The case was dismissed by the Chief Legal Counsel. Investigator Sandra Kelly dismissal noticed stated a lack of substantial evidence for count A and for count B and C lack of jurisdiction. (See Exhibit B) The Chief Legal Counsel Final Ordered sustained the ruling of Investigator Sandra Kelly dismissal notice. (See Exhibit D) The United State Equal Opportunity Commission <u>adopted</u> their finding. The Illinois Department of Human Rights did not investigate the charge properly. <u>Therefore, I am asking the United State District Court Northern District of Illinois Eastern Division in Chicago to rule in my favor because after further investigation Illinois Department of Corrections did not have a directive that states that all employees have to walk and stand for 60 minutes.</u>

20.    <u>Statement of Facts of Unlawful Employment Practices</u>
Such behavior of the defendant is <u>Unlawful Employment Practices</u>. Such an unlawful practices, is a violation of <u>United States Federal Laws.</u> It appeared Mrs. Cynthia N. Miller presented a document that did not exist. (See Exhibit 2)
This occurred in the <u>Summer of 2004</u> and another employee in my department was using crutches and she was not walked off grounds or forced to go on a medical leave because of physical restriction. This employee name is Denise Papiech, and she was not presented such a statement, only I. I here by request a review of the complaint that the Illinois Department of Corrections violated <u>The Americans with</u>

13

Disability Act of 1990 and The Civil Right Act of 1964; Title VII on July 01, 2004 and August 25, 2004. On July 01, 2004 I was not accommodate with emergency medical assistant and on August 25, 2004 I was forced to take a medical leave of absent and lost wages where I was docked for 5 hours. On August 25, 2004 I was presented a policy which appears to be falsified. This policy stated all employees must walk and stand for at least sixty minutes. I am requesting that the Illinois Department of Corrections forward a copy of this policy to the United States District Court of Northern District of Illinois as it exist on August 25, 2004.

21.              Relief Sought for Enforcement

I am asking for the United States District Court of the Northern District of Illinois to reverse the decision of the EEOC which was to adopt the findings of the investigation of The Illinois Department of Human Rights. I am requesting that the courts order that EEOC to apply the following: Sec. 2000e-5 (Section 706) which is Enforcement Provisions and use their Investigatory Powers (Sec. 2000e-) and (Section 710). I am requesting that EEOC to due their own investigation and I asking that the United States District Court of The Northern District of Illinois to review the Illinois Department of Human Rights Complaint application which was mail to their agency in November 2004 and cross file with EEOC? (See Exhibit A)

22.              Relief Sought for Consideration

I am asking that the United States District Court of the Northern District of Illinois to take consideration of the Affidavit from Assistant Attorney General Ann C. Chalstrom as testimonial evidence (Black Law 8th Edition pages 600, yr. 2004) which has caused a reasonable doubt (Black Law 8th Edition pages 1293-1294, yr 2004) if in fact the Chief Legal Counsel Final Order was base on the entire investigator records. (See Exhibit EE)

14

23.                    Relief Sought for Recovery

The <u>first precise relief sought</u> is $ 200,000 for pain and suffering, stress, and long term physical impairment, time, cost, and violation of Rights under U.S. Code listed in this complaint. The <u>second precise relief sought</u> is repayment of dock time which is 5 hours This has been figure to the best of my knowledge to be the gross sum $<u>116.63</u>. (See Exhibit CC) The <u>third precise relief sought</u> is to restore the days of service connective time which I was denied into a cash payment. I should have been granted 5 days service connective benefit time for the incident on July 01, 2004. I used my own time to recuperate and for doctor appointments and physical therapy. I am requesting for these days to be liquidated into cash base on the rate of pay for the salary year of 2004. The 5 days is base on the gross payment in 2004 which totals $ <u>874.90</u>. (See Exhibit CC) The total settlement amount is $ <u>200,991.53.</u> In the fiscal year of 2005 which began on July 1, 2004 and ran through June 30, 2005, the total amount of General Revenue employees of Illinois Department of Corrections were <u>13,670</u>. (See www.idoc.state.il.us)


24.                          PRAYER

The Plaintiff is praying that the United States District Court honors her relief sought in this complaint. The Plaintiff is requesting a verdict from a presiding <u>Federal Judge</u>. The Plaintiff <u>does not</u> want a jury trial among her peers.

*Shawnetta T. Graham* 12/17/07

Shawnetta T. Graham,  Pro Se
1101 Assell Ave.
Aurora, IL 60505
630-709-7165

## U. S. District Court Northern District of Illinois Eastern Division at Chicago

### Notice of Filing

This serves as notification to the <u>defendant</u> that I will be filing a complaint in the U.S. District Court in the Northern District of Illinois Eastern Division at Chicago.

I <u>Shawnetta T. Graham</u>, being first duly sworn on oaths, states that she has served two copies of the attached complaint upon each person name below the __17th__ day of <u>December</u>, in the year of <u>2007</u>, in the manner indicated below.

( ) hand delivers　　　　( ) first class mail　　　　(X) certified mail

Vickie Fair
Illinois Department of Correction
James R. Thompson Center
100 West Randolph Street
Suite 400-2
Chicago, Illinois 60601

Illinois Attorney General
Lisa Madigan
100 West Randolph Street
12th floor
Chicago, Illinois 60601

### Affidavit of Service

Plaintiff: _Shawnetta T. Graham_
Shawnetta T. Graham
1101 Assell Ave.
Aurora, Illinois 60505

Subscribed and sworn before me this day __15__ of December 2007
Notary Public: _Kimberly A Rygiewicz_　date: __12-15-07__
SEAL:

OFFICIAL SEAL
KIMBERLY A RYGIEWICZ
Notary Public - State of Illinois
My Commission Expires Mar 29, 2009

## U. S. District Court Northern District of Illinois Eastern Division at Chicago

### Notice of Filing

This serves as notification to the <u>defendant</u> that I will be filing a complaint in the U.S. District Court in the Northern District of Illinois Eastern Division at Chicago.

I <u>Shawnetta T. Graham</u>, being first duly sworn on oaths, states that she has served two copies of the attached complaint upon each person name below the _17<sup>th</sup>_ day of <u>December</u>, in the year of <u>2007</u>, in the manner indicated below.

( ) hand delivers    ( ) first class mail    (X) certified mail

Vickie Fair
Illinois Department of Correction
James R. Thompson Center
100 West Randolph Street
Suite 400-2
Chicago, Illinois 60601

Illinois Attorney General
Lisa Madigan
100 West Randolph Street
12<sup>th</sup> floor
Chicago, Illinois 60601

### Affidavit of Service

Plaintiff: *[signature]*
Shawnetta T. Graham
1101 Assell Ave.
Aurora, Illinois 60505

Subscribed and sworn before me this day _15_ of December 2007
Notary Public: *[signature]* date: _12-15-07_
SEAL:

OFFICIAL SEAL
KIMBERLY A RYGIEWICZ
Notary Public - State of Illinois
My Commission Expires Mar 29, 2009

16