IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAWNETTA T. GRAHAM, ) | |
| ) | |
| Plaintiff, ) | Case No. 07 C 7078 |
| v. ) | |
| ) | Hon. Samuel Der-Yeghiayan |
| STATE OF ILLINOIS, ) | |
| DEPARTMENT OF ) | |
| CORRECTIONS, ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF THEIR MOTION TO DISMISS**

NOW COMES the Defendants, ILLINOIS DEPARTMENT OF CORRECTIONS ("IDOC") and the STATE OF ILLINOIS (collectively referred to as "Defendants") by and through their attorney, LISA MADIGAN, Illinois Attorney General and Assistant Attorney General, COLETTE A. WALSH, and for their memorandum in support of their Motion to Dismiss, states as follows:

**I. LEGAL STANDARD FOR A 12(b) MOTION TO DISMISS**

A court may grant a motion to dismiss only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Cushing v. City of Chicago, 3 F.3d 1156, 1159 (7th Cir. 1993). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a case will be dismissed if the court lacks the statutory authority to hear and decide the dispute. Fed.R.Civ.P. 12(b)(1). In reviewing a Rule 12(b)(1) motion to dismiss, the Court may look beyond the complaint and review any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists. United Transp. Union v. Gateway Western R.R. Co., 78 F.3d 1208, 1210 (7th Cir.1996). When a defendant moves for dismissal pursuant to 12(b)(1), the plaintiff bears the heavy burden of demonstrating that the court has

subject matter jurisdiction. Rogers v. Sugar Tree Prod., 7 F.3d 577, 581 (7th Cir.1993); Grafon Corp. v. Hausermann, 602 F.2d 781, 783 (7th Cir.1979).

The purpose of a Motion to Dismiss under 12(b)(6) of the Federal Rules of Civil Procedure is to test the sufficiency of the Complaint, not the merits of the lawsuit. Triad Associates, Inc. v. Chicago Housing Authority, 892 F.2d 583, 586 (7th Cir. 1989). Notwithstanding the "simplified notice pleading" requirement of the Federal Rules of Civil Procedure, dismissal is proper if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99 (1957). Defendant is mindful that this Court must view the Plaintiff's allegations in the light most favorable to the Plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683 (1974). When considering a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the complaint and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiff. Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1324 (7th Cir. 1994). For purposes of this motion to dismiss only, plaintiff's well-pleaded allegations are taken as true and are cited to accordingly.

## II. INTRODUCTORY FACTS

Plaintiff, Shawnetta Graham, purports to bring the instant action under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII") , 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 and 42 U.S.C. § 12131. (Complaint[1] P. 1-4) Plaintiff's self-identifies her race as "mixed breed" claiming American Indian as well as African descent. (Id. at 3) Plaintiff was hired by the Illinois Department of Corrections ("IDOC") on or around May 1994. (Id.) Since July 2002, Plaintiff has been employed as a Library Associate at the Illinois Youth Center – Warrenville, a juvenile corrections facility. (Id.) On or around

---
[1] "Complaint" references Plaintiff's Complaint filed on December 17, 2007.

January 6, 2004, Plaintiff slipped on the ice at her place of employment. (Id. at 5) Because of this accident, Plaintiff filed a claim under the Illinois Workers' Compensation Act and on June 29, 2005, Plaintiff and her employer settled her claim. (Id at. 5: Plaintiff's Exhibit H[2]) On or around June 1, 2004, Plaintiff states her knees "gave out," she was forced to walk in a "crunched position" and that her co-worker/manager refused to provide her with medical assistance. (Complaint P. 5-6) Plaintiff claims that on August 18, 2004, she was making copies and experienced pain in her ankles. The same day she sought medical treatment and Plaintiff returned to work with a note stating that she needed to avoid prolonged standing and walking. (Id. at 8: Plaintiff's Exhibit L) After seeking additional medical treatment, Plaintiff reported to work on August 24, 2004 with a doctor's note that stated that Plaintiff could not walk or stand for more than five minutes while at work and she was to remain seated, except to make copies. (Complaint P. 8: Plaintiff's Exhibit M - August 23, 2004 doctor's note) Plaintiff claims that at the end of her work day, her supervisor Cynthia Miller approached her and informed her that Plaintiff would be required to go on an unpaid medical leave due to the restrictions. (Complaint P. 8) Plaintiff refused to agree to go on an unpaid medical leave without having a union representative present. (Id.) On August 24, 2004, Plaintiff returned to work, and with her union representative present, was told that she must go on a leave of absence until her physician cleared her to work with fewer restrictions. (Id. at 8-9) On August 25, 2004, Plaintiff provided a less restrictive statement from her physician stating that Plaintiff was restricted from standing or walking for more than an hour at a time. (Id. at 15: Exhibit M – August 25, 2004 doctor's note) Plaintiff was allowed to return to work with the lesser restrictions. (Complaint P.10) On November 18, 2004, Plaintiff's physician cleared to her to return to work with no restrictions

---

[2] For the Court's convenience, Defendants attach Plaintiff's Complaint exhibits that are referenced herein. Although Plaintiff filed un-redacted copies of exhibits to her complaint, Defense counsel has filed the documents with redactions made to Plaintiff's personal identifiers.

3

noting that Plaintiff no longer experienced any pain.  (Complaint P. 11: Exhibit T – November 18, 2004 doctor's statement)  On November 14, 2004, Plaintiff filed her charge of discrimination (perfected on February 4, 2005) that alleged violations of Title VII and a failure to accommodate under the ADA. (Plaintiff's Exhibits A, E, F)

### III. ARGUMENT

**A. Defendants are Immune from Suit Under 42 U.S.C. §1981, 42 U.S.C. §1985, 42 U.S.C. §1985 and Any Action Plaintiff Claims is Based on These Statutes Must be Dismissed.**

Defendants acknowledge that Plaintiff asserts many "factual" allegations in her complaint.  However Plaintiff failed to identify which of her facts support her assertion that this matter can be pursued under Sections 1981, 1983 and 1985. Instead of hypothesizing which of the numerous "facts" apply to her claims under these statutes, Defendant moves to dismiss any or all claims that could be based on these statutes by other dispositive means.   Namely that, (1) sovereign immunity bars Plaintiff's claim against the State of Illinois and the Illinois Department of Corrections ("IDOC") under all three statutes and (2) Plaintiff's claims are time barred.

Under the Eleventh Amendment, the state and its agencies are immune from private damages actions or a suit for injunctive relief in federal courts unless the state, by unequivocal language, waives the protections of the Eleventh Amendment or Congress unequivocally abrogates the state's Eleventh Amendment immunity.  Kroll v. Board of Trustees of the University of Illinois, 934 F.2d 904, 907 (7th Cir. 1991).  Defendants, State of Illinois and the Illinois Department of Corrections ("IDOC") an agency of the State of Illinois, enjoy the Eleventh Amendment's immunity to the same extent as the state itself.  See 20 ILCS §5/5-15 (West 2000).  Furthermore, Congress has not expressly conveyed an unequivocal intent to abrogate the state's immunity under Sections 1981 or 1983.  Perkins v. Board of Trustees of

4

University of Illinois, 1996 WL 308292, at *1 (N.D. Ill. 1996) (Section 1981); Rodenbeck v. State of Ind. Leaking Underground Storage Tank Div. of Dept. of Environ. Mgmt., 742 F.Supp. 1442, 1445 (N.D. Ind. 1990) (Section 1983).

Both the Seventh Circuit and the Northern District of Illinois have explicitly held that a state cannot be sued under 42 U.S.C. §1981. See Rucker v. Higher Educational Aids Board, 669 F.2d 1179, 1184 (7th Cir. 1982); see also Winters v. Office of the President of Iowa State University, 1990 WL 103241 (N.D.Ill. 1990). Additionally, the State cannot be sued under 42 U.S.C. §1985. Naguib v. Illinois Dept. of Professional Regulation, 986 F.Supp. 1082, 1092 (N.D.Ill.,1997).

Further, in Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court held that a state is not a "person" for purposes of Section 1983. Therefore, the state cannot be sued in its own name. This reasoning also applies to arms of the state, such as state agencies. Id. at pg. 70. Thus, Plaintiff's Section 1981, 1983 and 1985 claims against Defendants, State of Illinois and IDOC should be dismissed, with prejudice, because the State of Illinois and IDOC are not amenable to suit under these sections.

Even if the Court finds Plaintiff's claims against Defendants under, 42 U.S.C. §1983 and 42 U.S.C. §1985 are not barred by sovereign immunity, Plaintiff pleads herself out of court. The Seventh Circuit allows a statute of limitations affirmative defense to be considered on a motion to dismiss where the defect appears on the face of the complaint. See Wright & Miller, Federal Practice and Procedure, Section 1357 at 607-08 (courts generally); Butcher v. United Electric Coal Co., 174 F.2d 1003, 1005-06 (7th Cir.1949); see also Wright & Miller, Section 1277 at 330-32. In Illinois, the statute of limitations period for actions based on 42 U.S.C. § 1983 and 42 U.S.C. § 1985 is two years. Sanders v. Venture Stores, Inc., 56 F.3d 771, 775 n. 2 (7th Cir.1995)

(two-year statute of limitations is applicable to section 1985 claims arising in Illinois); Kelly v. City of Chi., 4 F.3d 509, 511 (7th Cir.1993) ("[S]ection 1983 claims arising in Illinois are governed by a two-year statute of limitations.")

Plaintiff claims that the events in her complaint occurred in 2004. Namely, that on July 1, 2004 she was not provided medical assistance at work and that on or around August 25, 2004 she was forced to take a medical leave of absence. (Complaint P. 8-9 & 13-14). Plaintiff admittedly states that she believe her rights were violated and accordingly filed a complaint with the Illinois Department of Human rights on or around November 2004. (Id. at 12: Plaintiff's Exhibits A,E, F). Therefore, Plaintiff had two years from the time she believed her rights were violated to file a lawsuit under 42 U.S.C. §1983 or 42 U.S.C. §1985. Indisputably, November 2006 was the latest Plaintiff could have filed her claims under these statutes. Plaintiff filed her lawsuit on December 17, 2007; one year after the statute of limitations ran. Therefore, Plaintiff's Section 1983 and 1985 claims against Defendants, State of Illinois and IDOC should be dismissed, with prejudice.

    **B.**    **The State of Illinois is not Plaintiff's Employer as Defined Under Title VII or The ADA, and Cannot Be Sued Under the Statutes.**

Even though Plaintiff has failed to assert any facts against the State of Illinois and merely name the State in the case caption, Plaintiff purports to bring her Title VII and ADA claims against the State of Illinois. However, only "employers" are liable under Title VII and the ADA. 42 U.S.C. § 2000e2(a)(1); 2000e(b)(Definition under Title VII), 42 U.S.C. ' 12111(Definition under the ADA). The definition of employer is virtually the same under Title VII, the ADA, and the ADEA. Cheng v. Benson, 358 F.Supp.2d 696, 699 (N.D. Ill. 2005) (*citing* Williams v. Banning, 72 F.3d 552, 553 (7th Cir. 1995)). Therefore, only "employers" can be liable under the ADA and Title VII.

6

The Seventh Circuit has analyzed the issue of who is an employer when the state is named as a defendant in a discrimination case and has determined that the employer is generally the particular state or local agency. While the definition of employer includes both "governments" and governmental agencies" the Seventh Circuit "has held with little discussion that plaintiffs suing state government under Title VII must name as a defendant the particular agency rather than the state." Williams v. Doyle, 494 F.Supp.2d 1019,1028 (W.D. Wisc. 2007) *citing* Holman v. Indiana, 211 F.3d 399, 401 n. 1 (7th Cir.2000); Hearne v. Board of Education of City of Chicago, 185 F.3d 770, 777 (7th Cir.1999). *See also* EEOC v. State of Illinois, 69 F.3d 167, 171-72 (7th Cir. 1995) (finding that local school districts, not the State of Illinois, are the "employers" of public school teachers in Illinois for the purposes of Title VII) Because the definition of employers is virtually identical, the same interpretation should be give for Plaintiff's claims under the ADA.

In sum, because the State of Illinois is not Plaintiff's employer, it should be dismissed from this litigation.

**C.     Plaintiff's Title VII Claims Against IDOC Must be Dismissed for Failure to State a Claim Under Title VII**

Despite Plaintiff's 16- page complaint filled with numerous facts, Plaintiff fails to provide any facts from which relief under Title VII may be granted. Plaintiff states that she brings this claim under Title VII to redress disability discrimination. (Complaint P. 2) However, Title VII makes is unlawful for an employer "to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) It is the Americans with Disabilities Act that protects individuals with disabilities, not Title VII. If Plaintiff contends that her employer violated Title VII, she must give her employer notice of

7

what the claim is and what grounds it rests upon. Fed.Rules Civ.Proc.Rules 8(a)(2), 12(b)(6), 28 U.S.C.A.   Plaintiff has failed to allege any facts beyond the facts related to her "disability." Because Plaintiff has failed to plead any facts to support a claim under Title VII, Defendants are entitled to dismissal of her Title VII claim.

### D. Plaintiff's ADA Claim Must Be Dismissed

In an attempt to support her claim Plaintiff has pled facts in excess of the required "notice pleading" standards.  Yet, instead of support her claim, Plaintiff has pled facts sufficient to show that her claim of failure to accommodate is "otherwise without merit, [and she] has pled [herself] out of court."  Tregenza v. Great Am. Comm. Co., 12 F.3d 717, 718 (7th Cir.1993).  A Plaintiff must be disabled as defined under the ADA in order to have its protection.  Weiler v. Household Finance Corp., 101 F.3d 519, 523 (7th Cir.1996); *See also* Homeyer v. Stanley Tulchin Assoc., 91 F.3d 959, 961 (7th Cir.1996).  "The Act is not a general protection of medically afflicted persons."  Christian v. St. Anthony Med. Ctr., Inc., 117 F.3d 1051, 1053 (7th Cir.1997)  Plaintiff's pleadings establish that she is not disabled as defined by the ADA.

The definition of disability under the ADA is (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. (42 U.S.C. § 12102(2)). The EEOC regulations interpret the definition of "major life activities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i)

The language of the ADA  requires that in order to demonstrate a "substantial limit" on a major life activity, courts are to consider: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long term impact or

8

the expected long term impact of or resulting from the impairment. *See* 29 C.F.R. ' 1630.2(j)(2). The use of the word "and" between elements two and three of the disability analysis indicates a clear intent that an individual seeking the protection of the ADA meet both of those elements before being cloaked in the ADA's protection.

  **a.**  **Plaintiff has established that she is  disabled as defined under the ADA**

Plaintiff's numerous cited facts support Defendants' position that rather than pleading a claim under the ADA, Plaintiff has established that she is not defined as disabled under the ADA and that one or more major life activities were not substantially limited.

Throughout her Complaint, Plaintiff has established that *despite* her impairments, she continued to perform the major life activity of working. (Complaint P. 5, 9, 10, 11)  One of the factors the Court is to consider when determining whether an impairment substantially limits a major life activity is the duration or expected duration of the impairment, which excludes temporary conditions. *See* Matthews v. Commonwealth Edison Co., 128 F.3d 1194, 1197 (7th Cir. 1997) (holding that "the temporarily disabled are not protected by the Americans with Disabilities Act.") Waggoner v. Olin Corporation, 169 F.3d 481, 484 (7th Cir. 1999) (holding that "Disability does not include temporary medical conditions.")**;** Lester v. Trans World Airlines, Inc., 1997 WL 417814 (N.D.Ill. 1997) (collecting cases); Brown v. Northern Trust Bank, 1997 WL 543098 at *5 (N.D.Ill. Sept. 2, 1997) (holding that the plaintiff's three to six month "major depression" was not a disability).  Plaintiff claims that although "[she] has limitation [SIC] and struggles, but [she] worked through them to continue her career working with trouble [SIC] youths." (Complaint P. 5) Plaintiff claims that she would not have taken any time off from work but that her employer "forced" her to take medical leave.  (Id. at 12) Plaintiff's first "forced" medical leave of five hours occurred on August 25, 2004. (Id. at 15)

9

Plaintiff's second "forced" medical leave occurred on or around September 9, 2004, and lasted no more than five days. (Id.)  Simply put, Plaintiff's claim of a total of six missed work days does not and cannot constitute a substantial impairment of working as defined under the ADA.

Plaintiff pleads that she has an "everlasting impairment" of knee and ankle injuries. (Id. at 12) Plaintiff states she continues to wear knee supports. (Id. at. 7)  Further, Plaintiff claims that unless she wears her orthopedic shoes, she would walk with a limp. (Id. at 11)  But an impairment which "'affect[s]' major life activities does not rise to the level of substantially limiting them. Indeed, if the standard set forth by the ADA for a disability were merely that the impairment affected a major life activity from time to time, the number of impairments covered by the ADA were be infinite." Nausda v. Tootsies Rolls Indus. Inc., 2003 WL 1873519 *3 (N.D. Ill. April 15, 2003).  Plaintiff claims that she "cannot walk in a normal matter as a human being has in the history of mankind." (Id. at 7) However, Plaintiff's use of her doctor's statements in an attempt to support that she was affected in the major life activity of "walking" actually proves the opposite. (Id. at. 6)  Plaintiff references Exhibit T to support the assertion of the limitations placed upon her by her doctor.  However, Plaintiff's November 18, 2004 doctor's statement shows that Plaintiff experienced "no pain", and that she was "recovered" and no limitations of standing, lifting, climbing, bending, sitting, walking or stopping among others. (Exhibit T, November 18, 2004)

Even at this early stage, Plaintiff's pleadings prove that she was not "disabled" as defined under the ADA and as such her claim of a failure to accommodate under the ADA must be dismissed.

### b. Plaintiff Has failed to Plead Cognizable Claims Under the ADA and Plaintiff Has Pled That her Employer Provided Accommodations

Even if this court determined that Plaintiff has pled sufficient facts to survive a motion to dismiss on the threshold issue of whether or not she is disabled, Plaintiff's claim is one of an issue of workers' compensation benefits and Plaintiff established that Defendant, IDOC, accommodated her restrictions.

Plaintiff claims that Defendants' "wrong doing" includes a failure to provide medical attention on July 1, 2004 and two "forced medical leaves." (Complaint P. 6-7, 12, 15) If, in fact, Defendant, IDOC's employees ignored Plaintiff's request for assistance, the employees' behavior would be regrettable, but does not rise to a failure to accommodate under the ADA. (Id. at 6-7) Plaintiff claims that the failure to provide medical treatment was tantamount to "negligence"; however, even if it were, there is no requirement for an employer to provide medical treatment under the ADA. (Id. at 3) Moreover, Plaintiff admitted that she returned to work the same afternoon. (Id. at 7) Plaintiff's claim that she was "forced" to use her own benefit time instead of being afforded a leave for a "service connected" injury is not a claim that is recoverable under the ADA. Rather, this claim belongs under the exclusive jurisdiction of the Illinois Workers' Compensation Act, as developed more fully below.  820 ILCS 305/5(a) (1993)

Plaintiff's next claim is that that she had one more injury "on the job" which occurred on August 18, 2004. (Complaint P. 8) Plaintiff claims that she was "forced" to take a medical leave of absence (totaling five hours) on August 25, 2004, and that she was required to use her available benefit time on September 9, 2004, instead of being granted a work related leave of absence.  (Id. at. 9, 15)  Plaintiff's claim that she was not granted a leave of absences for a "service connect" injury falls again squarely under the exclusive jurisdiction of the Illinois

11

Workers' Compensation Act. Plaintiff's desire that her "work related injury" be deemed compensable is not a claim that fits within the definition of the ADA.

Finally Plaintiff claims that on August 25, 2004, Plaintiff was "forced to take a leave of absence" instead of being accommodated within the severe restrictions that her physician placed upon her employer. (Id. at 8-9) However, an employer is not required to provide a disabled employee with the accommodation the employee requests or prefers, but merely with a reasonable accommodation. *See* Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir.1996). Plaintiff has presented facts that establish that pursuant to IDOC's policies and procedures, an employee may be allowed to work with restrictions as long as those restrictions do not impair the operation or security of the employing facility. (Plaintiff's Exhibit P) It is clear from the record that IDOC believed Plaintiff's restrictions of being unable to stand or walk for more than five minutes and lifting more than five pounds as being too restrictive to ensure the safe operation of a female detention center. (Plaintiff's Exhibit M, August 23, 2004 doctor's note) Rather, when Plaintiff returned to work on August 26, 2004, with a doctor's note that provided for less restrictions, Plaintiff was allowed to work with those restrictions until November 18, 2004, when her doctor returned her to work without any restrictions. (Complaint P. 10-11)

Because Plaintiff seeks redress for claims under the Illinois Workers' Compensation Act and has pled that her employer actually provided an accommodation, her claim under the ADA must fail and Defendants are entitled to dismissal of Plaintiff's complaint in its entirety.

**E.     Illinois Workers' Compensation Act Provides for Exclusive Jurisdiction for Recovery of Job Related Injuries and Illnesses**

Throughout her complaint Plaintiff alleges that her physical impairments were caused by on the job injuries. She has even settled one claim of injury which occurred in January 2004, under the Illinois Workers' Compensation Act. 820 ILCS 305/5 (1993). The Illinois

Workers' Compensation Commission has exclusive jurisdiction over claims that arise due to an on the job injury  Specifically, "[n]o common law or statutory right to recover damages from the employer ... for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act ...." Section 305/5(a)

Plaintiff's request for relief states that she requests $200,000 for her long term physical impairment, among other reasons. (Complaint P. 15)  Plaintiff claims that her January 2004 slip and fall on ice caused her to have a "disability" (chrondromalacia). (Id. at. 5)  Any claim for damages based on this January 2004 "slip" is barred by the doctrine of *collateral estoppel* as evidenced by Plaintiff's Exhibit H.   Further, Plaintiff states that she has permanent "flat feet" because of the July 1, 2004 incident and that she is entitled to the return of five days of benefit time because she was forced to use her own time instead of being granted "service connected" time to recuperate from her July 1, 2004 incident. (Complaint P. 7, 11, 15)  Additionally, Plaintiff seeks to recover damages for "lost [SIC] of paid, everlasting physical and emotional damages . . ." (Id. at 3) Indeed, Plaintiff's complaint is seemingly aimed at being compensated for her on the job injuries rather than any alleged violation of the ADA.  In addition to the fact that she was already to already being compensated for her January 2004 injury, this Court must dismiss Plaintiff complaint and strike her prayer for relief related to her claim to be compensated for any other alleged "on the job" injuries.

**F.     This Court Lacks Subject Matter Jurisdiction of Any Purported State Law Claims**

Although there are no apparent Illinois state law claims discernible from Plaintiff's complaint, Defendants note that Plaintiff claims that this Court may assert pendent jurisdiction over related state law claims. (Complaint P. 5)  As such, to the extent that any of Plaintiff's

13

numerous allegations contained in her complaint could be construed as claims against the State or IDOC, this Court is precluded from asserting pendent jurisdiction because the State of Illinois and the arms of the state are immune from suit. "The Supreme Court has held that Congress did not abrogate state sovereign immunity in the Supplemental Jurisdiction Act." Butler v. Illinois Dept.of Trans., --- F.Supp.2d ----, 2008 WL 341353 * 3 (N.D.Ill., Feb 07, 2008) C*iting* Raygor v. Regents of Univ. of Minnesota, 534 U.S. 533, 541-42, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002).

The Illinois Constitution of 1970 abolished sovereign immunity but it provided the General Assembly the authority to reinstate it. Ill. Const. Art. XIII, § 4 (1970). The State Lawsuit Immunity Act provides that the State "shall not be made a defendant or party in any Court" except as provided in the Court of Claims Act and the Illinois Public Labor Relations Act. 745 ILCS 5/1 (2006). The Court of Claims Act gives the Court of Claims *exclusive jurisdiction* over all tort claims against the *State*. 705 ILCS 505/8(d) (West 2004) (emphasis added).

The purposes of sovereign immunity is to protect the State from interference in the performance of governmental functions and to preserve its control over State funds. People ex rel. Manning v. Nickerson, 184 Ill. 2d 245, 248 (1998). Sovereign immunity generally applies when a judgment in the plaintiff's favor could subject the state to liability or control the state's actions or policies. Currie v. Lao, 148 Ill.2d 151, 158 (1992). When sovereign immunity applies, the circuit court lacks subject-matter jurisdiction over the action. Smith v. Jones, 113 Ill.2d 126, 130 (1986). Sovereign immunity applies to actions where (1) the defendant is an arm of the State; (2) plaintiff's present claim has the potential to subject the State to liability; and (3) no exceptions apply. City of Chicago v. Bd. of Trustees of University of Illinois, 293 Ill.App.3d 897, 900-1 (1997).

Therefore, Defendant, the State of Illinois and IDOC have positively asserted its immunity from suit and cannot be deemed to have waived it. As such, any part of Plaintiff's Complaint that could be construed as forming a state law claim against the Defendants, it must be dismissed.

## IV.  CONCLUSION

**WHEREFORE**, (1) the State of Illinois and IDOC are immune from suit and not "persons" as defined under 42 U.S.C. §1981, 42 U.S.C. §1985, 42 U.S.C. §1985; (2) the State of Illinois is not an "employer" as defined under Title VII and the ADA; (3) Plaintiff has failed to plead facts sufficient to support her claim under Title VII; (4) Plaintiff has plead her self out of court under the ADA; (5) the Illinois Workers' Compensation Commission has exclusive jurisdiction over claims for workers' compensation; and (6) Plaintiff's state law claims are barred by the doctrine of sovereign immunity, Defendants respectfully request that this Court dismiss Plaintiff's Complaint in its entirety and for any further relief as it deems proper and just.

Respectfully submitted,

LISA MADIGAN
Illinois Attorney General

**STATE OF ILLINOIS and
ILLINOIS DEPARTMENT OF
CORRECTIONS,**

By:      s/ Colette A. Walsh
COLETTE A. WALSH
Assistant Attorneys General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-4328