<u>CASE/CITATION AVAILABLE IN WESTLAW ONLY</u>
BROWN V. NORTHERN TRUST BANK
1997 WL 543098



Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 543098 (N.D.Ill.), 7 A.D. Cases 548, 10 NDLR P 318
**(Cite as: Not Reported in F.Supp.)**

Page 1

**C**Brown v. Northern Trust Bank
N.D.Ill.,1997.

United States District Court, N.D. Illinois.
Eunice A. BROWN, Plaintiff,
v.
The NORTHERN TRUST BANK a.k.a. Northern Trust Company, Defendant.
**No. 95 C 7559.**

Sept. 2, 1997.

### MEMORANDUM OPINION AND ORDER

NORDBERG, Senior District Judge.
**\*1** Plaintiff Eunice A. Brown ("Brown") has sued her former employer, The Northern Trust Bank ("NTB"), in a four-count Complaint alleging discrimination based upon disability, race, and sex in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.,* the Civil Rights Act of 1866 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e*et seq.* Presently before the Court is Defendant's Motion for Summary Judgment.

### FACTUAL BACKGROUND

Eunice A. Brown, a black woman, assumed the Senior Fund Accountant position in NTB's Fund Accounting Division in February 1993, with the highest salary of all Senior Fund Accountants. This position was stressful and required her to work overtime hours, meaning past 5 p.m. Because Brown experienced difficulties in performing some of her job responsibilities, NTB placed her on a "Performance Improvement Plan" on May 16, 1994, scheduled to continue for 60 days, whereupon failure to meet expectations would result in placement on a final warning. (Def.'s Ex. J).

Beginning in late 1993, Brown suffered from depression, and on July 12, 1994 a psychiatrist, Dr. Shapiro, diagnosed her with Major Depression, Single Episode, and unable to work as of July 29, 1994. (Def.'s Ex. L). Her treatment consisted of psychotherapy, psychopharmacology (Prozac and Desyrel), and disability leave. Although the 60-day performance plan expired prior to the commencement of Brown's disability leave, the final review did not take place before her departure. Dr. Shapiro released Brown to return to work on November 2, 1994, and on October 28, 1994 Brown met with her supervisor Mr. Ovaert, a human resources manager, and a counselor in NTB's employee assistance program in order to discuss her imminent return. She informed them of her concerns about returning to her former position and interest in obtaining another position with less stress and "normal" hours. They presented two options: (1) return to her former position and continue on a two-week improvement plan or (2) transfer to "special projects" while seeking other employment, both internally and externally, to terminate after two months. On November 4, 1994 Brown attended a second meeting regarding her return from disability leave, where she selected the second option, but requested, and was granted, a four month period instead of two. NTB also granted Brown flexible hours in which to conduct her job search, with the understanding that she would keep her new supervisor, Shannon McGowen, apprised of her attendance. On November 7, 1994 the Bank's Benefits Administrator received a letter from Dr. Shapiro releasing Brown to return to work and identifying her work restrictions as follows:
(1) She should be transferred as soon as possible from her high stress position to another position of her choosing. This reassignment is of the utmost importance to her well being. The position should have as little "stress" as possible.
**\*2** (2) She must have regular "normal" hours of work rather than the open ended and extra long hours she previously worked.
(3) She will need an adequate period of readjustment to both her new assignment and while she finds a suitable place in the institution. She should have both help in finding this place and be encouraged to "network" on her own in the search. I feel she will need six months for this adjustment/readjustment period.

(Def.'s Ex. P). Brown's supervisors received a copy of the letter both internally and from Brown. In

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1997 WL 543098 (N.D.Ill.), 7 A.D. Cases 548, 10 NDLR P 318
**(Cite as: Not Reported in F.Supp.)**

November 1994 Brown terminated her treatment in all respects, and she has never resumed treatment. Brown admitted that upon her transfer to a position with less stress and hours the depression improved, although she testified that her depression continued to an extent

Plaintiff was frequently absent from work following her reassignment. Specifically, during the three-month period from November 9, 1994, her first day of work in the new position, until February 7, 1995, the date of her termination, Brown was absent from work 27 days and late for work on thirteen occasions. On Monday, January 23, 1995 Brown arrived at work over two hours late, met with a supervisor regarding a reference, and then left work, not to return until Friday January 27, 1995 at 11:20 a.m. The parties dispute whether Brown apprised McGowen of these absences. However, it is undisputed that Ovaert met with Brown on the 27th in order to discuss her attendance record and warned her about failing to inform McGowen of her whereabouts. As a result, Brown was not paid for that week. During this meeting Ovaert reviewed NTB's expectations regarding attendance and communication. Brown testified that in response she reminded Ovaert of her flexible schedule. Brown was tardy on Monday, January 30th and Tuesday, January 31st. On February 1st Brown called McGowen to report that she would either be late or not in at all; she did not come into work on that day. She was also absent on February 2nd and called in sick. Finally, Plaintiff was absent on February 3rd, but the parties dispute whether she called in to report her absence. On February 7, 1995 Ovaert terminated Plaintiff, citing poor work performance.

### ANALYSIS

Summary judgment is appropriate against a party who fails to make a sufficient showing to establish the existence of an essential element to its case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying the portions of the record that it believes demonstrate the absence of a genuine issue of material fact and entitle it to judgment as a matter of law. *Id.* at 323;*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The court must view all of the evidence submitted in the light most favorable to the nonmoving party. *Adickes,* 398 U.S. at 157. "Because this is an employment case, highly dependent on issues of intent and the credibility of witnesses, we must apply these standards with 'added rigor.' " *Bultemeyer v. Fort Wayne Community Schools,* 100 F.3d 1281, 1283 (7th Cir.1995).

**\*3** Once a properly supported motion for summary judgment has been filed, the nonmoving party must set forth specific facts creating a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is genuine only if a jury could reasonably return a verdict for the nonmoving party. *Id.* at 248. Only facts that might affect the outcome of the case are material. *Id.* Therefore, if the evidence provided by the nonmoving party is merely colorable or is not significantly probative, the court will grant summary judgment. *Id.* at 249-50.

### I. DISABILITY DISCRIMINATION

#### A. Reasonable Accommodation

The parties agree that the *McDonnell Douglas* burden-shifting test applies to each of Plaintiff's claims, whereby a plaintiff with no direct proof of discrimination may indirectly prove discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). However, during the briefing of the present Motion, the Seventh Circuit held that the *McDonell Douglas* test applies to claims of disparate treatment under the ADA, but does not apply to reasonable-accommodation claims. *Bultemeyer v. Fort Wayne Community Schools,* 100 F.3d 1281, 1283 (7th Cir.1995). Accordingly, Plaintiff must present direct evidence of discrimination in support of her reasonable-accommodation claim.

It is undisputed that Defendant granted Plaintiff a leave of absence when requested and transferred her to a position with less stress and hours, as recommended by her Doctor.[FN1] Regardless, Brown has not responded to NTB's Motion for summary judgment on the reasonable-accommodation claim, presumably in light of this lack of any genuine issue of material fact, entitling NTB to summary judgment on that claim. See *Bombard v. Fort Wayne Newspapers, Inc.* 92 F.3d 560, 562 n. 2 (7th

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-07078   Document 18-7   Filed 03/17/2008   Page 4 of 8

Not Reported in F.Supp.                                                                                                            Page 3
Not Reported in F.Supp., 1997 WL 543098 (N.D.Ill.), 7 A.D. Cases 548, 10 NDLR P 318
**(Cite as: Not Reported in F.Supp.)**

Cir.1996) (plaintiff abandons a claim after failing to respond to arguments on that claim in defendant's motion for summary judgment).

> FN1. Plaintiff wisely does not challenge the menu of options afforded her upon her return from leave. *See Schmidt v. Methodist Hosp.,* 89 F.3d 342, 344-45 (7th Cir.1996) (employer's offer of more training or opportunity to resign and reapply for another position is "enough to satisfy [its] duty" under the ADA).

**B. Disability**

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability ...." 42 U.S.C. § 12112. "Disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *Id.* § 12102(2). Plaintiff bears the burden of establishing that she is disabled as defined by the ADA. Defendant submits that Plaintiff was not an individual with a disability at the time of her termination, compelling judgment in its favor as a matter of law. Specifically, NTB argues that Brown's major depression was a temporary impairment, which is not a disability for purposes of the ADA, relying upon *Vande Zande v. State of Wisconsin Dep't of Admin.,* 44 F.3d 538, 544 (7th Cir.1995); *see also* 29 C.F.R. pt. 1630 app., § 1630(j) ( "temporary, nonchronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities"). In support, Defendant points to evidence that Brown: (1) sought treatment for depression only from July through November 1994, when she terminated her medical treatment three months prior to her discharge; (2) attributes her depression to the Fund Accountant position and admits that it improved upon her transfer to another position; and (3) is currently employed as an auditor and does not require any accommodation.

**\*4** Brown counters that she was diagnosed with major depressive disorder, *single episode,* which has a varied course whereby more than 50% of those who initially have a single episode will "eventually have another Major Depressive Episode," meeting the criteria for major depression, *recurrent.* Diagnostic & Statistical Manual of Mental Disorders, 3d Edition-Revised (DSM-III-R). Thus, argues Brown, because she could potentially have another episode of major depression, her depression was not temporary. Brown further submits that her depression did not last a mere four months, but rather began soon after she started her strenuous work schedule in the latter part of 1993 and continued after she terminated her treatment for monetary and employment concerns. These concerns are described in Brown's responsive brief as follows: Brown could not afford to pay for her psychotherapy sessions after the first four months. Although Brown's insurance was paying for the therapy, if she lost her job then she would not have insurance. Second, Brown could not go to work, attend psychotherapy and care for her two young children. If she were to go back to work at the bank, Brown would have had to attend psychotherapy sessions during her lunch hour; this schedule would certainly preclude her from eating and further exacerbate her anorexic condition. Therefore, Brown attempted without success to find a psychiatrist closer to work or home. Third, fearing her job security, Brown chose to return to work so that she could better support her children.

(Resp. at 16-17).

The Seventh Circuit recently grappled with the "difficult issues" presented by application of the ADA to persons suffering from mental illness in *Palmer v. Circuit Court,* 117 F.3d 351 (7th Cir.1997), where it elaborated upon disabling, as opposed to temporary, mental illness. The plaintiff had been diagnosed with major depression and delusional (paranoid) disorder. The Seventh Circuit explained that a personality conflict between a plaintiff and her supervisor or coworker does not establish a disability "even if it produces anxiety or depression, ... [b]ut if a personality conflict triggers a serious mental illness that is in turn disabling, the fact that the trigger was not itself disabling is no defense. Schizophrenia and other psychoses are frequently triggered by minor accidents or other sources of normal stress." *Id.* at 352. However, the court cautioned that "[p]sychotic episodes are not certain to recur, and if they don't the psychosis would not be disabling," citing *Van Zande. Id.* The exclusion of temporary impairments from the ADA's scope derives from its definition of disability, namely, a physical or mental impairment that substantially limits one or more of the major life

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1997 WL 543098 (N.D.Ill.), 7 A.D. Cases 548, 10 NDLR P 318
**(Cite as: Not Reported in F.Supp.)**

activities of such individual. Whether an impairment substantially limits a major life activity is informed by its "duration or expected duration" and "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment," thereby excluding temporary impairments. 29 C.F.R. § 1630.2(j)(2). The impairment's "nature and severity" are also considered. *Id.* Thus, although Defendant argues that Plaintiff's depression did not substantially limit a major life activity as a separate reason to find her not disabled, the two issues are intertwined.

**\*5** Applying this standard to the present case, the Court finds that Plaintiff has not presented evidence from which a reasonable jury could find her disabled. Assuming that the depression suffered by Brown prior to and during her treatment was of the requisite nature and severity, the evidence before the Court negates the inference that this nature and severity was of the requisite duration or impact, such that no reasonable jury could find the depression to substantially limit any of Brown's major life activities. Specifically, in light of (1) her psychiatrist's (a) August 2, 1994 diagnosis of Major Depression, Single Episode, with an excellent prognosis for recovery, including expected fundamental changes in three to six months, (b) September 19, 1994 statement repeating the same, with fundamental changes expected in one to two months, and (c) November 5, 1994 release to return to work, (2) Brown's subsequent return to work, along with permanent termination of treatment-both psychotherapy and medication (Prozac and Desyrel)-with admitted concomitant improvement, and (3) the admitted absence of a recurrence of the same nature and severity, Plaintiff's testimony that her depression continued "to an extent" does not support a finding of the requisite nature and severity after her return to work, drawing all reasonable inferences in her favor. (Def.'s Ex. L, P, & B at 104-08). "Many impairments do not impact an individual's life to the degree that they constitute disabling impairments." 29 C.F.R. pt. 1630 app., § 1630.2(j) (quoted in *Roth v. Lutheran General Hosp.,* 57 F.3d 1446, 1454 (7th Cir.1995) & *Hamm v. Runyon,* 51 F.3d 721, 726 (7th Cir.1995)).

Brown's motivation for terminating her treatment is simply immaterial, as it is not the fact of termination, but rather its consequence (or lack thereof), that is significant here. Further, the evidence that she has a greater than 50% chance of recurrence is distinguishable from the "intermittent impairment that is a characteristic manifestation of an admitted disability," which the Seventh Circuit found falls outside the realm of "temporary, non-chronic impairments of short duration" that the regulations exclude. *Van Zande,* 44 F.3d at 544,29 C.F.R. pt. 1630 app., § 1630.2(j). In finding such an impairment within the ADA's definition of disability, the *Van Zande* court clearly assumed that such an impairment was *in fact* intermittent, as opposed to merely predisposed to recur. See also *Palmer,* 117 F.3d 351, 1997 WL 351682 at \*1 ("Psychotic episodes are not certain to recur, and if they don't the psychosis would not be disabling."); *Rousch v. Weastec, Inc.,* 96 F.3d 840, 844 (6th Cir.1996) ("the mere possibility that a kidney blockage will recur or that further surgery will be needed is not sufficient to establish that her condition is substantially limiting"). For example, had Brown suffered from recurrent episodes of major depression, the fact that in the interim her depression was not severe would not exclude her from the ADA's protection. However, the mere chance of recurrence does not transmute the temporary nature of her single episode of major depression.

**\*6** Plaintiff alternatively argues that the evidence supports a finding that NTB regarded her as having such an impairment, bringing her within the definition of disabled. The Court disagrees. Brown relies upon the transmittal to her supervisors of Dr. Shapiro's letter releasing her to return to work. The letter set out the following work restrictions:
(1) She should be transferred as soon as possible from her high stress position to another position of her choosing. This reassignment is of the utmost importance to her well being. The position should have as little "stress" as possible.
(2) She must have regular "normal" hours of work rather than the open ended and extra long hours she previously worked.
(3) She will need an adequate period of readjustment to both her new assignment and while she finds a suitable place in the institution. She should have both help in finding this place and be encouraged to "network" on her own in the search. I feel she will need six months for this adjustment/readjustment period.

(Def.'s Ex. P). Dr. Shapiro prefaced those restrictions by explaining that Brown had been under his care

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                  Page 5
Not Reported in F.Supp., 1997 WL 543098 (N.D.Ill.), 7 A.D. Cases 548, 10 NDLR P 318
**(Cite as: Not Reported in F.Supp.)**

since July and stating: "Now that she is ready to return to work after her disability leave she should be given the following considerations to speed and effect her full recovery from her depression and stress reaction." [FN2] Finally, Dr. Shapiro closed by writing: "It is my impression that this young woman will be an excellent loyal member of your institution if aided in her resumption of her responsibilities." (Def.'s Ex. P).

> FN2. A dispute purportedly exists as to whether Brown's supervisors received an unredacted copy of the letter or one redacting "from her depression and stress reaction." (Resp. at 19). However, NTB has failed to create a genuine issue as to that fact, because its answer to Brown's 12N statement is deficient. Specifically, NTB merely "admits that Plaintiff claims that she delivered the letter" as described, without "including, in the case of any disagreement, specific references to the [ [ [evidence] relied upon," as Rule 12N requires of a response. (Answer to 12N ¶ 13). Accordingly, due to NTB's failure to answer its opponent's 12N statement "in the form prescribed in section N for a response," Brown's statement that she transmitted the letter in a manner resulting in an unredacted copy "will be deemed admitted." Rule 12M.

The present case is analogous to *Hamm v. Runyon,* 51 F.3d 721 (7th Cir.1995), where the Seventh Circuit found that because the information transmitted to the supervisor described the impairment as temporary, for the reasons given above the supervisor could not have regarded the employee has having a disability within the meaning of the ADA. Likewise, in the present case, the information transmitted to Brown's supervisors via Dr. Shapiro anticipated her full recovery merely by transferring her to a stress-free position with "normal" hours. Significantly, such a restriction does not support an inference that the impairment substantially limits the major life activity of working, because "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Nor does the inability to perform a high stress job with long hours render Brown "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes," the criteria for being substantially limited in the major life activity of working. *Id.; see also Roth v. Lutheran General Hosp.,* 57 F.3d 1446, 1454-55 (7th Cir.1995) ("we cannot say that the inability to fulfill long shifts or 36 hour call duties ... necessarily proves that [the plaintiff] is disabled withing the meaning of the Act"). Finally, no reasonable juror could infer that Brown's supervisors regarded her as being substantially limited in any other major life activities after reading the letter, without impermissibly engaging in mere speculation. *See, e.g., Hamm,* 51 F.3d at 725. As this deficiency is dispositive of Brown's ADA claim, the Court need not address NTB's alternative grounds for summary judgment on that claim.

**II. SEX & RACE DISCRIMINATION**

**\*7** Lacking direct evidence of discrimination based upon race or sex, Brown attempts to fend off summary judgment with the burden-shifting method of proof set out by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, Brown must first produce evidence in order to establish a prima facie case of discrimination: "any demonstration strong enough to support a judgment in the plaintiff's favor if the employer remains silent will do, even if the proof does not fit into a set of pigeonholes." *Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 159 (7th Cir.1996) (per curiam); *see also Wallace v. SMU Pneumatics, Inc.,* 103 F.3d 1394, 1399 (7th Cir.1997) ("a strong enough case to compel judgment in favor of the plaintiff unless the defendant produces evidence"). NTB argues, *inter alia,* that Brown has not presented evidence in support of the fourth element of her prima facie case, requiring judgment in its favor as a matter of law. The Court agrees.

The "usual predicate of a *McDonnell Douglas* argument," and fourth element, is evidence that a similarly situated employee of a different race or sex was treated more favorably than the plaintiff. *Wallace,* 103 F.3d at 1398. However, the Supreme Court recently clarified that "the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case." *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 878, ----, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). As

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1997 WL 543098 (N.D.Ill.), 7 A.D. Cases 548, 10 NDLR P 318
**(Cite as: Not Reported in F.Supp.)**

the Seventh Circuit explained, "[t]he question instead is whether the plaintiff has established a logical reason to believe that the decision rests on a legally forbidden ground. That one's replacement is of another race, sex, or age may help to raise an inference of discrimination, but it is neither a sufficient nor a necessary condition." *Carson, 82 F.3d 157, 159 (7th Cir.1996)*. In other words, the fourth element has been restated to require the following showing by Plaintiff: "that the circumstances surrounding her probation and discharge indicate that it is more likely than not that her [race and sex] w[ere] the reason for these adverse actions." *Leffel v. Valley Financial Services,* 113 F.3d 787, 794 (7th Cir.1997).

Brown misconstrues these principles in her argument: Brown submits that she was constructively replaced when her duties as Fund Accountant were absorbed by the remaining Fund Accountants and that NTB ultimately hired new Fund Accountants, satisfying the "traditional" fourth prong of the *McDonnell Douglas* prima facie case. Curiously, Brown does not mention the race and sex of the other employees. Regardless, Brown admits that she cannot identify any similarly situated employees who were treated differently (*e.g.,* constructive replacements who were similarly situated), an essential element of the disparate-treatment method of creating an inference of discrimination. *See Wallace,* 103 F.3d at 1398, 12M & N ¶ 54. However, as explained above, although "evidence of disparate treatment is certainly one of the most obvious ways to raise an inference of discriminatory animus[, i]t should not be understood as the only means of doing so." *Leffel,* 113 F.3d at 794. This brings us to the other gap in Brown's argument.

**\*8** Brown further maintains that in *O'Connor* "[t]he Supreme Court explained that an employee alleging employment discrimination need not demonstrate the fourth element to establish a prima facie case." (Resp. at 13). Of course, on its face, this statement is incorrect. However, Brown also states "[i]nstead, Plaintiff need only raise the inference that the employment decision rested on an illegal discriminatory criterion," apparently recognizing that absent evidence of disparate treatment she must present some other "evidence reasonably suggesting that the employer would not have taken adverse action against [her] had she not been [black and female] and everything else had remained the same." *Leffel,* 113 F.3d at 794. Yet Brown does not even purport to submit any such evidence, instead baldly concluding that she has raised such an inference without referring to a shred of evidence in support. Nor has this Court's exhaustive combing of the record uncovered such evidence.

Perhaps Brown interprets *O'Connor* to completely eliminate (versus clarify) the fourth element such that she need only show (1) her race and gender, (2) that she was meeting NTB's legitimate expectations, and (3) that she was discharged. If so, she is mistaken; anti-discrimination statutes do not guaranty employees for-cause-only-termination or merit-based employment decisions. Even assuming that Brown has submitted evidence in support of those three elements, no reasonable juror could return a verdict in her favor absent evidence that the circumstances surrounding her probation and discharge indicate that it is more likely than not that the actions were motivated by her race and sex. Those three elements, standing alone, merely warrant the inference that the employee was not terminated for merit-based reasons, but an employer may terminate its employees for any reason, or none at all, except those forbidden by statute.

Or perhaps, as illustrated by the above discussion on evidence of disparate treatment, Brown construes *O'Connor* to hold that mere replacement satisfies the fourth prong, in which case she is further mistaken. The holding of *O'Connor* follows from precisely the opposite reasoning: that "there must be at least a logical connection between each element of the prima facie case and the illegal discrimination" and "the element of replacement by someone under 40 fails this requirement" because "there can be no greater inference of *age discrimination...* when a 40 year-old is replaced by a 39 year-old than when a 56 year-old is replaced by a 40 year-old," as "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *517 U.S. at ----, 116 S.Ct. at 1310;see also Carson,* 82 F.3d at 159 ("it is *neither* a *sufficient* nor a necessary condition") (emphasis added). Indeed, rather than eviscerate the showing of replacement *by someone younger,* such that mere replacement suffices, the Court clarified that even replacement by someone younger than 40

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 7
Not Reported in F.Supp., 1997 WL 543098 (N.D.Ill.), 7 A.D. Cases 548, 10 NDLR P 318
**(Cite as: Not Reported in F.Supp.)**

does not automatically create an inference of age discrimination because "such an inference can not be drawn from the replacement of one worker with another worker insignificantly younger," as demonstrated by the 40-39 versus 56-40 example. The Court is unsure of what faulty reasoning led Plaintiff to the conclusion that she has created the requisite inference and, hence, established a prima facie case, but it is certain that the failure to present any evidence from which a reasonable juror could draw an inference of race and sex discrimination entitles Defendant to judgment as a matter of law. Moreover, as Plaintiff's failure to establish a rebuttable presumption of discrimination renders Defendant's rebuttal moot, the Court need not address it here.

## CONCLUSION

**\*9** For the reasons given, the Court GRANTS Defendant summary judgment. This is a final judgment.

N.D.Ill.,1997.
Brown v. Northern Trust Bank
Not Reported in F.Supp., 1997 WL 543098 (N.D.Ill.), 7 A.D. Cases 548, 10 NDLR P 318

END OF DOCUMENT