

Slip Copy　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1
Slip Copy, 2007 WL 723584 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 723584)**

# Threatt v. Jackson
# Westlaw Reported Only

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Threatt v. Jackson
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
Kenika M. THREATT, Plaintiff,
v.
Alphonso R. JACKSON Secretary, U.S. Department of Housing and Urban Development, Defendants.
**No. 06-CV-3944.**

March 7, 2007.

Jeffery C. Taylor, The Law Offices of Snider & Associates, LLC, Baltimore, MD, for Plaintiff.
Samuel S. Miller, United States Attorney's Office, Chicago, IL, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

MARVIN E. ASPEN, District Court Judge.

**\*1** Pursuant to Fed.R.Civ.P. 12(b)(6), defendant Alphonso R. Jackson, Secretary, U.S. Department of Housing and Urban Development (HUD), has filed a Motion to Dismiss plaintiff Kenika M. Threatt's claims of employment discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* For the reasons set forth below, we grant in part and deny in part this motion.

### *BACKGROUND*

Kenika Threatt began working as an Economic Development Specialist for HUD's Chicago regional office of Community Planning and Development (CPD) in July 2000. (Am. Compl. at ¶ 3.) She alleges gender-based discriminatory treatment by three of her superiors at HUD: Mark Walling, her "first line supervisor" at the Chicago office; Victor Thornton, the former CPD Director at the Chicago office; and Jeff Ruster, HUD's Director/Deputy Assistant for the Office of Economic Development in Washington, D.C. (*Id.* at ¶ 8.)

Threatt alleges the discriminatory conduct began in October 2000, when Thornton made "demeaning statements" about Threatt and her work in front of other CPD employees. (*Id.* at ¶ 9.) Threatt raises other similar allegations with respect to subsequent conduct by Thornton, Willis, and Ruster. (*See id.* at ¶ 9.) By 2002, Threatt contends, "all were undermining [Threatt's] ability to effectively perform her duties or to receive any objective assessments of her work performance based on her gender."(*Id.*) In August 2002, Threatt filed a Formal Complaint with HUD's Office of Departmental Equal Employment Opportunity (DEEO). (*See* Ex. A. to Mot. to Dismiss.)

On December 23, 2004, the DEEO issued its Final Decision, finding that Threatt "was not discriminated against or harassed because of her gender."(*Id.* at p. 1.) The DEEO set forth for Threatt the following post-decision options: (1) file an appeal with the Equal Employment Opportunity Commission (EEOC) within thirty calendar days of the date of receipt of the Final Decision; (2) file a brief or statement in support of her appeal with the Office of Federal Operations within thirty days of receipt of the Final Decision; or (3) file a "civil action in an appropriate United States District Court within ninety (90) calendar days of your receipt of this Decision."(*Id.* at 14-15.) Threatt did not take any of those steps within the specified time periods.

Threatt also alleges that after she filed her Formal Complaint with the DEEO, Willis and Thornton retaliated against her. She alleges that, among other things, Willis specifically referred to the fact that Threatt had filed her Formal Complaint when he refused to assign her work duties or integrate her back into the workforce after she returned from maternity leave. (Am. Compl. at ¶ 9.) She also alleges that the composition of her workload changed, that Willis embarrassed her in front of her colleagues at a meeting, that she received "inaccurate and unfavorable input" on performance evaluations, and that Willis docked her pay two hours when she took a pre-approved travel day.(*Id.* at ¶¶ 9-12.)Generally, Threatt alleges:

**\*2** 1. The conduct of her supervisors after she filed the Formal Complaint "[was] calculated or designed to materially dissuade [Threatt] from making or supporting a charge of unlawful discrimination;"

2. Jackson's "personnel and/or employees engaged in actions and conduct as alleged in this Complaint that was retaliation/reprisal;"

3. But for her filing of the Formal Complaint, "none of the actions, omissions, and/or conduct alleged in this Complaint would have occurred;" and

4. Threatt was directly harmed by that conduct.

(*Id.* at ¶¶ 42-45.)

### STANDARD OF REVIEW

A court may grant a motion to dismiss under Rule 12(b)(6) when "it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The purpose of a motion to dismiss under 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). In a Title VII sex discrimination case, all a plaintiff needs to do is "recite that the employer has caused some concrete injury" by holding her sex against her; "[i]t is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate."*Kolupa v. Roselle Park Dist.,* 438 F.3d 713 (7th Cir.2006). Complaints "need not plead facts and need not narrate events that correspond to each aspect of the applicable legal rule."*Id.* at 715.

### ANALYSIS

#### A. *Claims Arising Before August 6, 2002*

Jackson first argues that all of Threatt's claims covered in the DEEO's December 23, 2004 Final Agency Decision are barred because Threatt failed to appeal that decision or file a Complaint within ninety days of that decision. 42 U.S.C. § 2000e-16(c) provides that an individual who has filed an administrative claim for relief must file any civil suit within 90 days of the receipt of a final adverse agency decision.

Threatt contends that this filing timeline is tolled in the present case under the "continuing violation" exception, which in some instances serves to exempt plaintiffs from unduly harsh applications of the 90-day rule. (Mem. in Opp. at 2.)

We hold that the continuing violation doctrine is not applicable here. First, the continuing violation doctrine only tolls the period within which to file an administrative complaint with agencies or departments such as the DEEO; the doctrine "does not relieve a plaintiff of the need to file an action within 90 days of receiving the right-to-sue letter."*Wade v. Knoxville Utilities Bd.,* 259 F.3d 452, 461-62 (6th Cir.2001). Further, the purpose of the continuing violation doctrine is to toll filing deadlines when a plaintiff "could not reasonably be expected to perceive the alleged violation before the limitations period has run, or when the violation only becomes apparent in light of later events."*Savory v. Lyons,* 469 F.3d 667, 672 (7th Cir.2006). Neither circumstance applies here: Threatt perceived alleged violations in 2002 and made those violations the subject of her first Formal Complaint to the DEEO. Finally, because Threatt does not allege that HUD engaged in some deliberate design to convince her to delay filing her civil action or agency appeal, we find no grounds for equitably tolling the limitations period. *See Smith v. Potter,* 445 F.3d 1000, 1010 (7th Cir.2006). Therefore, we will not consider Threatt's claims relating to conduct that occurred before she filed her first Formal Complaint with the DEEO on August 6, 2002.

#### B. *Claims Arising After August 6, 2002*

**\*3** Threatt has stated claims with respect to conduct that allegedly occurred after she filed the August 6, 2002 Formal Complaint. Those claims are not time-barred, as she filed her original Complaint here ninety days of receiving the DEEO's March 1, 2006 Final Decision. Threatt's Amended Complaint is sufficient to put Jackson on notice of her post-August 6, 2002 claims. Jackson argues that Threatt's allegations are "de minimus," but we will not measure the number or strength of Threatt's allegations at this stage.[FN1]The Seventh Circuit stated that "[a]ny decision declaring 'this complaint is deficient because it does not allege X' is a candidate for summary reversal, unless X is on the list in Fed.R.Civ.P. 9(b)."*Kolupa,* 438 F.3d at 715;*see also American Nurses' Association v. Illinois,* 783 F.2d 716, 727 (7th Cir.1986) ("[A] complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing.") Because Threatt has not plead any facts that affirmatively require her dismissal, and

Slip Copy                                                                                                         Page 4
Slip Copy, 2007 WL 723584 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 723584)**

because her Amended Complaint puts Jackson on notice of the claims against him, Threatt has met the threshold of Fed.R.Civ.P. 8(a).

> FN1. We note for the sake of clarity going forward that although Threatt alleged just one specific retaliatory act in her second Formal Complaint to the DEEO (that Willis improperly charged her for two hours of leave without absence in connection with what she alleges was a pre-approved travel day), the full range of conduct Threatt described in her Amended Complaint is reasonably related to the conduct she alleged in the second DEEO Formal Complaint. *See Jenkins v. Blue Cross Mut. Hosp. Ins., Inc., 538 F.2d 164, 167 (7th Cir.1976)* ("the complaint in the civil action ... may properly encompass any ... discrimination like or reasonably related to the allegations of the charge and growing out of such allegations.")

## *CONCLUSION*

For the reasons stated above, we grant in part and deny in part Jackson's Motion to Dismiss.

It is so ordered.

N.D.Ill.,2007.
Threatt v. Jackson
Slip Copy, 2007 WL 723584 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.