**FILED**

AUG 1 8 2008
AUG 1 8 2008
Judge Samuel Der-Yeghiayan
U.S. District Court

| | |
|---|---|
| Shawnetta T. Graham | ) |
| | ) |
|      Plaintiff, Pro Se | ) |
|    -VS- | ) |
| | )    **United States District Court** |
| State of Illinois and the Illinois Department | )    **Northern District of Illinois** |
| Of Corrections, | ) |
|       Defendants | )     **Honorable Judge** |
| | )      **Der Yeghiayan** |
| | ) |
| | )    **Civil Action #: 07 C 7078** |
| | ) |
| | ) |
| | ) |
| | ) |

---

### Notice of filing and Certificate of Service

This serves as notification to the defendants that I filed a <u>SUR-REPLY</u> to <u>FURTHER SUPPORT MY MOTION</u> to amend my complaint in the U.S. District Court in the Northern of the Illinois Eastern Division at Chicago. Also, I filed my objections to the defendant <u>REPLY TO FURTHER SUPPORT HER MOTION TO DISMISS.</u> On <u>August 13, 2008</u>, it was mailed by standard U.S First Class mail . On <u>August 15, 2008</u> before the hour of 5:00 pm the plaintiff mailed the defendants one copy of the exhibits which were exhibit 1 to exhibit 17.

I <u>Shawnetta T. Graham</u>, being first duly sworn on oaths, states that she has served one copy of the attach <u>EXHIBITS</u> to each person name below the __15__ day of <u>August</u>, in the year of <u>2008</u>, in the manner indicated below. The EXHBIITS ARE REFERENCE TO THE FILED <u>SUR-REPLY.</u>

( ) Hand Delivered       (X) **First Class mail**       ( ) **Certified mail**

**Illinois Attorney General Office**
**c/o Colette A. Walsh**
**Assistant Attorney General**
**General Law Bureau**
**100 West Randolph St., 13th Floor**
**Chicago, Illinois 60601**
**(312)-814-4328**

**Affidavit of Service**

Plaintiff *[signature]*
        Shawnetta T. Graham
        1101 Assell Ave.
        Aurora, Illinois 60505

SEAL

OFFICIAL SEAL
MARVIN G SCHROEDER
Notary Public - State of Illinois
My Commission Expires Jun 30, 2011

Subscribed and sworn before me, this day __15__ of August in the year 2008

Notary Public: _[signature]_ date: 8-15-08
                      Exp: 6/30/11

RECEIVED

AUG 1 8 2008

Judge Samuel Der-Yeghiayan
U.S. District Court

| | |
|---|---|
| Shawnetta T. Graham | ) |
|     Plaintiff, Pro Se | ) |
|   -VS- | ) |
| | )   **United States District Court** |
| **State of Illinois and the Illinois Department** | )   **Northern District of Illinois** |
| **Of Corrections,** | ) |
|     **Defendants** | )     **Honorable Judge** |
| | )     **Der Yeghiayan** |
| | ) |
| | )   **Civil Action #: 07 C 7078** |

# APPENDIX OF
# SUR-REPLY FILED

AUG 1 8 2008

Judge Samuel Der-Yeghiayan
U.S. District Court

## EXHIBIT 1 TO EXHBIIT 17

| | |
|---|---|
| Shawnetta T. Graham | ) |
|      Plaintiff, Pro Se | ) |
|   -VS- | ) |
| | )   **United States District Court** |
| State of Illinois and the Illinois Department | )   **Northern District of Illinois** |
| Of Corrections, | ) |
|      Defendants | )     **Honorable Judge** |
| | )     **Der Yeghiayan** |
| | ) |
| | )   **Civil Action #: 07 C 7078** |

### Table of Contents for the Exhibits to Graham's Sur-Reply

Exhibit 1…………………………………….current check studs and previous check studs

Exhibit 2…CMS mail, CMS pay increase information & CMS/IDOC job performance elevations

Exhibit 3……………………………………………………….AFSCME Union Agreement

Exhibit 4………signature of the Illinois Governor on the behalf of the State of Illinois

Exhibit 5…………………………signature of CEO of union and local 416 president

Exhibit 6……………………………………….A copy of Graham's work identification

Exhibit 7…………………………………….Notices of timely exception issues from IHRC

Exhibit 8…………………………….A Letter from AFSCME Union President Local 416

Exhibit 9…incidents about working with a job restriction & working outside job title

Exhibit 10……………………………………………….Purposed Amended Complaint

Exhibit 11…………………………………….Incidents for continuing violation theory

Exhibit 12…………………………………………………….Minnesota Life letters

Exhibit 13……………………………………………….CUNA Mutual Group Letter

Exhibit 14………………Letter to Superintendent of Schools Plus an incident Report

Exhibit 15…Notice to the defendant for the propose amendment of the case caption

Exhibit 16………Medical Report from Colonoscopy & Medical Report of Foot Exam

Exhibit 17………………………Letter to Judge Der-Yeghiayan with attach documents

| | |
|---|---|
| Shawnetta T. Graham<br>　　　　Plaintiff, Pro Se<br>　　-VS-<br><br>State of Illinois and the Illinois Department<br>Of Corrections,<br>　　　　Defendants | )<br>)<br>)<br>)  **United States District Court**<br>)  **Northern District of Illinois**<br>)<br>)  **Honorable Judge**<br>)  **Der Yeghiayan**<br>)<br>)  Civil Action #: <u>07 C 7078</u> |

# EXHIBIT

# 1

**Current Pay checks studs and previous pay check stud**

DANIEL W. HYNES
COMPTROLLER – STATE OF ILLINOIS

SALARY EARNINGS STATEMENT
FOR PAY PERIOD ENDING   05/15/05
SCHEDULED PAY DATE   05/31/05

29 104
9147

## THIS IS NOT A DEPOSIT RECEIPT

WARRANT – TRACE NO.
SH8065992-0010987

GRAHAM SHAWNETTA

1101 ASSELL AVE
AURORA IL 80505

YEAR TO DATE EARNINGS AND TAXES

| | |
|---|---|
| GROSS EARNINGS | 17939.50 |
| FEDERAL TAX | 2354.25 |
| F.I.C.A. | 1293.57 |
| STATE TAX | 477.75 |
| OTHER COMP. | .00 |
| NON-TAX INCOME | 2013.44 |
| EARNED INC. CRED. | .00 |

YEAR TO DATE GROSS EARNINGS PLUS OTHER COMPENSATION
LESS NON-TAXABLE INCOME EQUAL TAXABLE GROSS.

CURRENT PERIOD EARNINGS AND DEDUCTIONS

| SOCIAL SECURITY NO. | BASE PAY | OVERTIME PAY | LUMP SUM | ADDITIONAL GROSS | GROSS EARNINGS |
|---|---|---|---|---|---|
| ***-**-1491 | 1810.00 | .00 | .00 | .00 | 1810.00 |

DEDUCTIONS:

| | | | | | |
|---|---|---|---|---|---|
| FEDERAL TAX | 238.05 | STATE TAX | 48.09 | FICA | 130.58 |
| RETIREMENT | 104.07 | OP HLTH INS | 103.00 | OTHER INS | .70 |
| UNION DUES | 19.47 | ASSOC. DUES | 2.10 | | |

NOTE:
*GROSS PAY INCREASED BY THIS AMOUNT

| | |
|---|---|
| TOTAL DEDUCTIONS | 646.06 |
| EARNED INC. CRED. | .00 |
| NET PAY | 1163.94 |

DANIEL W. HYNES
COMPTROLLER - STATE OF ILLINOIS

SALARY EARNINGS STATEMENT
FOR PAY PERIOD ENDING    06/15/08         27 104
SCHEDULED PAY DATE       06/30/08         9147

## THIS IS NOT A DEPOSIT RECEIPT

WARRANT ~ TRACE NO.
  SA1178520-0009388

YEAR TO DATE EARNINGS AND TAXES

| | |
|---|---|
| GROSS EARNINGS | 25522.50 |
| FEDERAL TAX | 3470.10 |
| F.I.C.A. | 1866.25 |
| STATE TAX | 666.90 |
| OTHER COMP. | .44 |
| NON-TAX INCOME | 3295.92 |
| EARNED INC. CRED. | .00 |

GRAHAM SHAWNETTA                        9147

1101 ASSELL AVE
AURORA IL 60505

YEAR TO DATE GROSS EARNINGS PLUS OTHER COMPENSATION
LESS NON-TAXABLE INCOME EQUAL TAXABLE GROSS.

CURRENT PERIOD EARNINGS AND DEDUCTIONS

| SOCIAL SECURITY NO. | BASE PAY | OVERTIME PAY | LUMP SUM | ADDITIONAL GROSS | GROSS EARNINGS |
|---|---|---|---|---|---|
| ***-**-1491 | 2132.00 | .00 | .00 | .00 | 2132.00 |

DEDUCTIONS:

| | | | | | |
|---|---|---|---|---|---|
| FEDERAL TAX | 304.05 | STATE TAX | 57.36 | FICA | 160.13 |
| RETIREMENT | 181.22 | OP HLTH INS | 38.75 | OTHER INS | .79 |
| NON MBR FEES | 24.03 | ASSOC. DUES | 2.10 | | |

NOTE:
 *GROSS PAY INCREASED BY THIS AMOUNT

| | |
|---|---|
| TOTAL DEDUCTIONS | 768.43 |
| EARNED INC. CRED. | .00 |
| NET PAY | 1363.57 |

EMPLOYEE ID : 47-4037280

DANIEL W. HYNES
COMPTROLLER – STATE OF ILLINOIS

SALARY EARNINGS STATEMENT
FOR PAY PERIOD ENDING     06/30/08
SCHEDULED PAY DATE        07/15/08

27 104
9147

## THIS IS NOT A DEPOSIT RECEIPT

WARRANT – TRACE NO.
SA1211637-0008132

GRAHAM SHAWNETTA                    9147

1101 ASSELL AVE
AURORA IL 60505

YEAR TO DATE EARNINGS AND TAXES

| | |
|---|---|
| GROSS EARNINGS | 27654.50 |
| FEDERAL TAX | 3742.65 |
| F.I.C.A. | 2016.73 |
| STATE TAX | 720.48 |
| OTHER COMP. | .49 |
| NON-TAX INCOME | 3642.14 |
| EARNED INC. CRED. | .00 |

YEAR TO DATE GROSS EARNINGS PLUS OTHER COMPENSATION
LESS NON-TAXABLE INCOME EQUAL TAXABLE GROSS.

CURRENT PERIOD EARNINGS AND DEDUCTIONS

| SOCIAL SECURITY NO. | BASE PAY | OVERTIME PAY | LUMP SUM | ADDITIONAL GROSS | GROSS EARNINGS |
|---|---|---|---|---|---|
| ***-**-1491 | 2132.00 | .00 | .00 | .00 | 2132.00 |

DEDUCTIONS:

| | | | | | |
|---|---|---|---|---|---|
| FEDERAL TAX | 272.55 | STATE TAX | 53.58 | FICA | 150.48 |
| RETIREMENT | 181.22 | OP HLTH INS | 38.75 | OTHER INS | .79 |
| NON MBR FEES | 24.03 | ASSOC. DUES | 2.10 | FLEX. SPEND. | 126.25 |

NOTE:
*GROSS PAY INCREASED BY THIS AMOUNT

| | |
|---|---|
| TOTAL DEDUCTIONS | 849.75 |
| EARNED INC. CRED. | .00 |
| NET PAY | 1282.25 |

EMPLOYEE ID : 47-4037260

DANIEL W. HYNES
COMPTROLLER - STATE OF ILLINOIS

SALARY EARNINGS STATEMENT
FOR PAY PERIOD ENDING    07/15/08
SCHEDULED PAY DATE       07/31/08

27 104
9147

## THIS IS NOT A DEPOSIT RECEIPT

WARRANT - TRACE NO.
SA1248674-0000681

GRAHAM SHAWNETTA                                    9147

1101 ASSELL AVE
AURORA IL 60505

YEAR TO DATE EARNINGS AND TAXES

| | |
|---|---|
| GROSS EARNINGS | 29786.50 |
| FEDERAL TAX | 4015.20 |
| F.I.C.A. | 2167.21 |
| STATE TAX | 774.05 |
| OTHER COMP. | .54 |
| NON-TAX INCOME | 3988.36 |
| EARNED INC. CRED. | .00 |

YEAR TO DATE GROSS EARNINGS PLUS OTHER COMPENSATION
LESS NON-TAXABLE INCOME EQUAL TAXABLE GROSS.

CURRENT PERIOD EARNINGS AND DEDUCTIONS

| SOCIAL SECURITY NO. | BASE PAY | OVERTIME PAY | LUMP SUM | ADDITIONAL GROSS | GROSS EARNINGS |
|---|---|---|---|---|---|
| ***-**-1491 | 2132.00 | .00 | .00 | .00 | 2132.00 |

DEDUCTIONS:

| | | | | | |
|---|---|---|---|---|---|
| FEDERAL TAX | 272.55 | STATE TAX | 53.58 | FICA | 150.48 |
| RETIREMENT | 181.22 | OP HLTH INS | 38.75 | OTHER INS | .77 |
| NON MBR FEES | 24.03 | ASSOC. DUES | 2.10 | FLEX. SPEND. | 126.25 |

NOTE:
*GROSS PAY INCREASED BY THIS AMOUNT

| | |
|---|---|
| TOTAL DEDUCTIONS | 849.73 |
| EARNED INC. CRED. | .00 |
| NET PAY | 1282.27 |

EMPLOYEE ID : 47-4037260

Shawnetta T. Graham )
     Plaintiff, Pro Se )
   -VS- )
                               ) United States District Court
State of Illinois and the Illinois Department ) Northern District of Illinois
Of Corrections, )
       Defendants ) Honorable Judge
                               ) Der Yeghiayan
                               )
                               ) Civil Action #: <u>07 C 7078</u>

# EXHIBIT

# 2

## Mail from CMS and Pay increase notification from CMS



UNITED STATES POSTAGE
PITNEY BOWES
$ 00.34⁶
02 1M
0004254757    JUL 31 2008
MAILED FROM ZIP CODE 62703

PRESORTED
FIRST CLASS

**CMS**
ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES
503 Stratton Office Building
Springfield, IL 62706

Ms. Shawnetta T. Graham
1101 Assell Avenue
Aurora, Illinois 60505

FGHUR31  60505    ||.||..||..|.|.||....|..|.|.||..||.||....|.|||...||..||

## ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES
### PERSONNEL/POSITION ACTION FORM

| PRINTED | | SOC. SEC. NO. |
|---|---|---|
| 01/04/08 | | 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 |
| | | 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 |

**EMPLOYEE INFORMATION**

| LAST NAME | FIRST | INIT | SEX | RACE | VET | EDUC | DATE OF BIRTH |
|---|---|---|---|---|---|---|---|
| GRAHAM | SHAWNETTA | | F | B | N | 5 | 06-06-68 |

| STREET ADDRESS | CITY | COUNTY | STATE | ZIP CODE | NATL ORIG |
|---|---|---|---|---|---|
| 1101 ASSELL AVENUE | AURORA | 045 | IL | 60505 | 129 |

| PAY PLAN | PAY GRADE | PAY STEP | SALARY | PAY RATE | FULL/PT TIME | FUNDING BRD.COM | PAYROLL DEPT. | CODE APPROV | CORRECTED SOCIAL SECURITY NO. | BARGAINING UNIT CODE | PERF- CODE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| S | 00 | 05 | 4239.00 | M | F | 00 | 27 | 104 | | RC062 | |

| CONTINUOUS SERVICE DATE | SENIORITY/DATE | CREDITABLE SERVICE DATE | APPT. EXPIRATION DATE | STA- TUS | SUSPENSION/LOA RETURN DATE | APPT. REQ.NO. | HANDI CAP |
|---|---|---|---|---|---|---|---|
| 05-02-94 | 05-02-94 | 05-26-02 | NO DATE | A | NO DATE | | 000 |

**POSITION INFORMATION**

| POSITION TITLE(NAME) | POSITION NUMBER | EXMT CODE | WORK COUNTY | A/I AUTH. | AUDIT | POS DES COMP. |
|---|---|---|---|---|---|---|
| LIBRARY ASSOCIATE | 23430-27-10-411-01-01 | 0 | 022 | | | |

**TRANSACTION INFORMATION**

| TRANSACTION NAME | TRANS CODE | EFFECTIVE DATE | PRIOR- ITY |
|---|---|---|---|
| 1 GENERAL INCREASE | BA030 | 01-01-08 | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |

**CODES**

**STATUS**
- A-CERTIFIED
- B-PROB. 3 MOS
- C-PROB. 6 MOS
- D-PROVISIONAL
- F-EXEMPT
- G-TEMPORARY
- H-EMERGENCY
- J-TRAINEE
- K-TRAINEE
- L-TRAINEE

**EXEMPT**
- 0-NOT EXEMPT
- 1-PRIVATE SECRETARY
- 2-ADMIN. HEAD
- 3-POLICY MAKER
- 4-UNSKILLED
- 5-LIC.ATTORNEY
- 6-OUT OF STATE
- 6-PARTIAL EXTENTION

**RACE**
- A-AMERICAN INDIAN
- B-BLACK
- O-ORIENTAL
- S-SPANISH AMERICAN
- W-CAUCASIAN
- X-OTHER

**EDUCATION**
- 1-GRADE SCHOOL
- 2-SOME HIGH SCH.
- 3-H S GRAD/GED
- 4-SOME COLLEGE
- 5-BA/BS
- 6-MA/MS
- 7-PHD/MD
- 8-OTHER DEGREE

**REMARKS**

CURRENT BASE SALARY + $25.00 LONG + $0.00 BILING = $4,264.00

| EMPLOYEES SIGNATURE(REQ ON VOL ACTION) | DATE | AGENCY APPROVAL(OPTIONAL) | DATE |
|---|---|---|---|
| SIGNATURE OF PERSON SERVING SUS/DISC BY MAIL ☐ IN PERSON ☐ | DATE | AGENCY BUDGETARY(OPTIONAL) | DATE |
| DIRECTOR OF CENTRAL MANAGEMENT SERVICES | DATE | AGENCY HEAD APPROVAL | DATE |

**State of Illinois**
**DEPARTMENT OF CENTRAL MANAGEMENT SERVICES**
**Springfield, Illinois**

INDIVIDUAL DEVELOPMENT AND PERFORMANCE SYSTEM

| 1. EMPLOYEE'S NAME - LAST, FIRST, MIDDLE | 1. DEPARTMENT, BOARD OR COMMISSION | 2. DIVISION OR INSTITUTION |
|---|---|---|
| Graham, Shawnetta | CORRECTIONS | IYC-WARRENVILLE |

| 3. EMPLOYEE'S SOCIAL SECURITY NUMBER | 4. EMPLOYEE'S PAYROLL TITLE | 5. TIME IN CURRENT TITLE |
|---|---|---|
| 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 | Library Associate | 10 YEARS 0 MONTHS |

7. PERIOD OF REPORT   FROM 05/04 TO 05/05

8. TYPE OF REPORT
☒ ANNUAL  ☐ FIRST PROBATIONARY  ☐ FINAL PROBATIONARY
☐ LAYOFF  ☐ SALARY INCREASE  ☐ INTERIM
☐ DISCHARGE  ☐ OTHER _____

**GENERAL INFORMATION**

The basis, purpose of the Individual Development and Performance system is to let employees know how they are doing, to motivate them, to improve their performance and to justify administrative personnel decisions.

The system attempts to minimize subjective judgments by utilizing a work planning concept of objective setting and feedback. Thus, it helps employee's control and evaluate their progress toward personal as well as organizational objectives.

The establishment of employee objectives is a five-step process which is illustrated as follows:

| SUPERVISOR'S RESPONSIBILITY Set and comm-unicate appropriate objectives | Prepare a list of objectives with employees. Discuss work objectives for this period. | Approve plans of faction for achieving work objectives and review with higher management. | Review progress. Make adjustments as required. Provide coaching and assistance. | Evaluate performance and results for annual appraisal. Prepare list of objectives for next period. |
|---|---|---|---|---|
| INFORMATION TO BE SHARED Organization objectives; major job responsibilities; self-development needs | OBJECTIVE SETTING | PLANS OF ACTION FOR JOB TO BE DONE | QUARTERLY PROGRESS REVIEW | EVALUATE PERFORMANCE ANNUALLY RESET OBJECTIVES |
| EMPLOYEE'S ROLE Discuss areas of responsibility relating to objectives and self-development needs. | Prepare list of objectives for discussion with supervisor. Discuss work objectives for this period. | Prepare plans of action to meet objectives for approval of supervisor. Per-form the job to be done. | Preview progress and discuss any problems with supervisor. | Make self-evaluation and evaluate results for annual appraisal. Prepare list of objectives for next period. |

Each employee will be counseled by his or her supervisor and a copy of this form filed in the individual's personnel folder not less than once every twelve- (12) months. Results of quarterly progress review sessions need be recorded only on copies retained by the employee and the supervisor. **A manual is available which may be obtained from the Department of Central Management Services, Bureau of Personnel.**

A minimum of three (3) copies of this form will be prepared – one for the supervisor, one for the employee, and one for the personnel files. Additional copies may be prepared if needed. If employee's position is at a level (unskilled, etc.) that does not lend itself to objective setting, indicate by inserting "N/A" (Not Applicable) wherever necessary.

S-201 (7/82) IL 401-0569

State of Illinois
## DEPARTMENT OF CENTRAL MANAGEMENT SERVICES
### Springfield, Illinois

**INDIVIDUAL DEVELOPMENT AND PERFORMANCE SYSTEM**

| 1. EMPLOYEE'S NAME - LAST, FIRST, MIDDLE | 2. DEPARTMENT, BOARD OR COMMISSION | 3. DIVISION OR INSTITUTION |
|---|---|---|
| Graham, Shawnetta | IL Dept. of Juvenile Justice | I Y C Warrenville |

| 4. EMPLOYEE'S SOCIAL SECURITY NUMBER | 5. EMPLOYEE'S PAYROLL TITLE | 6. TIME IN CURRENT TITLE |
|---|---|---|
| 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 | Library Associate | 12 YEARS _____ MONTHS |

| 7. PERIOD OF REPORT | 8. TYPE OF REPORT | ☐ FIRST PROBATIONARY | ☐ FINAL PROBATIONARY |
|---|---|---|---|
| FROM 5/1/2006 TO 5/1/2007 | ☒ ANNUAL   ☐ LAYOFF | ☐ SALARY INCREASE   ☐ DISCHARGE | ☐ INTERIM   ☐ OTHER _____ |

### GENERAL INFORMATION

The basis, purpose of the Individual Development and Performance system is to let employees know how they are doing, to motivate them, to improve their performance and to justify administrative personnel decisions.

The system attempts to minimize subjective judgments by utilizing a work planning concept of objective setting and feedback. Thus, it helps employee's control and evaluate their progress toward personal as well as organizational objectives.

---

The establishment of employee objectives is a five-step process which is illustrated as follows:

| SUPERVISOR'S RESPONSIBILITY Set and comm-unicate appropriate objectives | Prepare a list of objectives with employees. Discuss work objectives for this period. | Approve plans of faction for achieving work objectives and review with higher management. | Review progress. Make adjustments as required. Provide coaching and assistance. | Evaluate performance and results for annual appraisal. Prepare list of objectives for next period. |
|---|---|---|---|---|
| INFORMATION TO BE SHARED Organization objectives; major job responsibilities; self-development needs | OBJECTIVE SETTING | PLANS OF ACTION FOR JOB TO BE DONE | QUARTERLY PROGRESS REVIEW | EVALUATE PERFORMANCE ANNUALLY RESET OBJECTIVES |
| EMPLOYEE'S ROLE Discuss areas of responsibility relating to objectives and self-development needs. | Prepare list of objectives for discussion with supervisor. Discuss work objectives for this period. | Prepare plans of action to meet objectives for approval of supervisor. Per-form the job to be done. | Preview progress and discuss any problems with supervisor. | Make self-evaluation and evaluate results for annual appraisal. Prepare list of objectives for next period. |

Each employee will be counseled by his or her supervisor and a copy of this form filed in the individual's personnel folder not less than once every twelve- (12) months. Results of quarterly progress review sessions need be recorded only on copies retained by the employee and the supervisor. **A manual is available which may be obtained from the Department of Central Management Services, Bureau of Personnel.**

A minimum of three (3) copies of this form will be prepared – one for the supervisor, one for the employee, and one for the personnel files. Additional copies may be prepared if needed. If employee's position is at a level (unskilled, etc.) that does not lend itself to objective setting, indicate by inserting "N/A" (Not Applicable) wherever necessary.

CMS-201 (7/82) IL 401-0569

**State of Illinois**
**DEPARTMENT OF CENTRAL MANAGEMENT SERVICES**
**Springfield, Illinois**

### INDIVIDUAL DEVELOPMENT AND PERFORMANCE SYSTEM

| 1. EMPLOYEE'S NAME - LAST, FIRST, MIDDLE | 2. DEPARTMENT, BOARD OR COMMISSION | 3. DIVISION OR INSTITUTION |
|---|---|---|
| Graham, Shawnetta | IL Dept. of Juvenile Justice | I Y C Warrenville |

| 4. EMPLOYEE'S SOCIAL SECURITY NUMBER | 5. EMPLOYEE'S PAYROLL TITLE | 6. TIME IN CURRENT TITLE |
|---|---|---|
| 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 | Library Associate | 13    YEARS    _____ MONTHS |

| 7. PERIOD OF REPORT | 8. TYPE OF REPORT | | |
|---|---|---|---|
| FROM 5/1/2007   TO 5/1/2008 | ☐ FIRST PROBATORY  ☐ FINAL PROBATIONARY | | |
| | ☒ ANNUAL  ☐ SALARY INCREASE  ☐ INTERIM | | |
| | ☐ LAYOFF  ☐ DISCHARGE  ☐ OTHER _____ | | |

## GENERAL INFORMATION

The basis, purpose of the Individual Development and Performance system is to let employees know how they are doing, to motivate them, to improve their performance and to justify administrative personnel decisions.

The system attempts to minimize subjective judgments by utilizing a work planning concept of objective setting and feedback. Thus, it helps employee's control and evaluate their progress toward personal as well as organizational objectives.

---

The establishment of employee objectives is a five-step process which is illustrated as follows:

| SUPERVISOR'S RESPONSIBILITY Set and comm-unicate appropriate objectives | Prepare a list of objectives with employees. Discuss work objectives for this period. | Approve plans of faction for achieving work objectives and review with higher management. | Review progress. Make adjustments as required. Provide coaching and assistance. | Evaluate performance and results for annual appraisal. Prepare list of objectives for next period. |
|---|---|---|---|---|
| INFORMATION TO BE SHARED Organization objectives; major job responsibilities; self-development needs | OBJECTIVE SETTING | PLANS OF ACTION FOR JOB TO BE DONE | QUARTERLY PROGRESS REVIEW | EVALUATE PERFORMANCE ANNUALLY RESET OBJECTIVES |
| EMPLOYEE'S ROLE Discuss areas of responsibility relating to objectives and self-development needs. | Prepare list of objectives for discussion with supervisor. Discuss work objectives for this period. | Prepare plans of action to meet objectives for approval of supervisor. Per-form the job to be done. | Preview progress and discuss any problems with supervisor. | Make self-evaluation and evaluate results for annual appraisal. Prepare list of objectives for next period. |

Each employee will be counseled by his or her supervisor and a copy of this form filed in the individual's personnel folder not less than once every twelve- (12) months. Results of quarterly progress review sessions need be recorded only on copies retained by the employee and the supervisor. **A manual is available which may be obtained from the Department of Central Management Services, Bureau of Personnel.**

A minimum of three (3) copies of this form will be prepared – one for the supervisor, one for the employee, and one for the personnel files. Additional copies may be prepared if needed. If employee's position is at a level (unskilled, etc.) that does not lend itself to objective setting, indicate by inserting "N/A" (Not Applicable) wherever necessary.

CMS-201 (7/82) IL 401-0569

| | |
|---|---|
| Shawnetta T. Graham | ) |
|       Plaintiff, Pro Se | ) |
|    -VS- | ) |
| | )   **United States District Court** |
| **State of Illinois and the Illinois Department** | )   **Northern District of Illinois** |
| **Of Corrections,** | ) |
|       **Defendants** | )     **Honorable Judge** |
| | )     **Der Yeghiayan** |
| | ) |
| | )   **Civil Action #: 07 C 7078** |

# EXHIBIT

# 3

## AFSCME AGREEMENT

# AGREEMENT

between



# AFSCME

American Federation of State,
County and Municipal Employees,
Council 31, AFL-CIO

and



# STATE OF ILLINOIS

Department of
Central Management Services

July 1, 2004 – June 30, 2008

RC-06-OCB   RC-09-OCB   RC-10-OCB   RC-14-OCB
RC-28-OCB   RC-42-OCB   RC-62-OCB   RC-63-OCB

its policies, budget and operations, the manner of exercise of its statutory functions and the direction of its working forces, including, but not limited to: The right to hire, promote, demote, transfer, evaluate, allocate and assign employees; to discipline, suspend and discharge for just cause; to relieve employees from duty because of lack of work or other legitimate reasons; to determine the size and composition of the work force, to make and enforce reasonable rules of conduct and regulations; to determine the departments, divisions and sections and work to be performed therein; to determine the number of hours of work and shifts per workweek; to establish and change work schedules and assignments; to introduce new methods of operation; to eliminate, contract, and relocate or transfer work and maintain efficiency.

**Section 2. Statutory Obligations**

Nothing in this Agreement shall be construed to modify, eliminate or detract from the statutory responsibilities and obligations of the Employer except that the exercise of its rights in the furtherance of such statutory obligations shall not be in conflict with the provisions of this Agreement.

## ARTICLE III

### Non-Discrimination

**Section 1. Prohibition Against Discrimination**

Both the Employer and the Union agree not to discriminate against any employee on the basis of race, sex, sexual orientation, creed, religion, color, marital or parental status, age, national origin, political affiliation and/or beliefs, nor shall the parties discriminate against any employee with a disability, or for other non-merit factors.

**Section 2. Union Activity**

The Employer and the Union agree that no employee shall be discriminated against, intimidated, restrained or coerced in the exercise of any rights granted by the Illinois Public Labor Relations Act, Illinois Revised Statutes, 5 ILCS 315/1 et seq. (P.A. 83-1012) or by this Agreement, or on account of membership or non-membership in, or lawful activities on behalf of the Union.

**Section 3. Membership Solicitation**

Neither the Union nor its members shall solicit membership during an employee's work time.

**Section 4. Equal Employment/Affirmative Action/ADA**

The parties recognize the Employer's obligation to comply with federal and state Equal Employment Affirmative Action Laws and the Americans with Disabilities Act.

## ARTICLE IV

### Checkoff/Fair Share

**Section 1. Deductions**

The Employer agrees to deduct from the pay of those employees who individually request it any or all of the following:
   a) Union membership dues, assessments, or fees;
   b) Union sponsored credit union contributions;
   c) P.E.O.P.L.E. contributions.

[4]

Section 3(b). In the event that the employee takes the geographical transfer, refuses the geographic transfer, or moves to vacancy as outlined above, such employee shall have recall rights as set forth in Article XX, Section 4, Recall, however, such recall rights shall be limited to the agency at which the employee was employed at the time he/she was made the subject of a geographic transfer. An employee shall be reimbursed for all reasonable transportation and moving expenses incurred in moving to a new location because of an involuntary permanent geographical transfer.

It is understood that the term geographical transfer includes both transfers across county lines, and, within Cook County, transfers of a significant distance.

Appeals of geographical transfer must be filed pursuant to the Memorandum of Understanding.

# ARTICLE XXIII

## Leaves of Absence

### Section 1. General Leave

The Employer may grant leaves of absence without pay to employees for periods not to exceed six (6) months. Such leaves may be extended for good cause by the Employer for additional six (6) month periods. Any request for such leave shall be made in writing by the employee reasonably in advance of the leave unless precluded by emergency conditions, stating the purpose of the leave, the expected duration of absence, and any additional relevant information.

### Section 2. Leave for Elected Office

Any employee who is elected to a State office shall, upon request, be granted a leave of absence for the duration of the elected term.

### Section 3. Educational Leave

a) A leave of absence for a period not to exceed one (1) year may be granted to an employee in order that the employee may attend a recognized college, university, trade or technical school, high or primary school, provided that the course of instruction is related to the employee's employment opportunities with the State and is of potential benefit to his/her State service. Before receiving the leave, or an extension thereof, the employee shall submit to the Employer satisfactory evidence that the college, university or other school has accepted him/her as a student and, on the expiration of each semester or other school term, shall submit proof of attendance during such term. Such leaves may be extended for good cause for additional periods not to exceed one (1) year each. Such leaves or extensions thereof shall not be unreasonably denied.

b) If because of changes in certification, accreditation or licensure employees are required by the Employer to take courses on a part-time basis so as to retain their present position classification such employees shall be granted reasonable time for such without loss of pay. Those employees required to take courses on a full-time basis will be granted a leave of absence without pay. Where employees retain classification status despite increased standards by exercise of Article XXVI, Section 4, such employees shall be eligible for the leaves or time off as provided above if so required by the Employer to attend such courses.

[69]

e) An employee who is reemployed, reinstated or recalled from indeterminate layoff and who received lump sum payment in lieu of unused sick days may have such days restored by returning the gross amount paid by the State for the number of days to be so restored to the employee's sick leave account.

f) An employee shall be allowed to carry over from year to year of continuous service any unused sick leave allowed under this Section and shall retain any unused sick leave or emergency absence leave accumulated prior to December 19, 1961.

g) Accumulated sick leave available at the time an employee's continuous State service is interrupted for which no salary payment is made shall upon verification be reinstated to the employee's account upon return to full time or regularly scheduled part-time employment except in temporary or emergency status. This reinstatement is applicable provided such interruption of service occurred not more than five (5) years prior to the date the employee reenters State service and provided such sick leave has not been credited by the appropriate retirement system towards retirement benefits.

h) An employee taking leave to provide nursing and/or custodial care for the employee's newborn infant, whether natural born or adopted, shall not be required to use any amount of accumulated sick leave he/she does not request.

i) The guidelines for enrollment and usage of Sick Leave Banks are enumerated in the Memorandum of Understanding entitled "Sick Leave Bank".

## Section 17.  Carry-Over

Employees shall be allowed to carry over from year to year of continuous service any unused sick leave allowed under this provision and shall retain any unused sick leave accumulated prior to the effective date of this Agreement.

## Section 18.  Advances

Any employee with more than two (2) years continuous service, whose personnel records warrant it may be advanced sick leave with pay for not more than ten (10) working days with the written approval of the Employer. Such advances will be charged against sick leave accumulated later in subsequent service.

## Section 19.  Service-Connected Injury and Illness

An employee who suffers an on-the-job injury or who contracts a service-connected disease, shall be allowed full pay during the first calendar week without utilization of any accumulated sick leave or other benefits. Thereafter, the employee shall be permitted to utilize accumulated sick leave. In the event such service-connected injury or illness becomes the subject of an award by the Industrial Commission, the employee shall restore to the State the dollar equivalent which duplicates payment received as sick leave days, and the employee's sick leave account shall be credited with the number of sick leave days used. An employee who suffers an on-the-job injury or who contracts a service-connected disease shall not be required to utilize any accumulated sick days prior to being granted an illness or injury leave under Section 21, below.

Employees whose compensable service-connected injury or illness requires appointments with a doctor, dentist, or other professional medical practitioner shall with supervisor approval be allowed to go to such appointments without loss of pay and without utilization of sick leave.

[76]

## Section 20. Alternative Employment Program

The Employer will implement an alternative employment program for any employee who is able to perform alternative employment after a work related or non-work related disability which precludes that employee from performing his or her currently assigned duties pursuant to P.A. 84-876 as it pertains to Section 8c (6) of the Personnel Code.

## Section 21. Illness or Injury Leave

Employees who have utilized all their accumulated sick leave days (except as provided in Section 19 above) and are unable to report to or back to work because of the start of or continuance of their sickness or injury, including pregnancy related disability, shall receive a disability leave. During said leave the disabled employee shall provide written verification by a person licensed under the Illinois Medical Practice Act or under similar laws of Illinois (including a person who holds a current national certification as a nurse practitioner). Such verification shall show the diagnosis, prognosis and expected duration of the disability; such verification shall be made no less often than every thirty (30) days during a period of disability unless the nature of the illness precludes the need for such frequency. Prior to requesting said leave, the employee shall inform the Employer in writing the nature of the disability and approximate length of time needed for leave. The written statement shall be provided by the attending physician. If the Employer has reason to believe the employee is able or unable to perform his/her regularly assigned duties and the employee's physician certifies he/she as being able or unable to report back to work the Employer may rely upon the decision of an impartial physician as to the employee's ability to return to work. Such examination shall be paid for by the Employer. The Employer will not arbitrarily deny such leave request.

## Section 22. Treatment of Seniority

a) A certified employee shall retain and continue to accumulate seniority and continuous service while on leaves provided for under this Article except those leaves under Section 21 accumulation shall not exceed three (3) years and Sections 1 and 2 where there shall be no accumulation of seniority and continuous service. A probationary employee serving an initial probation shall not accumulate seniority during such leave beyond the amount of time they have been employed with the State provided that such accumulation shall not reduce the probationary period.

b) Seniority and continuous service for intermittents on leave of absence shall accrue by the ratio of hours paid to full time for the three (3) months prior to leave or the three (3) months prior to being involuntarily non-scheduled as a result of the 1500 hours limit if such limit was reached in the Cost Center during the three (3) months prior to the leave.

## Section 23. Employee Rights After Leave

When an employee returns from any leave of absence permitted by this Agreement, the Employer shall return the employee to the same or similar position in the same position classification in which the employee was incumbent prior to the commencement of such leave, seniority permitting. If the employee does not have the seniority, the layoff provisions of this Agreement shall apply.

## Section 24. Failure to Return from Leave

Failure to return from a leave of absence within five (5) days after the expiration date thereof may be cause for discharge, unless it is impossible

[77]

| | |
|---|---|
| Shawnetta T. Graham | ) |
| Plaintiff, Pro Se | ) |
| -VS- | ) |
| | ) **United States District Court** |
| State of Illinois and the Illinois Department | ) **Northern District of Illinois** |
| Of Corrections, | ) |
| Defendants | ) **Honorable Judge** |
| | ) **Der Yeghiayan** |
| | ) |
| | ) Civil Action #: <u>07 C 7078</u> |

# EXHIBIT

# 4

**Signature of the Governor for the State of Illinois for the AFSCME Union Contract**

For the State of Illinois



| | |
|---|---|
| Shawnetta T. Graham | ) |
| Plaintiff, Pro Se | ) |
| -VS- | ) |
| | ) **United States District Court** |
| | ) **Northern District of Illinois** |
| State of Illinois and the Illinois Department | ) |
| Of Corrections, | ) |
| Defendants | ) **Honorable Judge** |
| | ) **Der Yeghiayan** |
| | ) |
| | ) Civil Action #: <u>07 C 7078</u> |

# EXHIBIT

# 5

**Signature of CEO of Union and Local 416 President**



For the American Federation of State, County and
Municipal Employees, AFL-CIO

*(signatures)*

For the American Federation of State, County and
Municipal Employees, AFL-CIO

*(signatures)*



For the American Federation of State, County and
Municipal Employees, AFL-CIO

*Paul A. Cooper* #3695
*Vincent Hallyrith* #1866
*James Dickerson*
*Kathy A Kane* #448
*David Mours* 805
*Mark Ken* 2767
*Mellia Pettis* 1805
*Dee Ann Hunk* 124
*Ralph Mueller* 1175
*Jan Bindly* 416
#993
*Vernice Houston Payne* 2807
*Randy Dawren*
*John King* 1787
*Reginia R. Megson* 2081
*Bernie Reed* 2808
*Deborah Kennedy*
*Nellie Fister*
*Steve Redbarn*
*Joan Dugle*
*Albert E. McDaniel* Jackie
*Amy Crouch*

For the American Federation of State, County and
Municipal Employees, AFL-CIO

*Duane Monty* 1805
*Richard Ashworth* 2052
*Don Peter* 2794
*Jeremy Rice* 3605
*Ray Nelg* 3605
*Jeff* 3605
*J.R. Pettis* etc 1006
*Kathy Anderson* 1787
*Algaloos C. Taylor* 2467
*Lili Wheeler*
*Carol King* 2258
*Maureen Jeffry* 2258
*Vivian Burddick* 3693
*Jeanne McElroy* 26
*Sharon Lamne* 264
*Marc Bakus* 2294
*Ken Turnquist*
*Bill Caraway* 3603
*Jim Dugle* 1591
*James L. Brewer* 36X
*Paul B. Kendall* 3567
*Linda D. Allen*

**FILED**

AUG 1 8 2008

Judge Samuel Der-Yeghiayan
U.S. District Court

| | |
|---|---|
| Shawnetta T. Graham | ) |
|      Plaintiff, Pro Se | ) |
|   -VS- | ) |
| | )  **United States District Court** |
| **State of Illinois and the Illinois Department** | )  **Northern District of Illinois** |
| **Of Corrections,** | ) |
|      **Defendants** | )  **Honorable Judge** |
| | )  **Der Yeghiayan** |
| | ) |
| | )  **Civil Action #: 07 C 7078** |

**RECEIVED**

AUG 1 8 2008

Judge Samuel Der-Yeghiayan
U.S. District Court

# EXHIBIT

# 6

**Copy of Graham's work identification**





**FILED**

AUG 1 8 2008

Judge Samuel Der-Yeghiayan
U.S. District Court

| | |
|---|---|
| Shawnetta T. Graham | ) |
|      Plaintiff, Pro Se | ) |
|   -VS- | ) |
| | )   **United States District Court** |
| **State of Illinois and the Illinois Department** | )   **Northern District of Illinois** |
| **Of Corrections,** | ) |
|      **Defendants** | ) |
| | )   **Honorable Judge** |
| | )   **Der Yeghiayan** |
| | ) |
| | )   Civil Action #: <u>07 C 7078</u> |
| | ) |

**RECEIVED**

AUG 1 8 2008

Judge Samuel Der-Yeghiayan
U.S. District Court

# EXHIBIT

# 7

**Notice of timely exceptions issues from IDRC**

STATE OF ILLINOIS

HUMAN RIGHTS COMMISSION

IN THE MATTER OF: )
)
    JANET S. DOWNEN, )
)
        Complainant, )
)
and )     CHARGE NO: 1990SF0486
)     EEOC NO:   21B902302
    STATE OF ILLINOIS, )     ALS NO:    S-10721
    DEPARTMENT OF CORRECTIONS, )
)
        Respondent. )

## NOTICE

You are hereby notified that the Illinois Human Rights Commission has not received timely exceptions to the Recommended Order And Decision in the above named case. Accordingly, pursuant to Section 8A-103(A) and/or 8B-103(A) of the Illinois Human Rights Act and Section 5300.910 of the Commission's Procedural Rules, that Recommended Order and Decision has now become the Order And Decision of the Commission.

DATED: 1/4/02

KATHERINE A. PARKER
EXECUTIVE DIRECTOR
HUMAN RIGHTS COMMISSION

## STATE OF ILLINOIS

## HUMAN RIGHTS COMMISSION

| | |
|---|---|
| IN THE MATTER OF: | ) |
| | ) |
| WILLIAM PENNING, | ) |
| | ) |
| | ) |
| **Complainant,** | ) |
| | ) |
| | ) |
| **and** | )    **CHARGE NO(S):**    1994CF2117 |
| | )    **EEOC NO(S):**    21B941421 |
| | )    **ALS NO(S):**    8559 |
| STATE OF ILLINOIS, | ) |
| DEPARTMENT OF CORRECTIONS, | ) |
| | ) |
| | ) |
| **Respondent.** | ) |

### <u>NOTICE</u>

You are hereby notified that the Illinois Human Rights Commission has not received timely exceptions to the Recommended Order And Decision in the above referenced case. Accordingly, pursuant to Section 8A-103(A) and/or 8B-103(A) of the Illinois Human Rights Act and Section 5300.910 of the Commission's Procedural Rules, that Recommended Order And Decision has now become the Order And Decision of the Commission

DATED: _April 28, 1998_

GAIL M. BRADSHAW
EXECUTIVE DIRECTOR
HUMAN RIGHTS COMMISSION

STATE OF ILLINOIS
ILLINOIS HUMAN RIGHTS COMMISSION

IN RE THE MATTER OF:                )
                                    )
DEACHTRA HENRY,                     )
                                    )       Charge No. 1993CF1907
            Complainant,            )       EEOC No.
                                    )       ALS No. 7822
      and                           )
                                    )
STATE OF ILLINOIS,                  )
DEPARTMENT OF CORRECTIONS,          )
                                    )
                                    )
                                    )
            Respondent.             )

## NOTICE

You are hereby notified that the Illinois Human Rights Commission has not received timely exceptions to the Recommended Order And Decision in the above named case. Accordingly, pursuant to Section 8A-103(A) and/or 8B-103(A) of the Illinois Human Rights Act and Section 5300.910 of the Commission's Procedural Rules, that Recommended Order And Decision has now become the Order And Decision of the Commission.

DATED: January 28, 1998

                                    GAIL M. BRADSHAW
                                    EXECUTIVE DIRECTOR
                                    HUMAN RIGHTS COMMISSION

| | |
|---|---|
| Shawnetta T. Graham | ) |
|        **Plaintiff, Pro Se** | ) |
|   -VS- | ) |
| | )   **United States District Court** |
| **State of Illinois and the Illinois Department** | )   **Northern District of Illinois** |
| **Of Corrections,** | ) |
|        **Defendants** | )      **Honorable Judge** |
| | )       **Der Yeghiayan** |
| | ) |
| | )   **Civil Action #: <u>07 C 7078</u>** |

# EXHIBIT

# 8

## Letter from AFSCME Union President Local 416

Ms Graham                                                    12/15/06


In a letter you sent council 31 you referenced YS 2 Union rep Mr. Mathis and Mr. Tesh as being involved in your situation. Please be advised these two are not nor ever were representatives of this union.


Jan Bradley———President Local 416

| | |
|---|---|
| Shawnetta T. Graham | ) |
|       Plaintiff, Pro Se | ) |
|   -VS- | ) |
| | )   **United States District Court** |
| State of Illinois and the Illinois Department | )   **Northern District of Illinois** |
| Of Corrections, | ) |
|       Defendants | )     **Honorable Judge** |
| | )      **Der Yeghiayan** |
| | ) |
| | )   Civil Action #: <u>07 C 7078</u> |

# EXHIBIT
# 9

## incidents of working with job restriction
## & working outside job title

| | |
|---|---|
| Shawnetta T. Graham | ) |
| Plaintiff, Pro Se | ) |
| -VS- | ) |
| | ) United States District Court |
| State of Illinois and the Illinois Department | ) Northern District of Illinois |
| Of Corrections, | ) |
| Defendants | ) Honorable Judge |
| | ) Der Yeghiayan |
| | ) |
| | ) Civil Action #: 07 C 7078 |
| | ) |
| | ) |
| | ) |
| | ) |

**Outline for Exhibits 9**
**Fox Valley Orthopedic Institute Physician Return to work Report**
**Dated:  May, 19 2004 light duty and limitation until June, 19 2004**
Worked out of job restriction on May 28, 2004 while on medical restriction and
Also, I worked out of my hiring job title on June 10, 2004 with a work restriction.
(KNEES WENT ON THE JOB ON JULY 1, 2004)

Fox Valley Orthopedic Institute Physician Return to work Report
Dated:  July 19, 2004 MRI order. The report noted activity restriction & limitation
of continuous walking and standing for one hour and knee supports were ordered.
Return to work with light duty, and worked other duties assigned while on medical
restriction on the following dates: July 26, 2004, August 6, 2004 & August 13, 2004

Fox Valley Orthopedic Institute Physician Return to work Report dated:
August 16, 2004 stated an order for physical therapy and return to work with light
duty on August 16, 2004 with limitation of one hour walking and standing. Return
to work with full duty on October 04, 2004. Work while on restriction out of the
scope of the hiring job title on September 25, 2004.

NOTE: See Graham's Complaint Exhibits K for Fox Valley Orthopedic Institute
Physician Return to work Report.
NOTE: See Exhibit 9 attached

NOTE: All medical documents were hand delivered to my supervisor plus an
incident report dated July 20, 2004 stated that I was on a work restriction. (See
Exhibit 9)

**ADULT AND JUVENILE DIVISIONS**
**INCIDENT REPORT**

Institution/Program: _IYC-WAR + Library_    Date and Time of Incident: _5/28/04  8.50 AM_

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☒  B. Were Restraints/Force Used: YES ☐ NO ☒  C. Was Property Damaged: YES ☐ NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☒  E. Were Arrests Made: YES ☐ NO ☒

F. Any Injuries/Hospitalizations: YES ☐ NO ☒  G. Were there Media Inquiries: YES ☐ NO ☒

| Inmates/Staff Involved: Name | I.D.# | Offense | Commitment Date | | Witnesses to Incident: Name | I.D.# |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

Statement of Facts: (NARRATIVE)

On May 28, 2004 I was assigned library bathroom duty. To keep a control setting in a Maximum severity juvenile prison. I used a system which require alot of walking. I have a work restriction due to the fact I had an on the job injury. The assignment started at 2nd and ended at 6th hour. (9:30 & 2:15 p.m.)

_Shawnetta Shelton_ 5/28/04  10:45 pm

| Reporting Employee | Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |
|---|---|---|---|---|

Administrative Assessment: _____

Chief Administrative Officer _____  Date/Time _____

Distribution:    Director
                 Deputy Director of Appropriate Division          Legal Services (only if restraints/force used)
                 Deputy Director of Bureau of Inspections and Audits    File

C 434 (4/83)
426-0410                                    Printed on Recycled Paper

STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS

**ADULT AND JUVENILE DIVISIONS**

**INCIDENT REPORT**

Institution/Program: **IYC-WARRENVILLE-LIBRARY**   Date and Time of Incident: **6-10-04  12⁰⁰ p.m.**

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐  NO ☒   B. Were Restraints/Force Used: YES ☐  NO ☒   C. Was Property Damaged: YES ☐  NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐  NO ☒   E. Were Arrests Made: YES ☐  NO ☒

F. Any Injuries/Hospitalizations: YES ☐  NO ☒   G. Were there Media Inquiries: YES ☐  NO ☒

| Inmates/Staff Involved: Name | I.D.# | Offense | Commitment Date | | Witnesses to Incident: Name | I.D.# |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

Statement of Facts: (NARRATIVE)

On June 10, 2004 at 4ᶜ hour I was assigned the library school desk bathroom post. I have a work restriction due to the fact I had won the job work injury. On the following date and time there were three YS II and one clinical worker standing around talking in the library. This is a problem when I am assigned the library. The noise and the additional bodies are not needed. Also at 6ᵗʰ hour the following youths were sent to the library from Mr. Loveless's class.

K. E████

A. N████

These youth were kicked out for disciplinary reasons.

The library bathroom post duty started at 4ᶜ and end at 6 hour.

**Shawnetta Graham**   6-10-04   2 ²⁰ pm

| Reporting Employee | Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |
|---|---|---|---|---|

Administrative Assessment: _____

_____

_____

Chief Administrative Officer _____   Date/Time _____

Distribution:   Director
   Deputy Director of Appropriate Division        Legal Services (only if restraints/force used)
   Deputy Director of Bureau of Inspections and Audits    File

IC 434 (4/02)

Institution/Program: _IYC WARRENVILLE Library_  Date and Time of Incident: _7/26/04   2PM_

f the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐  NO ☒   B. Were Restraints/Force Used: YES ☐  NO ☒   C. Was Property Damaged: YES ☐  NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐  NO ☒   E. Were Arrests Made: YES ☐  NO ☒

F. Any Injuries/Hospitalizations: YES ☐  NO ☒   G. Were there Media Inquiries: YES ☐  NO ☒

| Inmates/Staff Involved: | | | | Witnesses to Incident: | |
|---|---|---|---|---|---|
| Name | I.D.# | Offense | Commitment Date | Name | I.D.# |
| | | | | | |
| | | | | | |
| | | | | | |

Statement of Facts: (NARRATIVE)

On July 26, 2004 of was Assigned the duty of
running the bathroom line from 8:30 a.m. to 2 pm.
of was told that the staff was not Available.
The only way we could have a staff in the
library is if we pulled one of the staff from
the Counselor rooms. However, their were two
staff at post 26. (YS WEAVER and YS LEVY)
Also, of noticed their were other staff walking
around 7/26/04   2PM

| Reporting Employee | Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |
|---|---|---|---|---|

Administrative Assessment: _____

Chief Administrative Officer _____ Date/Time _____

Distribution:   Director
                Deputy Director of Appropriate Division          Legal Services (only if restraints/force used)
                Deputy Director of Bureau of Inspections and Audits   File

434 (4/83)
126-0410

ADULT AND JUVENILE DIVISIONS
## INCIDENT REPORT

Institution/Program: __I.Y.C.-WARRENVILLE__   Date and Time of Incident: __8-6-04 / 10:15 AM__

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☒   B. Were Restraints/Force Used: YES ☐ NO ☒   C. Was Property Damaged: YES ☐ NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☒   E. Were Arrests Made: YES ☐ NO ☒

F. Any Injuries/Hospitalizations: YES ☐ NO ☒   G. Were there Media Inquiries: YES ☐ NO ☒

| Inmates/Staff Involved: Name | I.D.# | Offense | Commitment Date | Witnesses to Incident: Name | I.D.# |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

Statement of Facts: (NARRATIVE)

On August 6, 2004 I was assigned the bathroom library post which is usually run by 3 security staff. There were two coverage classes with two classes each.

I was told that there were two staff working security. However, at 10 AM I looked into Mr. Ross's class and there were two staff present. One was drinking coffee.

I was told there was another staff, during details.

I was told that there was one staff on Adams-II with about 4 youths.

It appears like on August 6, 2004 there was enough staff to hand someone else to run the bathroom; besides the library manager.

| Reporting Employee | Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |
|---|---|---|---|---|
| _Jeanette Graham_ 8-6-04 10:15 AM | | | | |

Administrative Assessment: _____

Chief Administrative Officer _____ Date/Time _____

Distribution:  Director
Deputy Director of Appropriate Division
Deputy Director of Bureau of Inspections and Audits
Legal Services (only if restraints/force used)
File

434 (4/83)
26-0410

STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS

## ADULT AND JUVENILE DIVISIONS
## INCIDENT REPORT

Institution/Program: __IYC-WARRENVILLE Library__   Date and Time of Incident: __8/13/04   10 AM__

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐  NO ☒   B. Were Restraints/Force Used: YES ☐  NO ☒   C. Was Property Damaged: YES ☐  NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐  NO ☒   E. Were Arrests Made: YES ☐  NO ☒

F. Any Injuries/Hospitalizations: YES ☐  NO ☒   G. Were there Media Inquiries: YES ☐  NO ☒

| Inmates/Staff Involved: Name | I.D.# | Offense | Commitment Date |
|---|---|---|---|
| | | | |
| | | | |

| Witnesses to Incident: Name | I.D.# |
|---|---|
| | |
| | |

Statement of Facts: (NARRATIVE)

On August 13, 2004 their was a situation where the library manager had to supervise the bathroom lines. She was told by my supervisor that it was my duty as assigned. Therefore I used a system which controls the movement of violent female offenders with emotional problems. I call the school desk and have non duty staff use the inter-com system to notify all classroom one at a time. Each classroom can send only three youths out at a time. When a teacher doesnot have anymore youths to send to the bathroom or has no one else to use the bathroom the teachers needs to step out of the classroom to notify me at the bathroom desk post. All mobile classroom are called by me using the intercom system. Sometimes, Mr. Loveless forgets to call. Mr. Loveless just sent his youth, unless I call him to remind him. Someone needs to explain the system to him. Also, the teachers, not all, need to step out of the classroom. to let me know if in fact they have more youths or they do not have any more youth to send to the bathroom.   (over)

__Lauretta Fielder__ — 8/13/04  10 AM

| Reporting Employee | Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |
|---|---|---|---|---|

Administrative Assessment: _____

_____

of Administrative Officer _____  Date/Time _____

Distribution:   Director
Deputy Director of Appropriate Division     Legal Services (only if restraints/force used)
Deputy Director of Bureau of Inspections and Audits     File

On august 13, 2004 YSII TESH and YSII Dingital
was at the school desk. YSII TESH said he was
security; however, he didnot walk into the enter-
library area from 8:30 — 1:30. He did walk-in
to return & borrow movie. Appartly, the
institution didn't have enough YSII to run
a Maxium security prison. On August 13, 2004
the nurse and the eye doctor rda a medical
line for vision care in the library.
On august 13, 2004 el was told verbally by a YSII
that my system is an inconvient to some. Of
am requesting that as long as my servie is
need to be use, as other duties assigned outside
of being the library Manager. My system stdocks,
and everyone will cbe respectful and ——— —
—————————— show compliancy,

2/2

STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS

## ADULT AND JUVENILE DIVISIONS
## INCIDENT REPORT

Institution/Program: __TYC WARRENVILLE - LIBRARY__   Date and Time of Incident: __9-25-04   9 AM to 3 PM__

the answer is yes to any of the following questions, explain in narrative below:

. Was a Weapon Involved: YES ☐  NO ☒   B. Were Restraints/Force Used: YES ☐  NO ☒   C. Was Property Damaged: YES ☐  NO ☒

. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐  NO ☒   E. Were Arrests Made: YES ☐  NO ☒

Any Injuries/Hospitalizations: YES ☐  NO ☒   G. Were there Media Inquiries: YES ☐  NO ☒

| mates/Staff Involved: Name | I.D.# | Offense | Commitment Date | | Witnesses to Incident: Name | I.D.# |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

itement of Facts: (NARRATIVE)

On September 25, 2004, I was asked by my supervisor, C.N. Miller, to operate the library, as well as, run the bathroom line. The daily population was 104. The operation of the library and bathroom line was run by the library manager, even though there was 1 large stage present. I could see this additional security staff. It appeared they had no other assignment. The present of school security within the library was invisible.

At 3rd hour Brittany ——— was sent to the library for discipline reasons from Mr. Lovelace's class. The space in the library was limited. The library is an area which is used to (house library patrons, bathroom users, intake cottage, and sometimes disciple youth. This is a standard practice for the facility. At 5th hour Brittany ——— was sent to the library from Ms. Dukua's Coverage Class (Ts Delbert)

(over)

| _Maurette Fisher_ | _9/27/04_  _3:31 pm_ | | | |
|---|---|---|---|---|
| Reporting Employee | Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |

nistrative Assessment: _____

Administrative Officer _____   Date/Time _____

aution:   Director
          Deputy Director of Appropriate Division          Legal Services (only if restraints/force used)
          Deputy Director of Bureau of Inspections and Audits   File

34 (4/83)

When assisting the youths with opening the bathroom
it was a challenge due to the fact of have'd soft cast
and foot walkers on both feet. ~~████████████████~~
~~████████████████████████████████████~~
~~████████████████████████████████████~~
~~████████████████ for the youths.~~ During the
afternoon school hours T. Rue and Brittany Taylor
were both mis-behavoring in the library. School
security was not around to escort them out,

2/2

STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS

## ADULT AND JUVENILE DIVISIONS
## INCIDENT REPORT

Institution/Program: __IYC. WARRENVILLE -LIB__ Date and Time of Incident: __7/20/04 : 9AM.__

If the answer is yes to any of the following questions, explain in narrative below:

Was a Weapon Involved: YES ☐   NO ☒   B. Were Restraints/Force Used: YES ☐   NO ☒   C. Was Property Damaged: YES ☐   NO ☒

Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐   NO ☒   E. Were Arrests Made: YES ☐   NO ☒

Any Injuries/Hospitalizations: YES ☐   NO ☒   G. Were there Media Inquiries: YES ☐   NO ☒

| Inmates/Staff Involved: | | | | Witnesses to Incident: | |
| Name | I.D.# | Offense | Commitment Date | Name | I.D.# |
| | | | | | |
| | | | | | |
| | | | | | |

Statement of Facts: (NARRATIVE)

ON July 20, 2004 I was told by the Asst. WARDEN of PROGRAMS
that their was a lot of Absent, therefore, there was No staff
Available to run the bathroom line. So, I was assigned the
duty. It Appeared that their was available staff. I
ran the bathroom line until about 1:30 p.m. I used the
phone system to Notify the mobile school area and the
gym. Such a system helps controls the movement.
Since I am on a work restriction, I could not go to
the classroom and notify each teacher to send three youths
at a time to the washroom. So, I called the school
desk to asked if they could use the intercom system
to Notify each teacher for me. I am requesting if in
fact I am assigned again the duty of running the bathroom
line. All teachers in the inner school stand outside their
door briefly to give hand or eye contact that they have no
more youths for the bathroom.                                End of Report

Reporting Employee _____ 7/20/04 9AM   Date/Time   Person Calling in Report   Person Accepting Report   Date/Time

Administrative Assessment: _____

Administrative Officer _____ Date/Time _____

bution:   Director
          Deputy Director of Appropriate Division          Legal Services (only if restraints/force used)
          Deputy Director of Bureau of Inspections and Audits   File

34 (4/83)

| | |
|---|---|
| Shawnetta T. Graham | ) |
|      Plaintiff, Pro Se | ) |
|   -VS- | ) |
| | )   **United States District Court** |
| State of Illinois and the Illinois Department | )   **Northern District of Illinois** |
| Of Corrections, | ) |
|      Defendants | )     **Honorable Judge** |
| | )     **Der Yeghiayan** |
| | ) |
| | )   **Civil Action #: <u>07 C 7078</u>** |

# EXHIBIT

# 10

## Purpose amended complaint

* underline items are the amendment to the filed complaint

# Proposed Amended Complaint

| | | |
|---|---|---|
| Shawnetta T. Graham | ) | United States District Court |
| Plaintiff, Pro Se | ) | Northern District of Illinois |
| | ) | |
| -VS- | ) | |
| State of Illinois, Illinois Department | ) | Civil Action #: 07 C 7078 |
| Of Corrections, Illinois Department of | ) | |
| Corrections School District # 428 | ) | |
| State of Illinois Department of Central Management Services, | | |
| Warden Jeffery Bargar of Illinois Youth | ) | |
| Center Warrenville, Assistant Warden of Programs | | |
| Margarita Mendoza of Illinois Youth Center | ) | |
| Warrenville, Assistant Warden of Operations Wendy Blank -Navarro | | |
| of Illinois Youth Center Warrenville, Governor of Illinois Rod R. Blagojevich, | | |
| Director Roger E. Walker of the Illinois of Department of Corrections & Cynthia N. Miller, | | |
| School Principal for the Illinois Department of Corrections School District # 428 at the Illinois | | |
| Youth Center Warrenville, | ) | |
| Defendants | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## COMPLAINT

For unlawful discrimination and unlawful employment practice against the physical handicap

### Allegation and Charges

About a federal question: United States Code Title 28 < Part IV> 1331

1.  This is a complaint which addresses a federal question if in fact the defendant has violated the following United States Civil Code Statues of Title 42:

(a)  Finding and Purpose

Title 42 United States Code Chapter 126 > 12101:

(b)  Unlawful Employment Practice

1

**Title 42 United States Code Chapter 21 > Subchapter VI > 2000-e-2:**

(c)   **Equal Rights under the Law**

**Title 42 United States Code Chapter 21 > Subchapter I > 1981;**

2.   This is a complaint which addresses a <u>federal question</u> if in fact the defendant has violated the following <u>United States Federal Act.</u>

(a)  Americans with Disabilities Act of 1990

Sec. 12101 (section 2) – 5 the defendant has overprotective rules and policies and intentional exclusion.

Sec. 12102 (section 3) -2 a, b, & c the plaintiff has a major impairment which affected a major life activities which was walking and standing

Sec. 12111. (Section) subchapter (title 1) Employment

(3)  The plaintiff was not a direct threat to the safety of others

(5a)  the defendant has 20 or more employees in calendar weeks.

(8)  The plaintiff was a qualified individual with a disability

(b) The Civil Rights Act of 1964: Title VII

Unlawful Employment Practices

Sec. 2000e-2 (Section 703)

(a) Respect to terms, conditions and privileges of employment base on disability.

(b) To limit, segregate, and classify base on disability

3.  This is a <u>federal question</u> if in fact the defendant has violated the plaintiff rights and if this is true than the plaintiff should have the right to recover damages under the following United States Codes:

(a)        **Civil Action for Deprivation**

United States Code Title 42 <chapter 21> Subchapter I 1983

(b)      **Civil Rights and Elective Franchise**

United States Code Title 28 < Part IV> Chapter 85 1343

(c)      **Proceeding in Vindication of Civil Rights**

2

United States Code Title 42 <chapter 21> Subchapter 1988

(d) **Damages in cases of intentional discrimination in Employment**

**United States Code Title 42<1981> a**

4.   This is a <u>federal question</u> if the facts that are stated in this complaint meet the <u>definition</u> of United States Civil Codes

   (a)   Title 42 <chapter 126> subchapters II Part A> 12131

   (b)   Title 42<chapter 126< subchapter > 12111

    **Conspiracy to interfere with Civil Rights**

   (c)   Title 42 <chapter 21> subchapters I 1985

     Amended federal questions

    **USCA Amend 10 to Amend 14**

    **Amend XI**

    **Law Suits against State**

5.   It is a question of Federal Jurisdictional Law as to whether connection between state officer and the act allege to be unconstitutional is sufficiently intimate to allow suit to be brought against the officer? < Note 139>

It is a federal question if the proper interpretation of the Amendment eleventh and fourteenth is relevant to this issue or case?

It is a federal question if the arm of the state is entitled to share the State's Eleventh Amendment immunity, this is a matter of federal law?

It is a federal question arising under this amendment if the state is a real party?

It is a federal question whether suit is barred by this amendment, is matter of federal law?

It is a federal question if the Doctrine of Ex Parte Young can be applied to the purposed amended complaint in order to allow the plaintiff injunctive relief to prevent an ongoing violation of irrational discrimination in the work place at Illinois Youth Center Warrenville?

Amended federal questions

## Title 42 <Chapter 126> 12102Definitions (2) A-C

**6.  It is a federal question if in fact the physical impairment Grade IV Focal Chondromalacia (See Graham's Complaint Exhibit K) and Varus Rotation with a Pes Planus Foot Structure(See Graham's Complaint Exhibit W) can be defined as physical impairment traits which is protected under a Federal Act which is the American Disabilities Act of 1990?**

**It is a federal question if under Title II of the ADA if the State conduct, State Agencies, and the name official conduct actually violates the constitution (14th amendment), if so this is an abrogation of their Eleventh Amendment rights and defense to Sovereign Immunity by Congress?**

**Title 28 <Chapter 85> 1331 Jurisdiction and Venue of District Court, <Note 418>, page 301**

**7.  It is a federal question if the District Court of Northern District of Illinois, Eastern Division have jurisdiction over Title VII claim which arouse under laws of the United States?**

8. **Brief Statement of Cause**

This violation occurred because of my disability. My disability occurred because of an on the job injury which caused me to have physical limitation and restriction. The defendant is being charged for failure to accommodate the plaintiff.

9. **Plaintiff's Background**

The plaintiff, who is Shawnetta T. Graham, began her career with the Illinois Department of Corrections as a full time state employee in May of 1994. She started her career at Illinois Youth Center St. Charles, where she was a Library Technical Assistant. After about eight weeks at IYC St. Charles the plaintiff was transferred to Illinois Youth Center Valley View where she became a Library Associate. In July 2002 IYC Valley View was closed by former Governor Ryan. So, the plaintiff was

4

transferred to Illinois Youth Center Warrenville. She began at IYC Warrenville in July 2002. At IYC Warrenville, Graham reported unusual incidents. (See Exhibit 1)

10.                              Introduction to Charge

An Illinois Department of Human Rights Complaint was filed against the Illinois Department of Corrections in November 2004. (See Exhibit A) This complaint was filed against the department because of negligence towards the plaintiff in the work setting at Illinois Youth Center Warrenville. The charge was crossed filled with the United States Equal Opportunity Commission. The action sought was to recover damages for lost of paid, everlasting physical and emotional damages, which have caused pain and suffering for the plaintiff. The charges were dismissed by the Investigator Sandra Kelly who appeared not to understand the body and the issues of the complaint and given evidence. (See Exhibit B) So, I requested a review, from the Chief Legal Counsel of the Illinois Department of Human Rights. (See Exhibit C) The Chief Legal Counsel dismissed the case as well. However, his decision was base on what appeared to be his choice of selective evidence. (See Exhibit D) The United States Equal Opportunity Commission adopted the findings of the Illinois Department of Human Rights. (See Exhibit E) The Illinois Department of Human Rights charges were developed with errors and was not corrected as the plaintiff requested. (See Exhibit F) So, a fact finding conference was scheduled. (See Exhibit G) When reviewing the charge Cynthia N. Miller race is noted as white and her race is African American. The plaintiff race was noted as black and on the complaint application the plaintiff notes her race as Mix-Breed; African Indian. (See Exhibit F) Some one called the plaintiff from the Illinois Department of Human Rights to tell the plaintiff that in the State of Illinois such a race selected does not exist. So, the plaintiff selected African Other to complete the application process. (See Exhibit F)

11.                              Statement of Jurisdiction

This case falls under Federal Civil Law and its nature is about discrimination in the employment setting and discrimination against the handicaps in the work setting

The Americans with Disabilities Act of 1990 , signed into law by President Bush on July 26, 1990, was hailed as the most significant piece of civil rights legislation since the Civil Rights Act of 1964... and under this federal law, individuals with disabilities gained legal protections against discrimination ...( See Employment Discrimination Second Edition Volume 9 Lexis Nexis). Also under United Stated Federal Laws qualify individual are protected. The United States Equal Employment Commission adopted a finding under a cross filing policy from the Illinois Department of Human Rights.  EEOC mailed a letter of Dismissal and Notice of Rights which was dated September 21, 2007.  (See Exhibit E) This letter stated I had ninety days to exercise my sue rights. This letter was signed by John P. Rowe, District Director. (See Exhibit E) Authorized by 1983 and 1985 of title 42 is within Federal Court's Jurdiction is based on United States Law...District Court have/had Federal question jurisdiction over action brought under 1983 and had pendent jurisdiction over related State law claims (See 28 USCA 1331 Chapter 85 Note 417 page 301) Pro Se Complaints litigant properly involved Federal Question jurisdiction by attempting to plead a Federal Civil Rights Action under 1983... Courts must examine Pro Se Civil Rights complaint to see weather the fact alleged... (See USCA 28 1343 Note 50 page 466) With all things said the United Stated District Court Northern District  of Illinois Eastern Division at Chicago has jurisdiction under the law and by geographic.

12.           Statement of Facts of the beginning

On January 06, 2004 I slipped on some ice near the garage at the Illinois Youth Center Warrenville. (See Exhibit H) The parking lot was not treated for the morning icy condition; there were neither salt nor sand on the parking lot foundation. I was walking from the garage because I checked out a tool. The tool was needed for a job assignment in the institution canteen. This injury became a new handicap for me, and it is called Chondromalacia. Due to the fact of the facility negligence, I sustain injuries to both knees. This was settled under the Illinois Workman Compensation Act. (See Exhibit J) This injury became a handicap, but I still had the ability to work as a qualified individual with a disability (ADA Title 1;

6

**Definition Sec.12111 (Section 101) (8). All my duties as a Library Associate were done without bringing any undue hardship to my employer (ADA Title1; Definition Sec.12111 (Section 101) (10) A & B ii, ii, iii & IV)**

13.    **Statement of Facts for the beginning of the charges and injury**

My employer has all documentation of the incident and treatment for Chondromalacia. I have limitation and struggles, but I worked through them to continue my career working with trouble youths. I was hirer from a list of job titles and which is a certified job title under Illinois Central Management Services. On July 01, 2004 I reported to work in the hiring job title of Library Associate. The assigned security was removed from the library area after lunch time, and my supervisor Mrs. Cynthia N. Miller assigned me to the library security post which consists of securing the youth movements of the inner library area. The inner library area consist of classroom, two bathrooms, principal office, copy room, library area, library phone, and the library office. I was standing giving directional direct orders to youths and my "knees gave out" and this is a handicap called Chondromalacia.  I was not near anything to hold myself up, and I was afraid. I manage to walk in a crunch position while making noises which represented and stated that I needed emergency assistant. When I entered into the facility the morning of July 1, 2004 I walked in a normal matter, and close to 1:00 o'clock in the p.m.; I had and abnormal walk. At that time, I needed mobile assistant from the nurse or any emergency medical assistant. (See Exhibit I)

14.    **Statement of Facts of the defendant wrong doing**

As I stood in front of my supervisor in a crunch position I tell her in a helpless matter that my knees gave out, and she just looked at me, and other staff did as well. At this time, I was denied the same privilege as others have received in an emergency medical situation on the facility grounds. We are trained annually on medical first responses. My supervisor was near a phone and she had a radio in her office. She stood by her secretary desk. At that time, the school secretary was Ms.

Vivian Travis and she was near a phone as well. Neither one of them helped a fellow member of their department; therefore, I started walking in a crunch position to the nurses' station. On this day I was dressed in India/Pakistan garments.

Before I reached the nurses' station, I walk passed and area called the school desk. At the school desk it was a staff posted, and her name is La-Sonya Eggleston-Gillian. She had a radio, phone, and an intercom available. She did not help a fellow member of her work team.  As I continued to walk in a crunch position to the nurses' station, two more staff who I have worked with daily and they both have witness my normal walking position. One person name is Tomeka Morman and the other name Theodore Gargantiel both walked right passed me. Both were equipped with radios and neither called for medical assistant.

I manage to walk in a crunched position to the nurses' station and I gave myself a rub stimulation treatment as I sat in a chair near the nurse. After the hand therapy, I was able to stand straight-up. Nurse Middleton did not examine me in a matter that a medical professional of Orthopedic or Podiatrist. Nurse Carolyn Middleton did not put her hands on the injured in area at anytime while I was at the nurses' station. She boldly told me that their main job was to care for the female youths and not the employees. I continue my days work which was to take a bulletin board display material off the wall in the facility canteen area. I sat in a chair while the female youths removed the items. When I returned to my office, I completed a notification of absent slip and I selected service connective time for the next work day.

15.        <u>Statement of Facts for Medical Treatment of injury</u>

That evening July 01, 2004 I went to see the Chiropractic who is Dr. Lindstrom who has many years of experience and he belongs to some Chiropractic Professional Association. (See Exhibit J) He referred me to the orthopedic doctor. Since Dr. Lindstrom referred me to a specialist , I went on my intermission to stay at home

8

and called in on the next work day as service connective and sick personal to cover me in a dispute over a job injury with an unauthorized absent. (See Exhibit J)

On July 19, 2004 I had a doctor visit with Dr. Bartel of Fox Valley Orthopedic Institute he ordered a MRI of both knees and water therapy. The MRI was done on July 27, 2004 and this report proves that my handicap is <u>Chondromalacia</u>. (See Exhibit K) This condition can occurred all of a sudden and without warning, and the person can not walk in a normal matter as a human being has in the history of mankind. Dr. Bartel ordered me to wear knee supports. (See Exhibit K) His nurse made sure I had them and I still use them today. On August 18, 2004 I was called in a meeting with Mrs. Cynthia N. Miller and Assistant Warden Mendoza. The subject of the meeting was about workman compensation packages, and injuries on the job, and making up injuries. In this meeting Miller referred to me as a nuisance. As I sat their in Miller's office my ankles continued to hurt. So, I went to Dreyer Clinic Walk-In-Care that evening on August 18, 2004. The treating doctor ordered an X-ray on both ankles. The treating doctor ordered me to take some medication and sent me to work with a doctor statement. (See Exhibit L) My ankles continued to hurt and they were swollen. So, I went to see Dr. Lyon of Lyon Foot and Ankle Clinic on August 23, 2004, and she ordered a MRI of both ankles. Also, she ordered physical therapy. (See Exhibit M)

16.         <u>Statement of Facts on Employment Discrimination</u>

On August 24, 2004 I reported to work and I worked the entire day and at the end of the day my supervisor Cynthia N. Miller asked me to signed a prepared statement which stated I was going on a medical leave. I explained to her that I did not have an opportunity to get union representation, and I was not comfortable signing a document that I did not prepare by myself or agreed with. I asked if she could give me a chance to seek a lawyer advice and speak to and have a union representative. (See Exhibit N) The morning of August 25, 2004, I was called into a meeting with Youth Supervisor Tesh, and my supervisor Cynthia N. Miller. (See

9

Exhibit O) Mrs. Miller led the conversation that discussed the rules and regulation of the Illinois Department of Corrections on their hirer employees working with medical restriction, medical issues, limitation, disability, or handicaps at any facility. Mrs. Cynthia N. Miller presented me with a fax copy of the administrative directive 03-02-215 ( See Exhibit P), and she handed me a copy of the administrative directive which stated that all Illinois Department of Corrections Employee must walk and stand for at least 60 minutes. When reading Administrative Directive 03-02-215, it does not state the 60 minutes walking or standing requirement. Such a directive is separate from A.D. 03-02-215. This directive which is A. D.03-02-215 has <u>intentional exclusion pretexts</u> that states that an employee of the Illinois Department of Corrections can work for 90 days with a physical limitation and restriction. (See Exhibit P) The meeting continued with Mrs. Cynthia N. Miller telling me if I did not leave voluntarily they would have to call the authority. I explained to Mrs. Miller that I did the same job the other day with the same medical limitation. I asked if I had any other time on the books that I could used to cover me for the day. I had already use up my sick-time benefits. Mrs. Miller stated that I had nothing available, and as soon as I get time I used it. Mr. Tesh asked if I had anything I could use to cover the time. (See Exhibit O) Miller answer no, she stated the only time available to me was dock-time. Most of the time dock-time leads to an administrative disciplinary hearing facing discharge.


17.        Statement of Facts on Force Medical Leave Statement

Mrs. Cynthia N. Miller stated that I needed to prepare and write a statement stating that I am requesting a medical leave. Mrs. Cynthia N. Miller stated this would cover me from unauthorized absence. Mrs. Cynthia N. Miller stated that if I did not prepare the statement and I walk out the gate without the statement in her hands it would be considered an unauthorized absent for any days that I did not report to work. An unauthorized absent can lead to a disciplinary hearing facing discharge. Therefore, I wrote a statement stating that I was asked to go on a medical leave, because of Illinois Department of Corrections rules and regulation of their employee

10

working with medical restriction and limitation on the facility grounds. Also, on this incident I telephoned the President of the Local Union, Jan Bradley, who confirmed that I should write the statement for protection from discharge or a hearing. As I sat in my office and prepared the statement Mrs. Cynthia N. Miller called me and said are you finish, because you need to leave grounds. I explained to her, that I have a learning disability and I needed to lookup hard to spell words and read my document a couple of times before I handed to her. I asked her if she could give me a little more time than others who have been in the same situation, but did not have writing and a learning struggle as I. I left grounds about 11:00 am, I did not fill out a notification of absent, but I did do the force medical leave statement and handed it to Mrs. Cynthia N. Miller as she ordered. (See Exhibit Q)


18.         **Statement of Facts of additional medical treatment**

The evening of August 25, 2004, I had an appointment with Dr. Lyons, and she ordered an ultra-sound of both ankles and sent me back to work with new limitations in a medical note. This doctor statement complied with the Illinois Department of Corrections Administrative Directive on employee working with medical limitation and medical restriction, which states that all employees must walk or stand at least 60 minutes. (See Exhibit M)


19.         **Statement of Facts for the return to work**

On August 26, 2004 at 8:00 am I came to work with a new statement that compiled with the Illinois Department of Corrections rules and regulation on their employee working on facility grounds with medical limitation and medical restriction. (See Exhibit M) This medical note stated I could walk and stand up to 60 minutes. I walked towards the facility entrance gate and I buzzed the gate to order entrance and the Youth Supervisor who was on duty hesitated to buzz me in. So, I stood their patiently. After a few minutes, I was allowed into the control area, but my keys were not issue to me like other mornings. The youth supervisor called Mrs. Cynthia N. Miller over the facility intercom. It appeared that the Youth Supervisor told Mrs.

11

Cynthia N. Miller I was on grounds. In a few minutes Mrs. Cynthia N. Miller was present at the control area, and I presented her with a new doctor statement from Dr. Lyon. After careful review of the statement, Mrs. Cynthia N. Miller told the on duty youth supervisor to give me my keys. After my keys were granted to me, I walked to my immediate work area and started my days work

On August 26, 2004 I was called into another meeting with YSII Daryl Tesh and Cynthia N. Miller. I was presented another statement which stated the following: If I could not walk or stand for 60 minutes I would leave grounds (See Exhibit R) On September 09, 2004 I presented Mrs. Cynthia N. Miller with a statement from Dr. Lyon which stated I was going on a short medical leave and will be recovering at home. (See Exhibit P) After someone spoke to my doctor on September 09, 2004 Mrs. Cynthia N. Miller called me into her office with Youth Supervisor Mathis. (See Exhibit S) Mrs. Cynthia N. Miller stated that my doctor had fax over a statement, which stated my medical leave started immediately. Therefore, Mrs. Cynthia N. Miller let me use vacation time to cover the force medical leave situation. Apparently, it was a mix-up with the treating doctors, so I reported back to work the next business day with a physician statement and the doctor order me to wear Cam-Walkers. (See Exhibit T) I had a total of five physical statements for Dr. Lyon office. (See Exhibit T)

20.           <u>Statement of Facts of Physical damages</u>

After Dr. Lyon medical findings were completed she sent me to work with Cam-Walkers on both feet, she ordered weekly ultra-sound treatment, my feet were wrapped by her nurses for heal and pain support. One of the feet was wrapped in a soft cast. Then she ordered her nurses to take molds of my feet for permanent orthopedic support in my shoes. Also, she completed a form for the Illinois Secretary of State for a handicap driver's plate. (See Exhibit U) It was granted and I drove to work with Cam-Walkers on both feet until Dr. Lyon order me not to wear them. I continued to work with limitation, and Dr. Lyon did not complete the

12

physician statement for a medical leave but referred me to the neurologist for nerve damage testing. The neurologist order some test. (See Exhibit V) I continued to work and I parked in the facility handicap parking space. Currently, I have to wear orthopedic shoe support full time or I will walk with a limp. I have permanent flat feet because of the incident on July 01, 2004. It is December 2007 and the injuries to my knees and my foot and ankle are still present. This is an everlasting impairment. (See Exhibit W) Dr Misty McNeill doctor, a doctor in Dr. Lyon general practice, statement states that my ankle injury may have been aggravated by her knee injury. (See Exhibit X)


21.    Statement of Facts of fail union grievance with summary of incidents

After a fail union grievance hearing about the situation, which was on October 13, 2004, and the following individuals were present were Sandi Ivemeyer, Cynthia N, Miller, and Kathy Weaver. (See Exhibit Y) I addressed in the grievance hearing that I felt like my Bill of Rights were violated in the employment setting. So, I decided to take the issue out of the facility to a higher jurisdiction who knew the law. The relief I sought in the grievance was simple it was for lost of pay. I was docked for 5 hours on August 25, 2004 and I did have available vacation benefit time. (See Exhibit Z) I was not allowed to use the other benefit time like other employee have done in my department. When reviewing my time sheet, I had two days of vacation and 3 hours of vacation. (See Exhibit Z) I was sent home on September 09, 2004 and was allowed to use vacation benefit time that was available. (See Exhibit AA) My doctor ordered me to wear Cam-Walker which is an orthopedic shoe boot. (See Exhibit BB)  On August 25, 2004 I was told I had no time to cover the hours, and I was docked 5 hours (See Exhibit AA) Also, on December 15, 2006 I was told verbally and in writing by the President of AFSCME Local 416 that YSII Mathis and YSII Tesh were never Certified Union Steward; therefore, management should not made the discussion to sent me hour because I requested that I have union representation and at the second level grievance management had the opportunity to allow Graham's complaint for relief. (See Exhibit FF)

13

22.          Statement of Facts of Administration Agency Remedies

After reviewing all incidents I decided to file a complaint against the Illinois
Department of Corrections for a violation of my Human Rights. (See Exhibit A) My
completed complaint application against the Illinois Department of Corrections was
for failure to accommodate and not providing me with emergency medical
treatment on July 01, 2004 and failure to accommodate me by forcing me to take a
medical leave on August 25, 2004 and September 09, 2004, and lost of pay with cost
and suffering. (See Exhibit A)

After the investigation, a fact finding conference was schedule, and the date of the
fact finding conference was September 14, 2005 at 11:00 am. (See Exhibit G)
Present at conference was Sandra Kelly, Cynthia N. Miller, and Janet Richmond
and I. The investigator was Ms. Sandra Kelly and at the fact finding conference
Mrs. Cynthia N. Miller stated in front of the investigator that," she did not called
for medical assistant because I did not hit the floor. If in fact I would have hit the
floor she would have called for medical assistant." Investigator Sandra Kelly
appeared not to understand the incident of the charges. Investigator Sandra Kelly
dismissed the charges, so I requested a review by the Chief Legal Counsel of the
Illinois Department of Human Rights. (See Exhibit C) Once the Chief Legal counsel
completed his investigation he ruled on a foot and ankle injury. (See Exhibit D) The
case was dismissed by the Chief Legal Counsel. Investigator Sandra Kelly dismissal
noticed stated a lack of substantial evidence for count A and for count B and C lack
of jurisdiction. (See Exhibit B) The Chief Legal Counsel Final Ordered sustained
the ruling of Investigator Sandra Kelly dismissal notice. (See Exhibit D)  The United
State Equal Opportunity Commission adopted their finding.  The Illinois
Department of Human Rights did not investigate the charge properly. Therefore, I
am asking the United State District Court Northern District of Illinois Eastern
Division in Chicago to rule in my favor because after further investigation Illinois

14

Department of Corrections did not have a directive that states that all employees have to walk and stand for 60 minutes.

23.        Statement of Facts of Unlawful Employment Practices

Such behavior of the defendant is Unlawful Employment Practices. Such an unlawful practices, is a violation of United States Federal Laws. It appeared Mrs. Cynthia N. Miller presented a document that did not exist. (See Exhibit 2) This occurred in the Summer of 2004 and another employee in my department was using crutches and she was not walked off grounds or forced to go on a medical leave because of physical restriction. This employee name is Denise Papiech, and she was not presented such a statement, only I. I here by request a review of the complaint that the Illinois Department of Corrections violated The Americans with Disability Act of 1990 and The Civil Right Act of 1964: Title VII on July 01, 2004 and August 25, 2004. On July 01, 2004 I was not accommodate with emergency medical assistant and on August 25, 2004 I was forced to take a medical leave of absent and lost wages where I was docked for 5 hours. On August 25, 2004 I was presented a policy which appears to be falsified. This policy stated all employees must walk and stand for at least sixty minutes. I am requesting that the Illinois Department of Corrections forward a copy of this policy to the United States District Court of Northern District of Illinois as it exist on August 25, 2004.

24.        Relief Sought for Enforcement

I am asking for the United States District Court of the Northern District of Illinois to reverse the decision of the EEOC which was to adopt the findings of the investigation of The Illinois Department of Human Rights. I am requesting that the courts order that EEOC to apply the following: Sec. 2000e-5 (Section 706) which is Enforcement Provisions and use their Investigatory Powers (Sec. 2000e-) and (Section 710). I am requesting that EEOC to due their own investigation and I asking that the United States District Court of The Northern District of Illinois to review the Illinois Department of Human Rights Complaint application which was mail to their agency

15

in November 2004 and cross file with EEOC? (See Exhibit A)

25.                        Relief Sought for Consideration

I am asking that the <u>United States District Court of the Northern District of Illinois</u>
to take consideration of the Affidavit from Assistant Attorney General Ann C.
Chalstrom as <u>testimonial</u> <u>evidence</u> (Black Law 8th Edition pages 600, yr. 2004) (See
Exhibit EE) Reasonable Doubt is used in criminal cases. (Black Law 8th Edition pages
1293-1294. yr 2004). <u>In the famous case which the late Johnny Cochran was an</u>
<u>attorney for O.J Simpson. Attorney Cochran presented a glove in the closing</u>
<u>arguments of the case, apparently the glove did not fit O.J hand, and the slogan</u>
<u>Cochran used "if it does not fit you must acquit." This is a Federal Civil Case and if the</u>
<u>Affidavit of Assistant Attorney General Ann C. Chalstrom has cause beyond doubt</u>
<u>that if in fact the Chief Legal Counsel Final Order was base on the entire investigator</u>
<u>records than I am requesting the Federal Court make their own independent decision</u>
<u>about the violation against graham in the work setting</u>.

26.                        Relief Sought for Recovery

The <u>first precise relief sought</u> is <u>$ 200,000</u> for pain and suffering, stress, and long term
physical impairment, time, cost, and violation of Rights under U.S. Code listed in this
complaint. The <u>second precise relief sought</u> is repayment of dock time which is 5
hours This has been figure to the best of my knowledge to be the gross sum $<u>116.63</u>.
(See Exhibit CC) The <u>third precise relief sought</u> is to restore the days of service
connective time which I was denied into a cash payment. I should have been granted 5
days service connective benefit time for the incident on July 01, 2004. I used my own
time to recuperate and for doctor appointments and physical therapy. I am requesting
for these days to be liquidated into cash base on the rate of pay for the salary year of
2004. The 5 days is base on the gross payment in 2004 which totals $ <u>874.90</u>. (See
Exhibit CC) The total settlement amount is <u>$ 200,991.53.</u> In the fiscal year of 2005
which began on <u>July 1, 2004</u> and ran through <u>June 30, 2005,</u> the total amount of

General Revenue employees of Illinois Department of Corrections were <u>13,670</u>. (See www.idoc.state.il.us)

27.    <u>Relief Sought under Civil Rights Act of 1991</u>

<u>The plaintiff is asking the courts to enforce the rights to recovery in cases which and</u> <u>where intentional unlawful employment discrimination has occurred in the work</u> <u>setting. Rule 8 states: (a) claims for relief should be (2): a short and plain statement</u> <u>of the claim showing that the pleader statement of the claim showing that the pleader</u> <u>is entitled to relief. (See FRCVP)  With all that has been said in this complaint</u> <u>Graham is asking to the following relief: The Civil Rights Act of 1991 amends</u> <u>several sections of Title VII, it provides for recovery of compensatory, and punitive</u> <u>damage is causes of intentional violations of Title VII, The American with</u> <u>Disabilities Act of 1990. Title I of the ADA prohibits employment discrimination</u> <u>against qualified individuals with disabilities. (See U.S. Equal Employment</u> <u>Opportunity Commission Website)</u>

<u>Now, Damages in Cases of Intentional Discrimination states that the Civil Right Act</u>

<u>of 1991 Sec. 102 ...under compensatory and punitive damages has limitation as</u>

<u>follow:</u>

<u>(a) Cases...14 and fewer than 101 employees in ...20 or more calendar</u>

<u>weeks...50,000</u>

<u>(b) Cases...100 and fewer than 201 employee in... 20 or more calendar weeks</u>

<u>...100,000</u>

<u>(c) Cases...200 and fewer than 501 employees in 20 or more calendar weeks...</u>

<u>200,000</u>

<u>(d) Cases...500 employees in each of 20 or more calendar weeks...300,000</u>

<u>(See www.eeoc.gov) (Page 4 of website) (See 42 <1981a>, Chapter 21</u>

<u>Right of Recovery)</u>

17

With all said from above Graham is entitled to relief under the Civil Rights Act of 1991 as stated in the limitation. This gives her the right for relief for the intentional Civil Rights violation toward Graham on August 25, 2008 and July 01, 2008. (See Statement of Facts)

28.                                    **PRAYER**

The Plaintiff is praying that the United States District Court honors her relief sought in this complaint. The Plaintiff is requesting a verdict from a presiding Federal Judge. The Plaintiff does not want a jury trial among her peers. The Illinois Constitution of 1970 Article 1: Section 2 states the following: "every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property, or reputation. He shall obtain justice by law, freely, completely, and promptly." Graham would like the presiding judge to allow the law of this land to prevail and allow some type of remedy of the law which Graham can received justice for injuries sought in this complaint.

*Shawnetta T. Graham* 8-15-08

Shawnetta T. Graham,  Pro Se

1101  Assell Ave.

Aurora, IL 60505

630-709-7165

18

**TABLE OF CONTENTS FOR EXHIBIT A-Z & EXHIBIT AA-FF
EXHIBIT 1 AND EXHIBIT 2**

**EXHIBIT 1:  Graham's report about an incident**

**EXHIBIT  A: Illinois Department of Human Rights Complaint**

**EXHIBIT  B: Investigator Sandra Kelly's dismissal notification**

**EXHIBIT  C: Graham's request for weight review**

**EXHIBIT  D: IDHR Chief Legal Counsel Dismissal notification**

**EXHIBIT  E: U.S. EEOC letter of dismissal and Sue Rights**

**EXHIBIT  F: Charges developed by IDHR with errors**

**EXHIBIT G:  Notification of Fact Finding Conference**

**EXHIBIT H:  Incident on January 06, 2004**

**EXHIBIT I:   Incident on July 01, 2004**

**EXHIBIT J:   July 01, 2004 doctor statement for Dr. Lindstorm & Time off slip**

**EXHIBIT K:  MRI report from Dr. Bartel and other doctor statements**

**EXHIBIT L:  Dreyer Walk-In Clinic Statement**

**EXHIBIT M:  MRI report from Dr. Lyon/ and other doctor statements**

**EXHIBIT N:  A prepared note by Ms. Miller**

**EXHIBIT O:  A written statement from YS II Daryl Tesh**

**EXHIBIT P: A.D. 03-02-215**

**EXHIBIT Q:  Force medical leave statement**

**EXHIBIT R:  Statement prepared by Mrs. Miller about walking and standing**

**EXHIBIT S: Statement from YS II Matthew Mathis**

**EXHIBIT T: Physician statement date 09-09-2004**

## TABLE OF CONTENTS FOR EXHIBIT A-Z & EXHIBIT AA-FF
## EXHIBIT 1 AND EXHIBIT 2

**EXHIBIT U:** Handicap State of Illinois Application

**EXHIBIT V:** Referral by Dr. Lyon to a neurologist

**EXHIBIT W:** Photos of injury and doctor statements from Dr. Lyon

**EXHIBIT X:** A Doctor statement from Dr. Misty McNeill

**EXHIBIT Y:** Fail Union Grievance

**EXHIBIT Z:** Time sheet which shows dock time and available time

**EXHIBIT 2:** Memos to state employees and union representatives

**EXHIBIT   AA:** notification of absent for 09-09-2004 & 08-25-2004

**EXHIBIT   BB:** Physician statements from Dr. Lyon's office

**EXHIBIT   CC:** Disclosure of witnesses

**EXHIBIT   EE:** Affidavit of Ann Chalstrom

**EXHIBIT FF:** Letter from Union President of Local 416

**Amendment for Civil Action Number: <u>07 C 7078</u>**

# EXHIBIT

# DD

**Disclosure of Witnesses**

## DISCLORSURE OF WITNESSES FOR COMPLAINT ADMISSION AND FOR FURTHER PURPOSE IN COURT PRECEDING

1. Cynthia N. Miller, school principal at the time

2. Daryl Tesh, Youth Supervisor II

3. Mathew Mathis, Youth Supervisor II

4. Tomeka Morman, Youth Supervisor II

5. La Sonya Eggleston Gillian, Youth Supervisor II

6. Jan Bradley, President of AFSCME Union Local 416

7. John Blair, Youth Supervisor II & Chief Stewart of Warrenville AFSCME Local 416

8. Jeffery Bargar, Superintendent of Illinois Youth Center Warrenville

9. Margarita Mendoza, Assistant Superintendent of Programs of Illinois Youth Center Warrenville

10. Kathy Weaver, Youth Supervisor II at that time and Local 416 Stewart Representative of IYC Warrenville for the School District 428 hearing in October 2005

11. Sandi Ivemeyer, School District #428 hearing officer for hearing which was in October 2005

12. Theodore Garganticl, Business Office Store Department

13. Vivian Travis, School Secretary for School District #428 at the time

14. Carolyn Middleton, Pool Nurse

**DISCLORSURE OF WITNESSES FOR COMPLAINT ADMISSION AND FOR FURTHER PURPOSE IN COURT PRECEDING**

15. **Assistant Attorney General of Illinois Ann C. Chalstrom**

16. **Denise Papiech, Educator**

17. **Dr. Eric Bartel, Fox Valley Orthopedic Institute**

18. **Dr. Lindstorm, Lindstorm Chiropractic Clinic**

19. **Dr Ester Lyon, Lyon Foot and Ankle Clinic**

20. **Illinois Department of Human Rights Investigator Sandra Kelly**

21. **Chief Legal Counsel of the Illinois Department of Human Rights**

22. **Misty McNeill, a doctor associate at Lyon Foot and Ankle Clinic**

**Amendment to  Exhibit DD**

23. **Simon Mazhvvancheril, Test Diagnostician (resigned)**

24. **Patrick Lovelace, Educator**

25. **Maureen O'Donnell, Educator**

26. **Krista Willhardt, Educator**

27. **Dr. Wendy Navarro, Statewide Hostage Team**

28. **Heena Alavi, Special Education (resigned)**

Amendment for Civil Action Number: <u>07 C 7078</u>

# EXHIBIT
# FF

**Letter from the Union President of Local 416**

Ms Graham                                                    12/15/06


In  a letter you sent council 31 you referenced YS 2 Union rep Mr. Mathis and Mr. Tesh as being involved in your situation. Please be advised these two are not nor ever were representatives of this union.



                                    Jan Bradley    President Local 416

FILED

AUG 1 8 2008

Judge Samuel Der-Yeghiayan
U.S. District Court

| | |
|---|---|
| Shawnetta T. Graham | ) |
|        Plaintiff, Pro Se | ) |
|   -VS- | ) |
| | )   United States District Court |
| State of Illinois and the Illinois Department | )   Northern District of Illinois |
| Of Corrections, | ) |
|        Defendants | )     Honorable Judge |
| | )     Der Yeghiayan |
| | ) |
| | )   Civil Action #: <u>07 C 7078</u> |
| | ) |

**RECEIVED**

AUG 1 8 2008

Judge Samuel Der-Yeghiayan
U.S. District Court

# EXHIBIT

# 11

## Incidents of dates of continuing violation

| | |
|---|---|
| Shawnetta T. Graham | ) |
| Plaintiff, Pro Se | ) |
| -VS- | ) |
| | ) United States District Court |
| State of Illinois and the Illinois Department | ) Northern District of Illinois |
| Of Corrections, | ) |
| Defendants | ) Honorable Judge |
| | ) Der Yeghiayan |
| | ) |
| | ) Civil Action #: <u>07 C 7078</u> |
| | ) |
| | ) |
| | ) |
| | ) |

### Outline for Exhibit 11 for incidents of dates of continuing violation
#### Summary

I started at IYC Warrenville in July 2002, and I have a journal dated from 2002 until present. At anytime the presiding judge feels like that an order needs to be requested by the court in order to make a fair determination to prove an ongoing violation against Graham in the work setting then the presiding judge needs to order Graham's journal to be admissible as evident. ...the court may order discovery of any matter relevant to the subject matter involved in the action. (See Rule 26 Federal Rules of Civil Procedure: Depositions and Discovery; (b) Discovery Scope and Limits, page 617, 2007)

...situation in which an employer can be held liable for events that occur prior to the start of the charging period..." Continuing Violation" is the term used to describe a theory that permits the employer to be liable for these older events, ...The idea of the continuing violation theory is that the employer action though outside of the time period, is a part of a continuing policy or practice that continues to the present, and therefore "constitutes violation" ... (See Administrative Prerequisites 72.08 Continuing Violation)

#### Outline for Exhibit 11 for incidents of dates of continuing violation

##### Year 2004

September 20, 2004: disregarding Graham's work area

##### Year 2005

March 13, 2005: taking privileges away and made to use 1 hour personal business

March 14, 2005: making Graham work out of her scope of hiring job title when available staff was observed

### Year 2005

March 16, 2005: A Youth worker not being assigned to the library

March 21, 2005: making Graham work out of her scope of hiring job title when available staff was observed

March 29, 2005: making Graham work out of her scope of hiring job title when available staff was observed

August 02, 2005: Not allowing youths the ability to meet with me in private for legal or library reason

September 10, 2005: Making comments about my injuries.

### Year 2006

January 09, 2006: bringing issues to me about unauthorized reading material

January 10, 2006: bringing issues to me about unauthorized reading material

October 26, 2006: taking things from my office without leaving me a shakedown slip

### Year 2007

The following dates Graham was denied opportunity to have a PAC youth worker as a library aide

February 28, 2007, March 01, 2007, July 19, 2007, & November 20-2007

### Year 2008

April 02, 2008: Continuing denying me a youth library worker

April 15, 2008: Continuing denying me a youth library worker

June 2, 2008: Constantly bothering me every day about issues

| | |
|---|---|
| Shawnetta T. Graham | ) |
| | ) |
| Plaintiff, Pro Se | ) |
| -VS- | ) |
| | ) |
| State of Illinois and the Illinois Department | ) |
| Of Corrections, | ) |
| Defendants | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

United States District Court
Northern District of Illinois

Honorable Judge
Der Yeghiayan

Civil Action #: <u>07 C 7078</u>

# YEAR

# 2004

STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS
**ADULT AND JUVENILE DIVISIONS**

## INCIDENT REPORT

Institution/Program: _IYC-WARRENVILLE - Library_ ___ Date and Time of Incident: _9-20-04_ / _8³⁰ p.m._

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☒   B. Were Restraints/Force Used: YES ☐ NO ☒   C. Was Property Damaged: YES ☐ NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☒   E. Were Arrests Made: YES ☐ NO ☒

F. Any Injuries/Hospitalizations: YES ☐ NO ☒   G. Were there Media Inquiries: YES ☐ NO ☒

| Inmates/Staff Involved: Name | I.D.# | Offense | Commitment Date | | Witnesses to Incident: Name | I.D.# |
|---|---|---|---|---|---|---|
| | | | | | | |

Statement of Facts: (NARRATIVE)

On September 20, 2004 I walked into the library and their was a large stage set-up in the library (it was) their for a musical & theatre show. I I am requesting that I have at least five day notice before any one is authorize to remove the circulation desk and other library furniture. I take great pride in my library displays and general work. Removing the circulation desk will cause the destruction of papers which is taped to the circulation desk. Also putting a stage in the library hinders the operation of library services. The school area has the required square feet to operate during school hours according to the population which is dictated by the fire Marshall. The gym is the better place to house a large stage. The present of the stage having library patrons, and having school movement is a hazard within the main school area. I am requesting that a overall management decision be addressed on the following topic.                        (over)

_Shawnetta Graham_  9/26/04  9AM

Reporting Employee / Date/Time ___ Person Calling in Report ___ Person Accepting Report ___ Date/Time

Administrative Assessment: _____

Chief Administrative Officer _____ Date/Time _____

Distribution:   Director
Deputy Director of Appropriate Division
Deputy Director of Bureau of Inspections and Audits

Legal Services (only if restraints/force used)
File

434 (4/83)
126-0410

Should the safty of youths/ and employee be
compromised for an activity that can be housed
in the largest part of the facility?

STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS
**ADULT AND JUVENILE DIVISIONS**
**INCIDENT REPORT**

Institution/Program: __J/C-WAR-Library__      Date and Time of Incident: __1|6|05__ / __12:50 pm__

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☒  B. Were Restraints/Force Used: YES ☐ NO ☒  C. Was Property Damaged: YES ☐ NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☒  E. Were Arrests Made: YES ☐ NO ☒

F. Any Injuries/Hospitalizations: YES ☐ NO ☒  G. Were there Media Inquiries: YES ☐ NO ☒

| Inmates/Staff Involved: Name | I.D.# | Offense | Commitment Date | Witnesses to Incident: Name | I.D.# |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

Statement of Facts: (NARRATIVE)

On 3-15-05 I signed out in the acdemic dred at
11:15 AM and agdin in the institution sign-out book
at 11:20 A.M. I went on my lunch break which is
for 45 min. I have two 15 min. breaks. Some state
employee used them for smoke time; I do not smoke.
My arrival time back WAS 12:05 pm. I was never told
I had to tell anyone directly about taking my lunch
break. I was always told to just sign-out. I have
been taking breaks on my lunch for ten years.
I have brought back sandwiches for others; I have observed others doing
I was told by the warden several weeks ago, if I — the same.
wanted to take a hour lunch I could.

On this day I needed to leave grounds to cool-out
because of the illness that exist in the operation
procedure in the library. I am requesting to use .30 min of P.B.
to prevent a dock situation.

| Reporting Employee | Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |
|---|---|---|---|---|
| Shawnetta Graham  3-16-05 | 12:50 p.m |  |  |  |

Administrative Assessment: _____

_____

_____

Chief Administrative Officer _____   Date/Time _____

Distribution:   Director
     Deputy Director of Appropriate Division
     Deputy Director of Bureau of Inspections and Audits

Legal Services (only if restraints/force used)
File

1/2

C 434 (4/83)

2/2



Shawnetta T. Graham                          )

   Plaintiff, Pro Se             )
  -VS-                                )
                                              )     **United States District Court**
State of Illinois and the Illinois Department )     **Northern District of Illinois**
Of Corrections,                               )
   Defendants                    )     **Honorable Judge**
                                              )     **Der Yeghiayan**
                                              )
                                              )     Civil Action #: <u>07 C 7078</u>
                                              )
                                              )
                                              )
                                              )
                                              )

# YEAR
# 2005

STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS

**ADULT AND JUVENILE DIVISIONS**
**INCIDENT REPORT**

ion/Program: IYC WAR-Library      Date and Time of Incident: 3-14-05 / 1.20 p.m.

answer is yes to any of the following questions, explain in narrative below:

s a Weapon Involved: YES ☐ NO ☒   B. Were Restraints/Force Used: YES ☐ NO ☒   C. Was Property Damaged: YES ☐ NO ☒

ve Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☒   E. Were Arrests Made: YES ☐ NO ☒

Injuries/Hospitalizations: YES ☐ NO ☒   G. Were there Media Inquiries: YES ☐ NO ☒

s/Staff Involved:
| Name | I.D.# | Offense | Commitment Date |
|---|---|---|---|

Witnesses to Incident:
| Name | I.D.# |
|---|---|

nt of Facts: (NARRATIVE)

On March 14, 2005 at 5th hour (of work) assigned the library bathroom post. I observed two staff(s) in the Coverage Class. If in fact I am needed to secure the library with post; I am willing to help you out. However if I am not needed and you have available staff I am requesting to work as the Library Manager which is I my hiring job title.

Please do not indicate that you are helping it. The library is actually your job! The institution has just provided a staff person when one is available. If you manage the library you will be up and moving around not sitting. 3-14-05 1:30PM                C.N.Mill

orting Employee      Date/Time      Person Calling in Report      Person Accepting Report      Date/Time

tive Assessment:
This is an directional job, I sit like everyone else. As I sit I see me...

nistrative Officer   I meet all goals. Library Manager   Date/Time ...is the title. The library is my job; not...

Director
Deputy Director of Appropriate Division        Legal Services (only if restraints/force used)
Deputy Director of Bureau of Inspections and Audits   File
13)                                working the bathroom; line for mental

## INCIDENT REPORT

Institution/Program: _IYC-WAR-Library_     Date and Time of Incident: _3-16-05_ / _4:15 p.m._

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☒   B. Were Restraints/Force Used: YES ☐ NO ☒   C. Was Property Damaged: YES ☐ NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☒   E. Were Arrests Made: YES ☐ NO ☒

F. Any Injuries/Hospitalizations: YES ☐ NO ☒   G. Were there Media Inquiries: YES ☐ NO ☒

| Inmates/Staff Involved: | | | | Witnesses to Incident: | |
| Name | I.D.# | Offense | Commitment Date | Name | I.D.# |
| --- | --- | --- | --- | --- | --- |
| | | | | | |
| | | | | | |

Statement of Facts: (NARRATIVE)

When speaking to the Clinical Supervisor on March 16, 2005 about 4pm. (It was) told that at the PAC meeting on 3-15-05 a____ m_____'s job application was not reviewed at the meeting.

Amiee job application was turned in to Mrs C.N. Miller.

I am requesting to turn in all library aide job application to Mrs Wallace and the Clinical Supervisor, as well as, to the school principal.

I am requesting that A____ M____ be assigned to the library.

Shawnette Graham   3/16/05 / 4:15 pm

| Reporting Employee | Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |
| --- | --- | --- | --- | --- |

Administrative Assessment: _____

_____

_____

Chief Administrative Officer _____ Date/Time _____

Distribution: Director
Deputy Director of Appropriate Division
Deputy Director of Bureau of Inspections and Audits

Legal Services (only if restraints/force used)
File

434 (4/83)
126-0410

STATE OF ILLINOIS DEPARTMENT OF CORRECTIONS

**ADULT AND JUVENILE DIVISIONS**
**INCIDENT REPORT**

Institution/Program: IYC-WAR Library    Date and Time of Incident: 3-21-05 / 8:30 - 2:30

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☒   B. Were Restraints/Force Used: YES ☐ NO ☒   C. Was Property Damaged: YES ☐ NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☒   E. Were Arrests Made: YES ☐ NO ☒

F. Any Injuries/Hospitalizations: YES ☐ NO ☒   G. Were there Media Inquiries: YES ☐ NO ☒

| Inmates/Staff Involved: Name | I.D.# | Offense | Commitment Date | | Witnesses to Incident: Name | I.D.# |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

Statement of Facts: (NARRATIVE)

On March 21, 2005 during school hours I was assigned to work the school library (bathroom) post, from ~~(.....)~~ 8:30 - 2:30 p.m. It appered that their were availble staff to assist for the day. The library bathroom post has nothing to do with current job description. Also Other) duties assigned should be within the hiring job title and job destruction. (description)

Shawnette Seekins  3-21-05

| Reporting Employee | Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |
|---|---|---|---|---|

Administrative Assessment: _____

_____

_____

Chief Administrative Officer _____ Date/Time _____

Distribution:   Director
        Deputy Director of Appropriate Division        Legal Services (only if restraints/force used)
        Deputy Director of Bureau of Inspections and Audits   File

DC 434 (4/83)
IL 426-0410

STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS

## ADULT AND JUVENILE DIVISIONS
## INCIDENT REPORT

Institution/Program: __Iyc-Warrenville-Library__    Date and Time of Incident: __3-29-05/// 9:30 a.m__

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☒   B. Were Restraints/Force Used: YES ☐ NO ☒   C. Was Property Damaged: YES ☐ NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☒   E. Were Arrests Made: YES ☐ NO ☒

F. Any Injuries/Hospitalizations: YES ☐ NO ☒   G. Were there Media Inquiries: YES ☐ NO ☒

| Inmates/Staff Involved: Name | I.D.# | Offense | Commitment Date | Witnesses to Incident: Name | I.D.# |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

Statement of Facts: (NARRATIVE)

On March 29, 2005 I was assigned the library post bathroom duty. This job consist of securing the inner -library area during class movement. Also, during bath room breaks. All youths can go to the bath room two times. One in the morning and the afternoon. I was told that their were no staff available; however, I saw about five staff doing nothing. I went to a classroom to get youths from Ms Papcieh's class and their was a staff sitting in the classroom doing nothing. I hear that the time budget was out If this is the issues, I should not be used for staff. I am requesting that if in fact a staff is the available the library should be secure with a staff. I have no radio. The staff that's assigned to security never come into the library area .

Reporting Employee: _Shawnetta Sheldon_   Date/Time: _3/24/05  10:52 A.M._   Person Calling in Report: ___   Person Accepting Report: ___   Date/Time: ___

Administrative Assessment: ___

Chief Administrative Officer ___   Date/Time ___

Distribution:   Director
                Deputy Director of Appropriate Division          Legal Services (only if restraints/force used)
                Deputy Director of Bureau of Inspections and Audits      File

DC 434 (4/83)
IL 426-0410

STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS

**ADULT AND JUVENILE DIVISIONS**
**INCIDENT REPORT**

Institution/Program: **IYC-Warrenville-Library**     Date and Time of Incident: **8-02-05 -12:42 pm**

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☒   B. Were Restraints/Force Used: YES ☐ NO ☒   C. Was Property Damaged: YES ☐ NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☒   E. Were Arrests Made: YES ☐ NO ☒

F. Any Injuries/Hospitalizations: YES ☐ NO ☒   G. Were there Media Inquiries: YES ☐ NO ☒

| Inmates/Staff Involved: | | | | Witnesses to Incident: | |
|---|---|---|---|---|---|
| Name | I.D.# | Offense | Commitment Date | Name | I.D.# |
| MR. Knox | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Statement of Facts: (NARRATIVE) ___ On 8-02-05 at 12:35 pm   Youth S. S̶̶ (D21313) came to me with a pass and  because she had a legal request.———— confidential. I am requesting that when a youth comes to me with a legal request I would like to speak to the youth in my office without the interference of staff or Shift supervisor.

Each staff runs the library differently. When the shift supervisor comes into the library for a couple of minutes he donot ask the youth why he or she is in my office. He yells and intimidate the youth.

Such conduct is destorying my pleasant work  interaction with the youth.

My work is late counsloring when and youth want to ask about a book or a  legal request I would like to have non- interference by staff.

As long as they have a pass ———from their teacher, there should  be no problems.

The youth love to come to the library, and the daily disposition of some staff and shift supervisor  are causing  unpleasant  environment.

On a daily routine youth check out coloring pencil, crayons, and markers from me. They  need to leave me their ID's. I am requesting to have student come into my office one at a time to selected their art supplies. There is little room on the circulation desk. Plus, the  art supplies are more secure on my desk and away from the youth body.

I am requesting  to distribute the art supplies as I  want.

| _Maurietta Graham_  8-2-05/ pm | | | | |
|---|---|---|---|---|
| Reporting Employee | Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |

Administrative Assessment: _____

_____

Chief Administrative Officer _____  Date/Time _____

Distribution:   Director
            Deputy Director of Appropriate Division              Legal Services (only if restraints/force used)
            Deputy Director of Bureau of Inspections and Audits   File

STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS
## ADULT AND JUVENILE DIVISIONS
## INCIDENT REPORT

Institution/Program: IYC-Warrenville/Library _____ Date and Time of Incident: 09 / 10 / 2004  9:00 am

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☒   B. Were Restraints/Force Used: YES ☐ NO ☒   C. Was Property Damaged: YES ☐ NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☒   E. Were Arrests Made: YES ☐ NO ☒

F. Any Injuries/Hospitalizations: YES ☐ NO ☒   G. Were there Media Inquiries: YES ☐ NO ☒

| Inmates/Staff Involved: Name | I.D.# | Offense | Commitment Date | Witnesses to Incident: Name | I.D.# |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

Statement of Facts: (NARRATIVE)

It has been said to me on two different occasion (9-10-2004 and 8-18-2004) that I have

been making up injuries and all the doctor reports have stated that their is nothing

wrong with ~~me~~ Me . I have been asked if I have a condition where I make

illness up. It has been said to me that my last two injuries did not occur on the job.

it has ~~been~~ been said to me that the *injury* ~~which occurred in~~ January 2004 was *approved*

however; I do not know why you were near the garage. I am writng this

report to ask if all personal comments about my medical condition and how it happpen

be kept to one=self I am requesting that CMS, workman Comp, and the Illnois *Industrial Commission,*

— *determine* the out come. If comments continue I will have to name the person; because

such comments are causing mental injury.

| Reporting Employee | Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |
|---|---|---|---|---|
| *Shawnette Graham*  9/10/04  2:00 pm | | | | |

Administrative Assessment: _____

Chief Administrative Officer _____ Date/Time _____

Distribution:   Director
                Deputy Director of Appropriate Division
                Deputy Director of Bureau of Inspections and Audits

                Legal Services (only if restraints/force used)
                File

434 (4/83)
426-0410

Shawnetta T. Graham                    )

       Plaintiff, Pro Se          )
  -VS-                                  )
                   )     **United States District Court**
State of Illinois and the Illinois Department   )     **Northern District of Illinois**
Of Corrections,                       )
       Defendants               )     **Honorable Judge**
                   )     **Der Yeghiayan**
                   )
                   )     **Civil Action #: <u>07 C 7078</u>**

# YEAR
# 2006

ADULT AND JUVENILE DIVISIONS
**INCIDENT REPORT**

| Institution/Program: | I/C WAR.: LIBRARY | Date and Time of Incident: | 1/9/06   12:02 pm |

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☒   B. Were Restraints/Force Used: YES ☐ NO ☒   C. Was Property Damaged: YES ☐ NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☒   E. Were Arrests Made: YES ☐ NO ☒

F. Any Injuries/Hospitalizations: YES ☐ NO ☒   G. Were there Media Inquiries: YES ☐ NO ☒

Inmates/Staff Involved:

| Name | I.D.# | Offense | Commitment Date |
|------|-------|---------|-----------------|
|      |       |         |                 |
|      |       |         |                 |
|      |       |         |                 |

Witnesses to Incident:

| Name | I.D.# |
|------|-------|
|      |       |
|      |       |
|      |       |

**Statement of Facts: (NARRATIVE)**

On January 9, 2006 it was brought to my attention that there were two books on ground that were not library books. The First title was My bloody Life: The making of a Latin King. Youth Lena King requested the book on 9-13-05 and on 10-8-05 it was denied by the publication chairperson. Lena King said she received a copy of the book from the L.T.A program. (Please read incident report dated 11-16-05).

About six weeks ago I received two large book donations from Mr. Detzner, Literary Volunteer, and the Duty Director of Women and Family Services. The books from Mr. Detzner were reviewed by myself and him. The books from the Duty Director were reviewed by me. The books from the Duty Director were delivered by Mr. Gorgentail, Mrs. Miller, and Ms. Campana. Apparently, the room where the overflow of the book donation are located there was a book title Assistance of Vice and the subject was Lesbians Sex. Ms. Campana asked about the title a week ago. When speaking to Ms. Campana on 1-6-06, she said a youth had the title. When speaking to Mrs. Mendoza, she said she was told that a youth got the book from the coverage class Rm 24. My experience with

| Shdurette Shdldn | 1/9/06 12:02 pm | | | |
|---|---|---|---|---|
| Reporting Employee | Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |

ministrative Assessment: _____

_____

_____

ief Administrative Officer _____   Date/Time _____

ribution:   Director
            Deputy Director of Appropriate Division          Legal Services (only if restraints/force used)
            Deputy Director of Bureau of Inspections and Audits   File

(over)

434 (4/83)
426-0410

1/2

outh and reading material. If they get a book from an outside source and they know it is not Appropriate, they will Not tell on the person who gave them the book.

I made serval regrest that all book donation, should be referred to me, and I would, like to pick-up all book donation myself. This is a good method where I could weed out the books that are not Appropriate.

When you let the outer community, deliver this unwanted books you can get unwanted title.

This is a "set-up" situation.

**ADULT AND JUVENILE DIVISIONS**
**INCIDENT REPORT**

Institution/Program: ___IYC-WAR - Library___  Date and Time of Incident: __1/10/06  10:30 A.M.__

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☒  B. Were Restraints/Force Used: YES ☐ NO ☒  C. Was Property Damaged: YES ☐ NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☒  E. Were Arrests Made: YES ☐ NO ☒

F. Any Injuries/Hospitalizations: YES ☐ NO ☒  G. Were there Media Inquiries: YES ☐ NO ☒

Inmates/Staff Involved:

| Name | I.D.# | Offense | Commitment Date |
|---|---|---|---|
| ~~Andrew Watt~~ | D21963 | | |
| | | | |
| | | | |

Witnesses to Incident:

| Name | I.D.# |
|---|---|
| | |
| | |
| | |

Statement of Facts: (NARRATIVE)

When reviewing my weekly book summary reports for the week of 1/5/06 to 1/11/06 I notice that Andrew Webb from Mays-C (D21963) did a book summary report on a book title: Acceptance of Vice.

Apparently this book is about Lesbian Sex. I do not know if the book goes into details and if it promotes the life style of Lesbian Sex. Even though same sex couples are talked about on public television.

This book was not a library book, but a donated book. This book was not on the library self. I cannot tell you if the book was truely in the two locations in the last 6 weeks. Books are brought in by other sources beside by the library department.

_Shawnette Graham_  1/10/06  10:30 A.M.

Reporting Employee    Date/Time    Person Calling in Report    Person Accepting Report    Date/Time

ministrative Assessment: _____

ef Administrative Officer _____  Date/Time _____

ribution:  Director
          Deputy Director of Appropriate Division          Legal Services (only if restraints/force used)
          Deputy Director of Bureau of Inspections and Audits    File

434 (4/83)
I26-0410

| Institution/Program: | _EYC WARRENVILE-Library_ | Date and Time of Incident: | _10-27-06_ / _2:45 PM_ |

**If the answer is yes to any of the following questions, explain in narrative below:**

A. Was a Weapon Involved: YES ☐ NO ☒   B. Were Restraints/Force Used: YES ☐ NO ☒   C. Was Property Damaged: YES ☐ NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☒   E. Were Arrests Made: YES ☐ NO ☒

F. Any Injuries/Hospitalizations: YES ☐ NO ☒   G. Were there Media Inquiries: YES ☐ NO ☒

**Inmates/Staff Involved:**

| Name | I.D.# | Offense | Commitment Date |
|------|-------|---------|-----------------|
|      |       |         |                 |
|      |       |         |                 |
|      |       |         |                 |

**Witnesses to Incident:**

| Name | I.D.# |
|------|-------|
|      |       |
|      |       |
|      |       |

**Statement of Facts: (NARRATIVE)**

On October 26, 2006 between the hours of 2:30 p.m and 3:30 p.m K_____ R_____ was assigned after school details. Her assignment was to vacuum the library and adjacent classroom. She did an excellent job.

She used the school vacuum and a brown extension cord. This cord is kept in my office in a blue box.

On October 27, 2006, I assigned M_____ F_____ to vacuum the library. When I went to get the brown extension cord it was gone.

| _Shuretta Sishin_ | 10/27/06  2:45 pm | | | |
|---|---|---|---|---|
| Reporting Employee | Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |

ministrative Assessment: _____

ef Administrative Officer _____     Date/Time _____

ribution:   Director
            Deputy Director of Appropriate Division          Legal Services (only if restraints/force used)
            Deputy Director of Bureau of Inspections and Audits      File

434 (4/83)
I26-0410

Shawnetta T. Graham )

      Plaintiff, Pro Se )
  -VS- )
                      )   **United States District Court**
State of Illinois and the Illinois Department )   **Northern District of Illinois**
Of Corrections, )
          Defendants )     **Honorable Judge**
                      )     **Der Yeghiayan**
                      )
                      )   **Civil Action #: 07 C 7078**
                      )
                      )
                      )
                      )

# YEAR
# 2007

STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS
ADULT AND JUVENILE DIVISIONS

## INCIDENT REPORT

Institution/Program: __IYC Warrenville-Library__        Date and Time of Incident: __2-28-07 . 2:45 pm__

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☒  B. Were Restraints/Force Used. YES ☐ NO ☒  C. Was Property Damaged: YES ☐ NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☒  E. Were Arrests Made: YES ☐ NO ☒

F. Any Injuries/Hospitalizations: YES ☐ NO ☒  G. Were there Media Inquiries: YES ☐ NO ☒

| Inmates/Staff Involved: | | | | Witnesses to Incident: | |
| Name | I.D.# | Offense | Commitment Date | Name | I.D.# |
| --- | --- | --- | --- | --- | --- |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

Statement of Facts: (NARRATIVE)

On February 28, 2007 I was denied the opportunity to have a PAC worker to assist me in a library setting. I am in a directorship role and I need to have libray assistant. All the other prison libraries have inmates or youths working along with them. I have always have had a worker asssigned to me. The aides are our assistant , because we are under staff and we do not have the proper technology for todays library setting. I have been with the prison setting since 1994 and I always have had the opportunity to have an library aide. The dietary, stores, and other department have the opportunity to have youth aides. I was told that it was my sole responsiblity to check —out and check-in books. This has been library aide work since I started. I was told that the staff did not want the aides in the library, because the library was assigned a class. If in fact there are more patrons present in the library I need the help. The treatment is unfair, and I am requesting to have workers as I need them and without interference. The library setting works best if ———people who have no library experience stay in there role. I try to speak to Ms. Ivemeyer about this, but she ask me to leave her office. She had a problem with how I express myself. In the near future I would like all meetings between the EFA and Ms. Graham witness by an Union Representative or an outside source. I am reqesting An Equal Opportunity in the work setting at IYC Warrenville.

| Reporting Employee | Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |
| --- | --- | --- | --- | --- |
| _Shauretta Graham_ | 2/28/07  2:45pm |  |  |  |

Administrative Assessment: _____

_____

Chief Administrative Officer _____ Date/Time _____

Distribution:    Director
                Deputy Director of Appropriate Division
                Deputy Director of Bureau of Inspections and Audits

Legal Services (only if restraints/force used)
File

434 (4/83)

**ADULT AND JUVENILE DIVISIONS**

**INCIDENT REPORT**

Institution/Program: __IYC-Warrenville-Library__    Date and Time of Incident: 3-01-07    8:30 am

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐  NO ☒  B. Were Restraints/Force Used: YES ☐  NO ☒  C. Was Property Damaged: YES ☐  NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐  NO ☒  E. Were Arrests Made: YES ☐  NO ☒

F. Any Injuries/Hospitalizations: YES ☐  NO ☒  G. Were there Media Inquiries: YES ☐  NO ☒

| Inmates/Staff Involved: Name | I.D.# | Offense | Commitment Date | | Witnesses to Incident: Name | I.D.# |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Statement of Facts: (NARRATIVE)

On February 28, 2007 I spoke to Ms. Mendoza, I requested if I can have a youth worker for March 01, 2007. I requested C█████ C██████, she said she would let the"S.S"know. Ms. Mendoza called the morning of March 01, 2007 and she said she spoke to Mrs. Ivemeyer and she had informed her that she told me I could not have a youth worker so. I could not called up a youth to work. Also, on March 1, 2007 Ms. Willhardt's class was present in the library and I did not have a youth worker and their were available youths who were graduates with nothing to do.There were four graduates sitting on Maya-C. I have witness other departments used youths who have not been PAC in an emergency situation. It appears the rules are different for the library setting. I am requesting in an emergency situation that I am allowed to used a youth who is not PAC or their PAC application is pending; other department do this. Just last week Youth Morrow was novelling show for maintance. I am requesting Equal Opportunity in the work setting at Illinois Youth Center Warenville. I am requesting that I have the same privilege as the other department have for daily operation and emergency situation. A example of an emergency situation: flooding in the administion building on 3-1-07, C██████ Coulter was allowed to work, and she is not PAC for maintance. C██████ C██████ was allowed to work for maintance,per converstion with the youth, but not allowed to work in the library. She is PAC for the library for once a week. I am requesting to used C██████ C██████ and other Youths who have been PAC for the library when I have a need and there are numerous library patrons in the library.

3/1/07 11 ᴬᴹ

| Reporting Employee | Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |
|---|---|---|---|---|

Administrative Assessment: _____

_____

_____

Chief Administrative Officer _____    Date/Time _____

Distribution:    Director
                 Deputy Director of Appropriate Division                 Legal Services (only if restraints/force used)
                 Deputy Director of Bureau of Inspections and Audits      File

434 (4/83)

STATE OF ILLINOIS—DEPARTMENT OF CORRECTIONS

ADULT AND JUVENILE DIVISIONS

INCIDENT REPORT

Institution / Program: _IYC WAR - Library_    Date and Time of Incident: _7/19/07_   _8:40 AM_

---

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES: ☐ NO: ☒   B. Were Restraints/ Force Used: YES ☐ NO: ☒   C: Was Property Damaged: YES: ☐ NO: ☒

D: Have Apprehension Unit and / or Law Enforcement Agencies Been Notified : YES: ☐ NO: ☒   E. Were Arrests Made: YES: ☐ NO: ☒

F. Any Injuries / Hospitalizations: YES: ☐ NO: ☒   G. Were there Media Inquiries: YES: ☐ NO: ☒

| Inmates / Staff Involved: Name | I.D.# | Offense | Commitment Date | | Witnesses to Incident: Name | I.D.# |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

---

Statement of Facts: (NARRATIVE)

On July 19, 2007 youth A███ was call to work for me in the library. She has been doing this for the last two weeks. Youth Archer said she has turned in two job applications. After School details is a very important function to health and safety of the school also. I have two law workers, one is on light duty for another few weeks and the other youth is expecting. Both youths are limited in duties. Monique Taylor and Brittney ▢ked was moved to Mag AB Wing. There has ▢ been a replacement for neither. I am asking that the law committee replace my workers ASAP. I am requesting to use youth Archer until she is p.u.c. or someone else is p.u.c. Other departments use youth in an emergency situation. Not having detail workers will cause a health and safety issue for the school.

_____ 7/19/07 8:45 A.M.

Reporting Employee / Date/Time    Person Calling in Report    Person Accepting Report    Date/Time

---

Administrative Assessment: _____

_____

_____

---

Chief Administrative Officer _____ Date/Time _____

istribution:   Director
       Deputy Director of Appropriate Division      Legal Services (only if restraints/force used)
       Deputy Director of Bureau of Inspections and Audits      File

STATE OF ILLINOIS—DEPARTMENT OF CORRECTIONS

ADULT AND JUVENILE DIVISIONS

INCIDENT REPORT

Institution / Program: __IYC -Warrenville__    Date and Time of Incident: __11-20-07__ / __8:30__

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES: ☐ NO: ☒ B. Were Restraints/ Force Used: YES: ☐ NO ☒ C. Was Property Damaged: YES: ☐ NO ☒

D: Have Apprehension Unit and / or Law Enforcement Agencies Been Notified : YES: ☐ NO: ☒  E. Were Arrests Made: YES: ☐ NO: ☒

F. Any Injuries / Hospitalizations: YES: ☐ NO: ☒  G. Were there Media Inquiries:  YES ☒  NO ☒

| Inmates / Staff Involved: Name | I.D.# | Offense | Commitment Date | Witnesses to Incident: Name | I.D.# |
|---|---|---|---|---|---|
| Mr. Knox | | | | | |
| S━━━ ✗ | | | | | |
| | | | | | |

Statement of Facts: (NARRATIVE) _____

On November 20, 2007 K━━ S━━━ did not report
to work as assigned. Her primary job is the library.
I was told by the school desk that she was
working with Mr. Knox. I called Mr. Knox and he
said that he pulled Kayla Snider to work on a
important project for the superintendent. However, I called
Adams-I and there were three youths who were graduates
and I called W-II and there were two youths who were
graduates. S━━━ did not have to be pulled from her
primary job. I am requesting that Mr. Knox find
other youths to complete his special projects or daily
assignments. When he takes my assigned workers without
asking it is very disrespectful, and I am short handed for
the day. If my worker needs to assign    A different job
━━━ the day, then at least address me.

__Shduretta Stephen__    11-20-07
Reporting Employee    Date/Time 9:30 AM    Person Calling in Report    Person Accepting Report    Date/Time

dministrative Assessment: _____
_____
_____
_____

ʒief Administrative Officer _____    Date/Time _____

tribution:  Director
            Deputy Director of Appropriate Division                    Legal Services (only if restraints/force used)
            Deputy Director of Bureau of Inspections and Audits         File

Shawnetta T. Graham                          )

       Plaintiff, Pro Se                 )
   -VS-                                     )
                      )    **United States District Court**
State of Illinois and the Illinois Department  )    **Northern District of Illinois**
Of Corrections,                              )
       Defendants                        )    **Honorable Judge**
                      )    **Der Yeghiayan**
                      )
                      )    Civil Action #: <u>07 C 7078</u>
                      )
                      )
                      )
                      )
                      )

# YEAR

# 2008

Institution/Program: IYC Warrenville-Lib    Date and Time of Incident: 4-2-08 / 8³⁰ Am

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☑    B. Were Restraints/Force Used: YES ☐ NO ☑    C. Was Property Damaged: YES ☐ NO ☑

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☑    E. Were Arrests Made: YES ☐ NO ☑

F. Any Injuries/Hospitalizations: YES ☐ NO ☑    G. Were there Media Inquiries: YES ☐ NO ☑

| Inmates/Staff Involved: | | | | Witnesses to Incident: | |
| Name | I.D.# | Offense | Commitment Date | Name | I.D.# |
| | | | | | |
| | | | | | |
| | | | | | |

Statement of Facts: (NARRATIVE)

On April 2, 2008, the Library Associate of IYC Warrenville did not have a morning worker assigned to her, and she is not allowed to use on pac worker as other departments are allowed. There are graduates who are available to work, but they are not pac. Therefore, some of them are sitting on an unit doing nothing.

On April 2, 2008 there were three staff at the school desk. (YSTESH, YSUShelton, YSIII Parker).

Since I did not have a youth aide and all behavior reports needs to be submitted by Noon, I closed the library for services. Youths are allowed to come from Ms. O'Donnell and Mrs. Willhardt. If Adams II or MayaC comes into the library at anytime, they will be assist. (Ms. Tivemyer was not present and Ms. Mendoza phone line was busy, and I was told she was in Springfield, Illinois.

| Reporting Employee | Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |
| Adrielle Jackson 4-2-08 9:00 Am | | | | |

Administrative Assessment: _____

Chief Administrative Officer _____    Date/Time _____

Distribution:    Director
                 Deputy Director of Appropriate Division          Legal Services (only if restraints/force used)
                 Deputy Director of Bureau of Inspections and Audits    File

DC 434 (4/83)
L 426-0410                                    Printed on Recycled Paper

STATE OF ILLINOIS—DEPARTMENT OF CORRECTIONS

ADULT AND JUVENILE DIVISIONS

INCIDENT REPORT

Institution / Program: __IYC - WARRENVILLE__   Date and Time of Incident: __4-15-08 / 800 Am__

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES: ☐ NO: ☑   B. Were Restraints/ Force Used: YES: ☐ NO: ☑   C: Was Property Damaged: YES: ☐ NO: ☑

D: Have Apprehension Unit and / or Law Enforcement Agencies Been Notified : YES: ☐ NO: ☑   E. Were Arrests Made: YES: ☐ NO: ☑

F. Any Injuries / Hospitalizations: YES: ☐ NO: ☑   G. Were there Media Inquiries: YES: ☐ NO: ☑

| Inmates / Staff Involved: Name | I.D.# | Offense | Commitment Date | Witnesses to Incident: Name | I.D.# |
|---|---|---|---|---|---|
| YSII Knox, T. | | | | | |
| A.C. Youth | D21935 | | | | |

Statement of Facts: (NARRATIVE)

On April 15, 2008 youth A.C. (D21935) was scheduled to report to work as a library aide. This was her second time not reporting to work. On April 1, 2008 she was sent to D Wing. On April 15, 2008 she was sent to "D" Wing. Both times it was ordered by YSII Knox. When a library aide is sent back to Maya "D", but is on Maya "C" wing watching television, the library manager is short help.

IF in fact the library aide needs to be removed from her assigned program, they a write-up should be issued for the day. The library manager always check the where abouts of her workers to weed out a failure to report issue.

On this day and around the time, Mr. Knox did offer me a chance to get youth D.C [D22288]; however I explained to Mr. Knox youth D.C. [D22288] was assigned to the dietary on this day. Youth D.C. is assigned to the library on Mon. and Wed. I explained to Mr. Knox, that I don't (con't)

Reporting Employee _____ Date/Time _____ Person Calling in Report _____ Person Accepting Report _____ Date/Time _____

dministrative Assessment: _____

hief Administrative Officer _____ Date/Time _____

tribution:   Director
        Deputy Director of Appropriate Division       Legal Services (only if restraints/force used)
        Deputy Director of Bureau of Inspections and Audits       File

1/2

take other department youth workers when they are not assigned to me.

end of report

2/2

STATE OF ILLINOIS—DEPARTMENT OF CORRECTIONS

ADULT AND JUVENILE DIVISIONS

INCIDENT REPORT

Institution / Program: ___IYC-Warrenville—lib.___    Date and Time of Incident: ___June 2 2008, 2 45pm___

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES: ☐ NO: ☑  B. Were Restraints/ Force Used: YES ☐ NO: ☑  C. Was Property Damaged: YES ☐ NO ☑

D: Have Apprehension Unit and / or Law Enforcement Agencies Been Notified : YES: ☐ NO: ☑    E. Were Arrests Made: YES: ☐ NO: ☑

F. Any Injuries / Hospitalizations: YES: ☐ NO: ☑    G. Were there Media Inquiries:   YES: ☐   NO: ☑

| Inmates / Staff Involved: Name | I.D.# | Offense | Commitment Date | Witnesses to Incident: Name | I.D.# |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

Statement of Facts: (NARRATIVE)

On June 2, 2008 I had a meeting with Mrs. Mendova and
Sandi Ivemeyer. Mr. Blair was present as an Union Rep.
The Topic of the discussion was my office time. I do not
want to be constantly bother everyday. Your own paid
staff are not adequate maintein the library area. I will
try my best to oversee library operation. Most of the
time there are two to three staff standing at the
school desk. If my telephone rings I will be in my office
or when movement is slow I will be in my office. I have a big glass window
IF the youth bathroom are not cleaned and a foul
smell is coming from the bathroom. My office will
become a shield from airborne diseases.

Please do not bother me constantly and your own
security staff are not in compliance. I consider this
unfair treatment.

Reporting Employee _____  Date/Time ___6/2/08___  Person Calling in Report _____  Person Accepting Report _____  Date/Time _____
                                     2 45

Administrative Assessment: _____

_____

Chief Administrative Officer _____  Date/Time _____

Distribution:  Director
               Deputy Director of Appropriate Division        Legal Services (only if restraints/force used)
               Deputy Director of Bureau of Inspections and Audits    File

FILED

AUG 1 8 2008

Shawnetta T. Graham
      Plaintiff, Pro Se
  -VS-

State of Illinois and the Illinois Department
Of Corrections,
      Defendants

)
)
)
)
)
)
)
)
)
)
)

Judge Samuel Der-Yeghiayan
U.S. District Court

United States District Court
Northern District of Illinois

   Honorable Judge
   Der Yeghiayan

Civil Action #: <u>07 C 7078</u>

RECEIVED

AUG 1 8 2008

Judge Samuel Der-Yeghiayan
U.S. District Court

# EXHIBIT

# 12

## Minnesota Life Letters

# MINNESOTA LIFE

**STATE OF ILLINOIS POLICY NUMBER 32491-G**
**GROUP LIFE INSURANCE**
**STATEMENT OF HEALTH**

Minnesota Life Insurance Company • Springfield Branch Office • 1 North Old Capitol Plaza, Suite 305 • Springfield, Illinois 62701

## EMPLOYEE INFORMATION

| FIRST NAME | MIDDLE INITIAL | LAST NAME | DATE OF BIRTH | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|
| Shawnetta | T | Graham | 6-6-68 | 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 |

| STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 1101 Assell Ave | Aurora | IL | 60505 |

| DATE EMPLOYED | MEMBER STATUS (Check all that apply) |
|---|---|
| 5/94 | ☑ ACTIVELY WORKING  ☑ FULL TIME  ☐ PART TIME  ☐ ANNUITANT  ☐ IMMEDIATE  ☐ DEFERRED  ☐ SURVIVOR |

| HEIGHT | WEIGHT | OCCUPATION | SEX |
|---|---|---|---|
| 5'1" | 185 | Library Associate | ☐ M  ☑ F |

## TOTAL INSURANCE DESIRED: Check the boxes which indicate your total coverage level desired.

**Optional Life (member-paid)\***

☐ 1x Salary  ☐ 3x Salary  ☐ 5x Salary  ☐ 7x Salary
☐ 2x Salary  ☐ 4x Salary  ☐ 6x Salary  ☑ 8x Salary
\* Annuitants age 60 and over are not eligible for 5-8x salary.

**Dependent Life (member-paid)**

☐ Spouse life coverage equal to $10,000\*

\* Spouses of annuitants age 60 and over receive $5,000 coverage.

☐ Child life coverage equal to $10,000

☐ Adding Another Child

## SPOUSE/DEPENDENT INFORMATION - Complete only if changing coverage.

**SPOUSE**

| FIRST NAME | MIDDLE INITIAL | LAST NAME | SOCIAL SECURITY NUMBER |
|---|---|---|---|
| N/A | | | |

| DATE OF BIRTH | HEIGHT | WEIGHT | SEX |
|---|---|---|---|
| | | | ☐ M  ☐ F |

## DEPENDENT CHILD(REN) COVERAGE - List Oldest to Youngest

| CHILD'S NAME | SEX | BIRTHDATE | SOCIAL SECURITY NUMBER | IF AGE 19+ / FULL TIME STUDENT |
|---|---|---|---|---|
| N/A | M/F | | | ☐ YES  ☐ NO |
| | M/F | | | ☐ YES  ☐ NO |
| | M/F | | | ☐ YES  ☐ NO |
| | M/F | | SPRINGFIELD | ☐ YES  ☐ NO |
| | M/F | | BRANCH OFFICE | ☐ YES  ☐ NO |
| | M/F | | MAY 3 0 2008 | ☐ YES  ☐ NO |

## HEALTH QUESTIONS - Complete only if changing coverage.

| EMPLOYEE YES NO | SPOUSE YES NO | CHILD(REN) YES NO | |
|---|---|---|---|
| ☑ ☐ | ☐ ☐ | ☐ ☐ | 1. During the past three years, have you for any reason consulted a physician(s) or other health care provider(s), or been hospitalized? *(No hospitalization)* |
| ☑ ☐ | ☐ ☐ | ☐ ☐ | 2. Have you ever had, or been treated for, any of the following: heart, lung, kidney, liver, nervous system, or mental disorder; high blood pressure; stroke; diabetes; cancer or tumor; drug or alcohol abuse including addiction? |
| ☐ ☑ | ☐ ☐ | ☐ ☐ | 3. Have you ever been treated or diagnosed by a physician as having AIDS, or any disorder of your immune system; or had any test showing evidence of antibodies to the AIDS virus (a positive HIV test)? |

MINNESOTA LIFE

If your answer to questions 1, 2 or 3 is yes, give particulars including dates, names and addresses of doctors or hospitals, the reason for the visit or consultation, the diagnosis, and the treatment on the reverse side of this form.

### NOTE: EMPLOYEE/APPLICANT MUST SIGN AND DATE THE REVERSE SIDE OF THIS FORM

## FOR HOME OFFICE USE ONLY:

**Employee** ☐ NEW HIRE  ☐ BENEFIT CHOICE ENROLLMENT  ☐ CHANGE OF STATUS

| OPTIONAL IN FORCE | ANNUAL BASE SALARY | AGENCY NAME | DATE |
|---|---|---|---|
| ☐ 1X  ☐ 3X  ☐ 5X  ☐ 7X  ☑ NONE  ☐ 2X  ☐ 4X  ☐ 6X  ☐ 8X | $ 50,900 | DSS | |

| SPOUSE COVERAGE IN FORCE ☐ YES ☐ NO | CHILD COVERAGE IN FORCE ☑ YES ☐ NO | GIR NAME Kathy Green | ORGANIZATIONAL PROCESSING CODE 425 40200 |
|---|---|---|---|

| Employee | Spouse | Child |
|---|---|---|
| ☐ APPR'D  ☑ DECL.  ☐ INCOM.  *407,000* | ☐ APPR'D  ☐ DECL.  ☐ INCOM. | ☐ APPR'D  ☐ DECL.  ☐ INCOM. |
| BY TDS  DATE 6-3-08 | BY  DATE | BY  DATE |

Ed. F. 60878 Rev. 5-2004

01-30330 Rev. 1-2002

TW

**MINNESOTA LIFE**

**NOTIFICATION STATEMENT**

Minnesota Life Insurance Company • Springfield Branch Office • P.O. Box 2327 • Springfield, IL 62705-2327 • 1-888-202-5525

JUNE 3, 2008

SHAWNETTA GRAHAM
1101 ASSELL AVE
AURORA      IL 60505

DJJ:SCHL DST 428/PBLC SFTY SSC
KATHLEEN D GREER
1301 CONCORDIA COURT
PO BOX 19293
SPRINGFIELD IL 62794-9293

(217)557-6010          425402

This statement is to advise you that we have completed our underwriting on the above employee for the following life insurance coverage increase requests. If any requests are still in process, you will be notified of our decision on a future statement.

| Name of Applicant | Coverage Type | Coverage Amount | Decision | Date |
|---|---|---|---|---|
| Shawnetta Graham | Employee Optional Life | | Declined | 06/03/2008 |

To maintain confidentiality, specific details on any denied coverage types will be explained in a separate letter to the member.

Members are advised to contact the Group Insurance Representative at the employing agency (indicated at the top of this letter) for the effective date of the approved coverage. Please note: The amount being underwritten will be effective the date of the decision, or according to the plan's rules, whichever is later (for example, if applying during an annual enrollment, it may be delayed until the effective date of the enrollment). You must be actively employed in an eligible class on the effective date of the approved coverage in order for it to become effective. If you are employed in an eligible class, but are not actively at work due to sickness or injury, your coverage may be delayed until you return to active work.

Thank you for allowing us to assist you with your insurance needs. If you have any questions regarding the decision of your coverage, please contact our Underwriting Department by calling 1-800-872-2214. Other questions concerning your life insurance may be directed to our Springfield Branch Office by calling 1-888-202-5525 or (TDD/TTY) 800-526-0844.

Cc: Group Insurance Representative

EMPLOYEE COPY

F56949 Rev 5-2007 - NOTIL

| | |
|---|---|
| Shawnetta T. Graham | ) |
|      Plaintiff, Pro Se | ) |
|   -VS- | ) |
| | )   **United States District Court** |
| **State of Illinois and the Illinois Department** | )   **Northern District of Illinois** |
| **Of Corrections,** | ) |
|      Defendants | )     **Honorable Judge** |
| | )     **Der Yeghiayan** |
| | ) |
| | )   **Civil Action #: 07 C 7078** |

# EXHIBIT

# 13

## CUNA Mutual Group letters

**ℛ CUNA MUTUAL GROUP**

*CUNA Mutual Insurance Society*

June 2, 2008

SHAWNETTA T GRAHAM
1101 ASSELL AVE
AURORA IL 60505-1704

Re:  NJ6529947

Dear Ms. GRAHAM:

Thank you for your application for credit union member life insurance with CUNA Mutual Insurance Society.

We appreciate the opportunity you gave us to consider your application.  Based on your treatment for diabetes with some neuropathy in the feet, we are unable to provide the coverage you have requested.  A refund check for $1.00 has been mailed separately.

We regret that a certificate could not be issued.

Sincerely,

*Sue Huber*

Sue Huber
Credit Union Member Services

Form 1693CU-D



| | DATE | AMOUNT |
|---|---|---|
| | 06/03/2008 | $1.00 |

PAY One & XX/100 US Dollar

TO THE     00124     LPR01 LPR8
ORDER OF  SHAWNETTA T GRAHAM
          1101 ASSELL AVE
          AURORA   IL   60505-1704

_Authorized Signature_

⑈⋮000 2637337⋮⑈ ⑆041203824⑈ 960000659⋮⑈

# R. CUNA MUTUAL GROUP

*CUNA Mutual Insurance Society*                    Questions regarding this payment call 800/779-5433.     W2

| Invoice Number | Invoice Date | Voucher ID | Agreement Number | Claim Number | Paid Amount |
|---|---|---|---|---|---|
| 51NJ6529947 | 06/03/2008 | 00837086 | 51NJ6529947 | | 1.00 |

5SH MISC./PREMIUM REFUND

NOTE: INFORMATION REGARDING THIS DISTRIBUTION HAS BEEN SENT SEPARATELY.

FOR QUESTIONS, PLEASE CONTACT OUR MEMBER SERVICES TEAM AT 1-800-779-5433.

| Check Number | Check Date | Payee | Name | Total Amount |
|---|---|---|---|---|
| 0002637337 | 06/03/2008 | LPR01SPCHK | SHAWNETTA T GRAHAM | $1.00 |

010-1531-011

| | |
|---|---|
| **Shawnetta T. Graham** | ) |
| **Plaintiff, Pro Se** | ) |
| **-VS-** | ) |
| | ) **United States District Court** |
| **State of Illinois and the Illinois Department** | ) **Northern District of Illinois** |
| **Of Corrections,** | ) |
| **Defendants** | ) **Honorable Judge** |
| | ) **Der Yeghiayan** |
| | ) |
| | ) **Civil Action #: 07 C 7078** |

# EXHIBIT
# 14

**Letter to Superintendent of School Dr. Walls**

# MEMORANDUM

Date: August 13, 2008

TO: LENA A. Walls, Superintendent of School for the Illinois Dept.
Of Juvenile Justice for School District # 428

From: Shawnetta T. Graham, Library Associate at Illinois Youth Center Warenville
for IDJJ

Subject:  School Assessment up date

Your first newsletter was very warm and I have been with the Juvenile Division
since May of 1994 and I have never received such a warm newsletter.

I am writing this memo to let you know that sometimes working for the School
District #428 which is headed by certified school personnel is difficult for some
school employees because there is the present of double authority with in the facility,
or the influence of other departments. A school district employee can develop a
program for an exceptional incarcerated youth but management who might have
little or no educational foundation course work can and will develop something or
try to implement something that does not work in a school setting for incarcerated
female youths. This is a hard task to handle, because the school district employee is
the one who works daily with the incarcerate youth in the school setting.

Example: I started during book summary in 2004 and the statistics are the following:
Since the year 2004 to school week which ended August 06, 2008 the female youths
have submitted the total of 7330 book summaries.

(The school week start from Thursday to Wednesday)

Someone in another department or management might think that the book
summaries are too easy or they should be worth fewer positives. Someone in another
department or management might feel that it is a lot of copying out of books.
Someone in another department or management might feel like they are not really
reading.

Defense: It takes some youths longer to read. It takes more than one day to read a
book. Sometimes the youths read in the dark. Some of the youths have programs all
day or work and are exhausted at the end of the day. Some youth's team read like
educators team teach.

As a library manager, who have many years of experience working with individuals with social illness, and when I hear a 17 year old youth say I dropped out of school at 12 years old and I am trying to get my 8th grade diploma. When I get a youth in the library who does not know one book title or how to find a copy right date, publisher, etc... At the end of the completion of the youth's court sentence I look up their book summaries chart to see how many book summaries they have submitted. This is when I discovered that the youth who know little have learned about books and the components of a book.

I start off with small goals and hope that when a youth is release they can and will continue the art of reading. When setting goals for trouble youths, I expect dishonesty and other things that are associated with social illness. If you know you helped one youth during your juvenile justice career, you have done great services to society.

STATE OF ILLINOIS—DEPARTMENT OF CORRECTIONS

ADULT AND JUVENILE DIVISIONS

INCIDENT REPORT

Institution / Program: _IYC- Warrenville - Library_   Date and Time of Incident: _5-22-08 - 3:30pm._

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES: ☐ NO: ☑  B. Were Restraints/ Force Used: YES: ☐ NO: ☑  C. Was Property Damaged: YES: ☐ NO: ☑

D: Have Apprehension Unit and / or Law Enforcement Agencies Been Notified : YES: ☐ NO: ☑   E. Were Arrests Made: YES: ☐ NO: ☑

F. Any Injuries / Hospitalizations: YES: ☐ NO: ☑   G. Were there Media Inquiries:  YES: ☐  NO: ☑

| Inmates / Staff Involved: Name | I.D.# | Offense | Commitment Date | Witnesses to Incident: Name | I.D.# |
|---|---|---|---|---|---|
| Mendoza, ASP | | | | | |

Statement of Facts: (NARRATIVE) _Since the year 2004 the IYC Warrenville Special library for exceptional children and young adults has offered the female youths and reading incentive that allow the youths to submit a book summary for 6 positive if the book summary comply with basic guidelines. Since 2004 to the school week of 5/9/08 there have been a total of 6859 book summaries submitted by IYC Warrenville female youth. As of May 1, 2008 a new rule has been applied to how positives are issued for female youths. This new rule is and has caused undue emotional stress on the female youths. This new rule has caused an increase in the use of copy paper, since the youths must now submit multiple book summaries to earned positives to make their level. This rule has caused and exceptional youth to over kill theirself in reading for enjoyment. If an Assuming comprehension is not being applied. In this control environment where the youths are rushed everyday to and from programs. They are rushed for their personal time. They have no control of there rights in_

_Shawntti Latham_  _5-22-08_  _3:45pm_
Reporting Employee    Date/Time          Person Calling in Report          Person Accepting Report          Date/Time

Administrative Assessment: _____

_____

_____

Chief Administrative Officer _____ Date/Time _____

Distribution:  Director
              Deputy Director of Appropriate Division          Legal Services (only if restraints/force used)
              Deputy Director of Bureau of Inspections and Audits    File



their room. When a youth reads for enjoyment this is an activity which goes above and beyond the requirement of what the standard for positive behavior. It takes a youth to read a book more than one day in this control setting. This is why I give 14 days to return a checked out library book. Each day a youth reads is a positive.

I am requesting that this new rule be discontinued in a Special library setting for trouble youths who have Special needs. All the female youths are a product of a Special Education Policy due to the fact of their Social illness and behavior. Some of them are official label needy for Special Education which is enforced by U.S. Department of Education.

Please make situation whole, because such a rule has made the library manager write additional positives with extra details, and the library setting has no direct technology in the library area. Plus, there is no online positive database in the facility that is offered to the library Manager.

$\frac{2}{2}$

| | |
|---|---|
| Shawnetta T. Graham | ) |
|       Plaintiff, Pro Se | ) |
|   -VS- | ) |
| | )   **United States District Court** |
| State of Illinois and the Illinois Department | )   **Northern District of Illinois** |
| Of Corrections, | ) |
|       Defendants | )     **Honorable Judge** |
| | )     **Der Yeghiayan** |
| | ) |
| | )   Civil Action #: <u>07 C 7078</u> |

# EXHIBIT

# 15

**Notice to defendant for the propose amendment of the case caption**

# MEMORANDUM

## DATE: AUGUST 3, 2008

## TO: DEFENDANTS & DEFENDANT'S ATTORNEY

## FROM: SHAWNETTA T. GRAHAM, PETITIONER

## SUBJECT: AMENDMENT OF CAPTION OF THE CASE

*Civil Action: 07-C-7078*

This memo is to inform you that in the petitioner's sur-reply brief which will be filed before or on <u>August 16, 2008</u> in the United States District Court will further support and request to allow the motion to amend her filed complaint which was filed on <u>December 17, 2007</u> to include the following in the caption of the case:

State of Illinois, Illinois Department of Corrections, State of Illinois Department of Central Management Services, Illinois Department of Corrections School District # 428, Governor of Illinois Rod R. Blagojevich, Director of the Illinois Department of Corrections Roger E, Walker Jr., Warden Jeffery Bargar of Illinois Youth Center Warrenville, Assistant Warden of Programs Margarita Mendoza of Illinois Youth Center Warrenville, Assistant Warden of Operations Wendy Blank- Navarro of Illinois Youth Center Warrenville, & School Principal for Illinois Department of Corrections School District #428  for Illinois Youth Center Warrenville Cynthia N. Miller

Each party attorney will receive a copy of the amended complaint; if this is not acceptable please inform me as soon as possible. I will submit the amended complaint using <u>Local District Rule 4</u> which will request you to sign a Wavier of Service of Summons. The Illinois Governor and the acting Director of CMS will be served separately, unless I am notified.

## CC:
Assistant Attorney General Colette A. Walsh
Vickie Fair, Illinois Department of Correction, Legal Dept.
Acting Director: Maureen T. O'Donnell of CMS
Rod R. Blagojevich, Governor of Illinois

| | |
|---|---|
| Shawnetta T. Graham | ) |
|     Plaintiff, Pro Se | ) |
|   -VS- | ) |
| | )   **United States District Court** |
| **State of Illinois and the Illinois Department** | )   **Northern District of Illinois** |
| **Of Corrections,** | ) |
|     **Defendants** | ) |
| | )   **Honorable Judge** |
| | )   **Der Yeghiayan** |
| | ) |
| | )   **Civil Action #: 07 C 7078** |

# EXHIBIT

# 16

**Medical Report of Colonoscopy plus Medical Report of Foot Exam**

**Patient: GRAHAM, SHAWNETTA**    **DOB: 06/06/1968**    **Sex: F**    **Medical Record #: 2657736**

---

**Service:** Surgical Pathology Report
**Date:** 05/19/2008 00:00
**Ordering Provider:** SATOSKAR,ROHIT

**Status:** Completed
**Changed:** 05/22/2008 09:02
**Report #:** S08-11424

**Attending Pathologist:** JOHN HART
**Resident Pathologist:**

Surgical Pathology Report

FINAL PATHOLOGIC DIAGNOSIS

Colonoscopic biopsies, rectum:
    - Consistent with mildly active inflammatory bowel disease. See comment.

Comment
Both biopsies exhibit diffuse crypt architectural distortion and lamina propria
inflammation.

sas
John Hart, M.D.
Interpretation performed by the Attending Pathologist and reviewed with the
Resident or Fellow.
Electronically Signed Out by John Hart, M.D.

Clinical History:
The patient is a 39 year old female who presents for colonoscopy for
hematochezia.  Findings include a diffuse area of moderately erythematous mucosa
in the rectum. External, mild hemorrhoids were found during retroflexion. The
exam was otherwise without abnormality.

Specimens Received:
A: Bx Rectum

Gross Description:
A. The specimen is received in a single container labeled with the patient's
name and medical record number and further designated "1. biopsy  colon,
rectum." Received in formalin are two tan, soft tissue fragments each measuring
0.4 cm.  The specimen is entirely submitted in cassette A1.

amc
Robin M. Biggs

---

## THE UNIVERSITY OF CHICAGO
## FOOT AND ANKLE CLINIC

Patient: Shawnetta Graham
MR #: 2657736
Account #: 300107422
Date: April 22, 2008

### DIAGNOSIS
Bilateral pes planovalgus deformity, ICD-9 code 736.79.

### SUBJECTIVE
The patient is a 39-year-old female that presents today for evaluation of new orthotics for bilateral feet. She was previously treated by a podiatrist and given orthotics in 2004, which she states have helped tremendously with her foot pain. She states that she gets pain in her feet without wearing the orthotics after ambulation. She was diagnosed on initial evaluation with a pes planovalgus deformity. She wears orthotics all day and additionally has 3/4-length orthotics for summer shoes, which she has tolerated well. She denies any interval fevers, chills or night sweats.

### PAST MEDICAL HISTORY
Significant for hypertension, iron-deficiency anemia, diabetes, irregular bowel movements and circulation problems are none.

### PAST SURGICAL HISTORY
Fibroid removed on December 14, 1999.

### MEDICATIONS
Diovan 320 mg p.o. daily, Levemir 22 units daily, Amitiza 24 mg as needed, iron supplements.

### ALLERGIES
No known drug allergies.

### SOCIAL HISTORY
The patient is single. She works as a library associate at the Illinois Department of Juvenile Justice. She denies any smoking or alcohol use.

### FAMILY HISTORY
Noncontributory.

### PHYSICAL EXAMINATION
On physical examination of bilateral feet the patient has neutral alignment of her hind feet bilaterally, slight valgus. Her forefoot is neutral on examination. She is able to do single heel rises bilaterally without any difficulty. She denies any medial or lateral-sided tenderness and no tenderness along her peroneal tendons or posterior tibial tendons bilaterally. She is distally neurovascularly intact.

### X-RAYS
No x-rays were obtained today.

### ASSESSMENT AND PLAN
The patient has bilateral pes planovalgus deformity, which is currently being well treated with orthotics. However, the patient wishes to get new orthotics, as they are almost 4 years old. We specified that she may have difficulties getting treated with new orthotics because she has been doing so well in her current

ones. However, she still wished to proceed. We gave her a prescription for both full-length and 3/4-length orthotics and will see her back on an as-needed basis.

Michael Angeline, M.D.
Resident to: Brian C. Toolan, M.D.

I have reviewed the resident's note. I interviewed and examined the patient to confirm the pertinent findings and I agree with the treatment plan outlined above.

*Brian C. Toolan m*

4/28/2008 9:39:51 PM

Brian C. Toolan, MD
Section of Orthopaedic Surgery

Dictated by: Michael Angeline, M.D.
D: 4/23/2008 9:54:47 AM
T: 4/25/2008 9:37:59 AM
TID: 6908995

| | |
|---|---|
| Shawnetta T. Graham | ) |
|      Plaintiff, Pro Se | ) |
|  -VS- | ) |
| | )   **United States District Court** |
| State of Illinois and the Illinois Department | )   **Northern District of Illinois** |
| Of Corrections, | ) |
|      Defendants | )     **Honorable Judge** |
| | )     **Der Yeghiayan** |
| | ) |
| | )   **Civil Action #: <u>07 C 7078</u>** |

# EXHIBIT
# 17

**Letter to Judge Der-Yeghiayan with attached documents**

| | |
|---|---|
| Shawnetta T. Graham | ) |
|       Plaintiff, Pro Se | ) |
|    -VS- | ) |
| | )   **United States District Court** |
| State of Illinois and the Illinois Department | )   **Northern District of Illinois** |
| Of Corrections, | ) |
|       Defendants | )     **Honorable Judge** |
| | )     **Der Yeghiayan** |
| | ) |
| | )   **Civil Action #: 07 C 7078** |
| | ) |
| | ) |
| | ) |
| | ) |

## A Letter to Honorable Judge Der Yeghiayan

This is a letter to let you know that if the plaintiff file to leave to amend complaint is allowed by the U.S. District Court Judge Der Yeghiayan, I will resubmitted the amended complaint to all parties which are noted in the caption of the new amended complaint. (See Exhibit 10) All defendants and their attorney will be asked to wave their rights of a former summons services due to the fact it would be costly for the plaintiff. The plaintiff has reached beyond her budget in order to present such an injustice of federal law. Once waivers are signed and returned to plaintiff in the self paid provided envelope the plaintiff will forward copies to the U.S. District Court Clerk Office. Please, retrieve your copy of such a wavier from the clerk office. Furthermore, Graham would like to communicate with you that she has done her best at her current level of legal knowledge. Graham can only retrieve what her damage brain and stressed body will allow her to retrieve. Graham do not have the time to answer every case the defendant attorney presents in a motion, reply, or sur-reply Graham has the time to present the court the factual truth. Graham would like to point out to the court that her budget has exceeded the limit of available funds to support this legal battle. <u>Rule 5 of the Federal Rules of Civil Procedure states: Filing with the Judge: Where the judge so permits, papers, may be "filed" with the judge directly, after which the judge is required to transmit the papers "forthwith to the clerk office" I am requesting that the judge file a copy of his courtesy copy of the attach sur-repy/legal memorandum with the U.S. District Clerk Office.</u> Currently, I have been unfairly suspending for 4 days because of an alleged violation of IYC Warrenville tardy policy. My time was set for 8:30 am not 8:00 am. My time sheet disappeared at previous facility which was IYC Valley View. Currently, CMS is investigating the issue, until the outcome I will be out about 800.00 or more. This has caused a financial hardship. (See Attached Documents)

# MEMORANDUM

**Date: July 26, 2008**

**TO: Governor Rod R. Blagojevich, for the State of Illinois**

**From: Shawnetta T. Graham (XXX-XX-1491)**

<u>Subject</u>: Special Need Employee needs review of terms and condition of start-time work hours, and work week.

I am writing this memo to request a review of my personnel's file. I was hirer to work with trouble youths in May 1994. When I was hirer Howard Peters III was the Director of Illinois Department of Corrections for the Adult Division and Juvenile Division. Because of my special needs, I was granted a start time of 8:30 am and flexible work hours. I started working at Illinois Youth Center St. Charles in May 1994 and I was transferred to Illinois Youth Center Valley View July 1994. In July 2002 I was transferred to Illinois Youth Center Warrenville. My time sheet disappeared at Illinois Youth Center Valley View, which was closed by Governor Ryan. Currently, I was told that I have violated the tardy polices at IYC Warrenville. I would like to prevent a situation where an unfair hearing determination is made by the hearing officer at Illinois Youth Center Warrenville. The hearing officer is <u>Susann Campana</u> and she can be reached at 630-983-6231 Ext. 305. My direct number is the same, but I can be reached at Ext. 262. Please give this situation your up most attention.

CC:
Susann Campana, Hearing Officer
John Blair, Chief Union Steward for Local 416
Sandi Ivemeyer, EFA for School District # 428
Superintendent M. McCoy, for Superintendent Jeffery Bargar

# MEMORANDUM

**Date: July 26, 2008**

**TO:  Director Roger E. Walker for the Illinois Department of Corrections**

**From: Shawnetta  T. Graham (XXX-XX-1491)**

**<u>Subject</u>: Special Need Employee needs review of terms and condition of start-time work hours, and work week**

I am writing this memo to request a review of my personnel's file. I was hirer to work with trouble youths in May 1994. When I was hirer Howard Peters III was the Director of Illinois Department of Corrections for the Adult Division and Juvenile Division. Because of my special needs, I was granted a start time of 8:30 am and flexible work hours. I started working at Illinois Youth Center St. Charles in May 1994 and I was transferred to Illinois Youth Center Valley View July 1994. In July 2002 I was transferred to Illinois Youth Center Warrenville. My time sheet disappeared at Illinois Youth Center Valley View, which was closed by Governor Ryan. Currently, I was told I have violated the tardy polices at IYC Warrenville. I would like to prevent a situation where an unfair hearing determination is made by the hearing officer at Illinois Youth Center Warrenville. The hearing officer is <u>Susann Campana</u> and she can be reached at 630-983-6231 Ext. 305. My direct number is the same, but I can be reached at Ext. 262. Please give this situation your up most attention.

CC:
  Susann Campana, Hearing Officer
  John Blair, Chief Union Steward for Local 416
  Sandi Ivemeyer, EFA for School District # 428
  Superintendent, M. McCoy, for Superintendent Jeffery Bargar

# MEMORANDUM

Date: July 26, 2008

TO: Acting Director Kurt C. Friedenauer, for the Illinois Department of Juvenile Justice

From: Shawnetta T. Graham (XXX-XX-1491)

Subject: Special Need Employee needs review of terms and condition of start-time work hours, and work week

I am writing this memo to request a review of my personnel's file. I was hirer to work with trouble youths in May 1994. When I was hirer Howard Peters III was the Director of Illinois Department of Corrections for the Adult Division and Juvenile Division. Because of my special needs, I was granted a start time of 8:30 am and flexible work hours. I started working at Illinois Youth Center St. Charles in May 1994 and I was transferred to Illinois Youth Center Valley View July 1994. In July 2002 I was transferred to Illinois Youth Center Warrenville. My time sheet disappeared at Illinois Youth Center Valley View, which was closed by Governor Ryan. Currently, I was told I have violated the tardy polices at IYC Warrenville. I would like to prevent a situation where an unfair hearing determination is made by the hearing officer at Illinois Youth Center Warrenville. The hearing officer is <u>Susann Campana</u> and she can be reached at 630-983-6231 Ext. 305. My direct number is the same, but I can be reached at Ext. 262. Please give this situation your up most attention.

CC:
  Susann Campana, Hearing Officer
  John Blair, Chief Union Steward for Local 416
  Sandi Ivemeyer, EFA for School District # 428
  Superintendent, M. McCoy, for Superintendent Jeffery Bargar

# MEMORANDUM

Date: July 26, 2008

TO: Acting Director, Maureen T. O'Donnell, for the Illinois Department of Central Management Services

From: Shawnetta T. Graham (XXX-XX-1491)

Subject: Special Need Employee needs review of terms and condition of start-time work hours, and work week

I am writing this memo to request a review of my personnel's file. I was hirer to work with trouble youths in May 1994. When I was hirer Howard Peters III was the Director of Illinois Department of Corrections for the Adult Division and Juvenile Division. Because of my special needs, I was granted a start time of 8:30 am and flexible work hours. I started working at Illinois Youth Center St. Charles in May 1994 and I was transferred to Illinois Youth Center Valley View July 1994. In July 2002 I was transferred to Illinois Youth Center Warrenville. My time sheet disappeared at Illinois Youth Center Valley View, which was closed by Governor Ryan. Currently, I was told I have violated the tardy polices at IYC Warrenville. I would like to prevent a situation where an unfair hearing determination is made by the hearing officer at Illinois Youth Center Warrenville. The hearing officer is Susann Campana and she can be reached at 630-983-6231 Ext. 305. My direct number is the same, but I can be reached at Ext. 262. Please give this situation your up most attention. Also, I would like a copy of my job title duties for the hiring job title for a Library Associate. I have been in this title since or close to 1995 to present. I was originally hirer as a Library Technical Assistant at the beginning of my career at Illinois Youth Center St. Charles.

CC:
  Susann Campana, Hearing Officer
  John Blair, Chief Union Steward for Local 416
  Sandi Ivemeyer, EFA for School District # 428
  Superintendent, M. McCoy, for Superintendent Jeffery Bargar



**Rod R. Blagojevich**
Governor

**Kurt C. Friedenauer**
Acting Director

# ILLINOIS
Department of Juvenile Justice



**IYC Warrenville, 30 W 200 Ferry Rd, Warrenville IL 60555**
**Phone: (630) 983-6231 / TDD: (800) 526-0844**

DATE:     August 6, 2008

TO:       Shawnetta Graham

FROM:     Sandi Ivemeyer, Educational Facility Administrator
          IYC Warrenville

RE:       AD 03.01.301 Affirmative Attendance – 6th & 7th tardy

I have been given a one-day suspension for the 6th offense of tardiness and a three-day suspension for the 7th offense of tardiness, per AD 30.01.301 Affirmative Attendance. Per the disciplinary suspension notices, these are to be served 6/11/08 – 6/14/08. You will return to work on 6/15/08.


_____          8-6-08
Shawnetta Graham                           Date


_____          08-06-08
Union Representative                       Date   2:35

cc: file
    Personnel

*I cannot serve this suspension; because it will cause financial hardship. I will not be able to pay my utilities and rent in full amount which is due. I have a cost of two legal cases, I will be short food and gasoline. I am requesting a delay or modification. Personally I think we should wait until CMS finish their investigation.*

# MEMORANDUM

Date: August 07, 2008

To:  Superintendent Bargar of Illinois Youth Center Warrenville

From: Shawnetta T. Graham, Library Associate

Subject: Days off with out pay for an employee with special needs

I would like to speak to you in the morning on <u>August 8, 2008</u> in your office. I would like to discuss a suspension which is schedule for <u>August 11, 2008</u> to <u>August 14, 2008</u>. I was hired in <u>May 2, 1994</u> and I was granted flexible hours a 8:30 am start time.  Recently, I wrote to CMS and my personnel file is under investigation. Suspending me with out pay will bring about a financial hardship and I will be short on food and gas money. Such a shortage will bring about stress and this will take a toll on my physical body and mind. My medication cost a lot of money and my gasoline bill is high. If the gasoline is under <u>$ 4.15</u>, my gasoline bill will run around <u>$80.00</u> to <u>$100.00</u> a month. This is the total to get me around town to work and back home. I go to the doctor in Chicago and visit family member is Chicago, and this will cause the gasoline bill to be higher. I have no spouse with me and I am my only provider. If CMS has not completed their investigation, I am requesting that the decision be reverse or put on hold until the final investigation is submitted. If you have to suspend me, I am requesting with pay. Since <u>March 2007</u> I have had additional legal fees which has caused money to be limit. <u>June 2006</u> my car was damage on grounds and I had to go into another car contract which was not planned. I am requesting you give me additional consideration.