# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SHAWNETTA T. GRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 7078 |
| | ) | |
| STATE OF ILLINOIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant State of Illinois' (Illinois), Defendant Illinois Department of Corrections' (IDOC), Defendant Illinois Department of Central Management Services' (CMS) (collectively referred to as "State Agency Defendants"), Defendant Rod R. Blagojevich's (Blagojevich), Defendant Director Roger Walker's (Walker), Defendant Warden Jeffery Bargar's (Bargar), Defendant Wendy Blank-Navarro's (Navarro), Defendant Margarita Mendoza's (Mendoza), and Defendant Cynthia Miller's (Miller) (collectively referred to as "Individual Defendants") motion to dismiss. This matter is also before the court on Defendant Illinois Department of Corrections School District Number 428's (School District) motion to dismiss. For the reasons stated below, we grant both motions to dismiss.

1

# BACKGROUND

Plaintiff Shawnetta Graham (Graham) alleges that she began working for the IDOC in May 1994 and since July 2002 has been employed as a Library Associate at the Illinois Youth Center (IYC), a juvenile detention facility, in Warrenville, Illinois. According to Graham, on or about January 6, 2004, Graham slipped on ice in the parking lot at the IYC. Graham alleges that, as a result of the accident, she suffers from chondromalacia, which causes sudden weakness and pain in the knees and ankles. Graham allegedly filed a claim under the Illinois Worker's Compensation Act and settled the claim with her employer on June 29, 2005.

Graham claims that on or about July 1, 2004, while at work her knees "gave out" and she was forced to walk in a "crunch position" to the nurse's station. (S.A. Compl. Par. 13). Graham alleges that despite her requests "in a helpless manner" for walking assistance from her supervisor, the supervisor and the staff failed to come to her aid. (S.A. Compl. Par. 14).

In addition, on or about August 18, 2004, Graham alleges she was making copies at work and experienced pain in her ankles. Graham allegedly received medical treatment that day and returned to work the next day with a note that stated Graham should avoid prolonged standing or walking. Graham alleges she later received additional medical treatment and went to work on August 23, 2004, with another note, this time stating that Graham could not walk or stand for longer than five minutes while at work and should remain seated. Graham alleges at the end of her work day on August 23, 2004, Miller, who was her supervisor, informed Graham

that, if she had such physical restrictions, Graham would be required to go on medical leave due to her work limitations.  On August 24, 2004, Graham allegedly returned to work with a union representative and was told she must go on a leave of absence until her physicians cleared her to work with fewer restrictions.  Graham claims that she was shown a copy of an IDOC policy, which stated that employees must be capable of standing or walking for at least sixty minutes.  Graham alleges that on August 26, 2004, she did return to work with a doctor's note that allowed her to walk and stand for up to an hour at a time.  According to Graham, on September 9, 2004, Graham presented her supervisor with a statement from her doctor indicating that she would need to take a short medical leave and that she would be recovering from her injury at home.  However, Graham alleges that she nonetheless reported back to work with special kind of shoe which allowed her to walk and stand at work.

Graham claims that on November 14, 2004, she filed her charge of discrimination with the Illinois Department of Human Rights (IDHR) and cross-filed this charge with the Equal Employment Opportunity Commission (EEOC), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (ADA).  Her claim was allegedly dismissed by the EEOC and IDHR in September 2005.  (S.A. Compl. Par. 19).

Graham filed the instant action *pro se* on December 17, 2007.  After Defendants filed a motion to dismiss we gave Graham an opportunity to file an amended complaint and a second amended complaint.  When we liberally construe

Graham's *pro se* second amended complaint, Graham appears to be bringing claims under 42 U.S.C. § 1981 (Section 1981), 42 U.S.C. § 1983 (Section 1983), 42 U.S.C. § 1985 (Section 1985), Title VII claims, and ADA claims. Defendants have again moved to dismiss all claims.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dept. of Prof. Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). In order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' and 'if they do not, the plaintiff pleads itself out of court.'" *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)). Under the current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology,*

*Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "'provide the defendant with at least minimal notice of the claim,'" *Kyle*, 144 F.3d at 455 (quoting *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995)), and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of her claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

## DISCUSSION

### I. Graham's Second Amended Complaint

Graham brought the instant action *pro se*. After Defendants filed a motion to dismiss the instant action, the court granted Graham's request for leave to file a second amended complaint to clarify her claims. In Graham's second amended complaint, she has included a jurisdictional section in which she has cited several

federal statutes, a fact section which consists of a narrative of the events that she alleges occurred in this case, and finally a prayer for relief section in which she requests various monetary awards for pain and suffering. Graham also requests an order from the court instructing the EEOC to conduct further investigation into her prior complaint. The Seventh Circuit has stated that "pro se complaints are to be liberally construed and not held to the stringent standards expected of pleadings drafted by lawyers." *See McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). Graham has not set out her claims in individual counts. However, when we liberally construe Graham's second amended complaint, Graham is attempting to plead claims under Section 1981, Section 1983, Section 1985, Title VII, and the ADA.

## II. Section 1981 and Section 1985

In addition to citing or referencing Section 1983, Title VII, and the ADA, Graham has also cited to 42 U.S.C. § 1981 (Section 1981) and 42 U.S.C. § 1985 (Section 1985) in the second amended complaint. Section 1981 prohibits discrimination on the basis of race in entering into contracts. 42 U.S.C. § 1981. Section 1985 prohibits a "conspiracy to deprive another of equal protection under the law" and, like Section 1981, Section 1985 applies only to actions "motivated by racial, or other class-based discriminatory animus." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008); 42 U.S.C. § 1985. Outside of Graham's citation to these statutes

at the outset of her second amended complaint, there is nothing in Graham's second amended complaint that would suggest that Graham intends to bring claims either under Section 1981 or Section 1985. While Graham does refer to herself in the second amended complaint as a "Mix-Breed; African Indian," (S.A. Compl. 2), Graham does not refer to any race-based discrimination throughout her factual narrative or any other portion of her second amended complaint. Graham's second amended complaint clearly premises her claims on the on-the-job injury Graham allegedly suffered and her employer's alleged indifference or treatment of her with respect to and in light of that alleged injury. Therefore, to the extent that Graham's second amended complaint refers to claims under Section 1981 and Section 1985, Graham has not pled operable facts to plausibly suggest that she has a right to relief on such claims. *Concentra Health Serv., Inc.*, 496 F.3d at 776. Thus, to the extent Graham intends to plead claims under Section 1981 and Section 1985 we grant Defendants' motion to dismiss with respect to such claims.

III. Title VII

Graham cites and refers to Title VII throughout her second amended complaint as a basis for her claims. However, Defendants argue that Graham has failed to state a claim under Title VII against any Defendant. As an initial matter, Defendants correctly point out that Graham cannot possibly state a claim under Title VII against any Defendant other than the IDOC, her employer. *See Alexander v. City of*

*Milwaukee*, 474 F.3d 437, 454 n. 16 (7th Cir. 2007)(noting that Title VII "is a source of liability only for an employer"); 42 U.S.C. § 2000e-2 (defining unlawful employment practices for employers). Defendants further point out that even with respect to the IDOC, Graham has failed to state a claim under Title VII since nothing in her second amended complaint suggests that Graham is alleging discrimination on the basis of Graham's "race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2. As discussed above, a careful review of Graham's *pro se* second amended complaint reveals that the instant action is based on an alleged "violation [that] occurred because of [Graham's] disability. (S.A. Compl. Par 8). A plaintiff cannot survive a motion to dismiss by merely citing to a statute in a complaint, in the absence of pleading operative facts to "'provide the defendant with at least minimal notice of the claim.'" *Kyle*, 144 F.3d at 455 (quoting *Jackson*, 66 F.3d at 153-54); *Perkins*, 939 F.2d at 466-67 (stating that a plaintiff cannot successfully plead a claim "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [her] claims"). We agree with Defendants that Graham has failed to state a claim under Title VII since she has included no allegations of discrimination or retaliation on the basis of a protected class under Title VII. 42 U.S.C. § 2000e-2. Therefore, to the extent that Graham's second amended complaint can be liberally construed as asserting claims under Title VII, we find that Graham has failed to state a claim under Title VII, and we grant Defendants' motion to dismiss with respect to such claims.

IV. Section 1983

Graham also cites to Section 1983 in the second amended complaint without indicating against which Defendants she is bringing such claims. Defendants argue that Graham has failed to state a valid claim under Section 1983, that Graham's Section 1983 claims are time-barred on the face of the second amended complaint, and that Defendants are protected by immunity under the Eleventh Amendment. Section 1983 is "not itself a source for substantive rights," but rather provides a means to enforce "deprivation of any rights, privileges, or immunities" by "persons." *Bublitz v. Cottey*, 327 F.3d 485, 488 (7th Cir. 2002); 42 U.S.C. § 1983. Illinois and the State Agency Defendants are not considered "persons" amenable to suit under Section 1983. *Fairly v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007)(stating that "[s]tate agencies are not 'persons' under § 1983"); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989); *Kelly v. Mun. Cts. of Marion County, Indiana*, 97 F.3d 902, 907-08 (7th Cir. 1996). Furthermore, individual defendants who are not named in their individual capacity, but rather named in their official capacity, are considered to be the State itself and are also ineligible to be sued under Section 1983. *Cavel Intern., Inc. v. Madigan*, 500 F.3d 544, 546 (7th Cir. 2007)(stating that "a suit against state officials in their official capacity is treated as a suit against the state itself"). We note that Graham has not included any allegations of a policy or custom on the part of the State or State Agency Defendants that might support a *Monell* claim. *See Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008)(stating

that for a Section 1983 *Monell* claim, a plaintiff must establish: "(1) an express policy that, when enforced, causes a constitutional deprivation; or (2) that the constitutional injury was caused by a person with final policymaking authority"); *see also Campbell v. Miller*, 499 F.3d 711, 720 (7th Cir. 2007)(stating that for a *Monell* claim a plaintiff must show that the misconduct resulted from "'(1) the enforcement of an express policy of the City, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority'")(quoting *McCormick v. City of Chicago,* 230 F.3d 319, 324 (7th Cir. 2000)).

Graham has sued a number of individuals without indicating whether those individuals are being named in their individual or official capacities. Graham need not specify the capacities in which she is naming the individual Defendants in her second amended complaint and the court can infer from the allegations in the second amended complaint that a particular defendant is being sued in their individual capacity. *See Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001)(stating that the "omission of the phrase 'individual capacity' . . . does not necessarily render [a suit] solely an official capacity suit"). *Id.* However, in this case, the allegations in the second amended complaint suggest that the vast majority of the Individual Defendants are named in their official capacity. As Defendants point out, with respect to all of the Individual Defendants with the exception of Miller, there are no allegations of any personal involvement that plausibly suggest a right to relief against

these Defendants in their individual capacities. Therefore, to the extent that the Individual Defendants are named in their official capacities with respect to Graham's Section 1983 claims, Graham has failed to state a claim against such Defendants.

Defendants also point out that Graham's Section 1983 claims against the State, the State agencies, and the Defendants named in their official capacities could also be dismissed based on the doctrine of sovereign immunity under the Eleventh Amendment. The Eleventh Amendment immunizes the states from private damages actions. *Kroll v. Bd. of Trustees of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991). State agencies are included in this immunity so long as they are considered to be "an arm of the State." *See Alden v. Maine*, 527 U.S. 706, 756 (1999)(holding that lesser governmental entities that are not considered to be "an arm of the State" are not entitled to sovereign immunity); *see also Kroll*, 934 F.2d at 907 (stating that "a state agency *is* the state for purposes of the eleventh amendment")(emphasis in original). There are three exceptions to sovereign immunity under the Eleventh Amendment: (1) "suits against state officials seeking prospective equitable relief for ongoing violations of federal law . . . under the *Ex Parte Young* doctrine," (2) suits directly against states "if Congress has abrogated the state's immunity from suit through an unequivocal expression of its intent to do so," and (3) "suits against a state that has properly waived its sovereign immunity and consented to suit in federal court." *MCI Telecom. Corp. v. Illinois Comm. Com'n*, 183 F.3d 558, 563 (7th Cir. 1999). None of the exceptions apply in the instant action since Illinois has not waived its

sovereign immunity and Congress has not abrogated that immunity. *See Kroll*, 934 F.2d at 909 (stating that Congress has not abrogated the states' sovereign immunity, even in the context of Section 1983). Also, the allegations in the second amended complaint do not indicate that Graham is seeking prospective equitable relief for ongoing violations of federal law, which would allow her claims to survive under the *Ex Parte Young* doctrine. *Id.* at 908-09. Therefore, any Section 1983 claims against Illinois, the State Agency Defendants, and the Individual Defendants named in their official capacity could also be dismissed under the doctrine of sovereign immunity.

Finally, even to the extent that Graham has brought Section 1983 claims against any of the Defendants in their individual capacities, Defendants argue that such claims are barred by the statute of limitations. In general, "a federal complaint need not anticipate or overcome affirmative defenses such as the statute of limitations." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). A Rule 12(b)(6) dismissal on the basis of an affirmative defense may be only appropriate "when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense." *Id.* Defendants argue that Graham has pled herself out of court since, on the face of Graham's second amended complaint, her actions under Section 1983 are barred by the statute of limitations.

Graham's second amended complaint alleges that the discriminatory conduct by Defendants occurred in 2004. The applicable statute of limitations for claims under Section 1983 in Illinois is two years. *Kelly v. City of Chicago*, 4 F.3d 509, 511

(7th Cir. 1993); *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 775 (7th Cir. 1995). Defendants further point out that, according to Graham's second amended complaint, Graham had knowledge that her rights were violated by November 2004 at the latest, the date Graham filed her complaint with the IDHR. Thus, Defendants argue that the latest date by which Graham could have brought her claim was November 2006. Graham did not file the instant action until December 2007.

The Seventh Circuit has stated that dismissal is appropriate where "the allegations of the complaint itself set forth everything that is necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005); *see also Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 670 (7th Cir. 1998)(upholding a dismissal on the basis of a statute of limitations based on the fact that the plaintiff's complaint established that the plaintiff had constructive notice of its claims more than one year before it brought securities fraud claims). On the face of Graham's second amended complaint, Graham had knowledge of the wrongs that she alleges more than two years prior to bringing suit. Since Graham was aware of her claims and there are no circumstances by which her claims could have been tolled under the applicable statute of limitations, Graham's second amended complaint conclusively indicates that her claims under Section 1983 are barred by the statute of limitations. Therefore, we grant Defendants' motion to dismiss with respect to Graham's Section 1983 claims.

<u>V. ADA Claims</u>

Defendants also move to dismiss any claims brought by Graham under the ADA arguing Graham has pled herself out of court given that the allegations in her second amended complaint establish that she cannot succeed on her ADA claims. As an initial matter, Defendants correctly point out that, as with Graham's Title VII claims, Graham's ADA claims against every Defendant except the IDOC would fail by virtue of the fact that such Defendants were not Graham's "employer" under the definition set out in the ADA. 42 U.S.C. § 12112(a)(prohibiting employers from discriminating against employees based on a disability).

There are two types of claims under the ADA: (1) disparate treatment claims and (2) failure to accommodate claims. *Wright v. Illinois Dept. of Corrections*, 204 F.3d 727, 730 (7th Cir. 2000). Graham states in her second amended complaint that "[t]he defendant is being charged for failure to accommodate the plaintiff." (S.A. Compl. Par. 8). Graham includes numerous other statements in her second amended complaint indicating that she is seeking to proceed under a failure to accommodate claim and she has not plausibly suggested a disparate treatment claim. *See Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1021 (7th Cir. 1997)(stating that an ADA disparate treatment claim requires the plaintiff to show that the employer "treat[ed] 'a qualified individual with a disability' differently because of the disability")(quoting in part *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1283 (7th Cir. 1996)); *Winsley v. Cook County*, 563 F.3d 598, 603 (7th Cir. 2009)(stating that to

establish a disparate treatment claim under the ADA "an employee must show: '1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation'")(quoting in part *Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000)). Graham alleges that the IDOC failed to provide a reasonable accommodation to her since she was not provided with proper assistance and adequate medical treatment on July 1, 2004, which is the date that Graham alleges her knees "gave out." (S.A. Compl. Par. 13). Graham also alleges that the IDOC failed to accommodate her disability in violation of the ADA when she was placed on medical leave for five hours on August 25, 2004, and for part of the day on September 9, 2004.

To succeed on a claim for failure to accommodate under the ADA, a plaintiff "must show: "'(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability.'" *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008)(quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)). Graham alleges that she suffers from chondromalacia, which she claims constitutes "an everlasting impairment." (S.A. Compl. Par. 20)(emphasis omitted). Defendants argue that Graham has pled herself out of court since on the face of Graham's pleadings it is clear that the IDOC was not aware of Graham's disability on July 1, 2004, and since

the allegations in the second amended complaint establish that the IDOC did not fail to reasonably accommodate Graham's chondromalacia at any time. We note that Defendants do not contend, as they did in the first motion to dismiss, that Graham has failed to allege that she suffers from a disability as defined by the ADA.

We agree with Defendants that Graham has pled herself out of court with respect to her ADA failure to accommodate claim. *Hollander*, 457 F.3d at 691 n.1. Graham's allegations that her co-workers refused her request for assistance when she was allegedly injured on July 1, 2004, is not actionable under an ADA failure to accommodate claim. As Defendants point out, Graham alleges that she was not diagnosed with her alleged disability until July 19, 2004, which means that the IDOC could not have failed to accommodate a disability it was not aware of on July 1, 2004. (S.A. Compl. Par. 15).

With respect to Graham's allegation that the IDOC's leave requirements failed to accommodate her alleged disability, Graham has also pled herself out of court since the detailed narrative in Graham's second amended complaint establishes that the IDOC did provide a reasonable accommodation for Graham's injury. Specifically, Graham alleges that on August 25, 2004, she had a meeting with Miller in which Miller informed Graham that it was the policy of the IDOC that employees who were unable to stand or walk for a period of sixty minutes would be required to take medical leave. (S.A. Compl. Par. 16). Graham alleges that because her medical condition prohibited her from standing or walking for a period of sixty minutes,

Miller asked Graham to request medical leave, which Graham did in writing. (S.A. Compl. Par. 17). Graham alleges that Miller informed her that she could only work if she had a note from a doctor indicating that Graham could stand or walk for a period of sixty minutes. (S.A. Compl. Par. 17). Graham alleges that she returned to work on August 26, 2004, with a note from her doctor indicating that she was capable of standing or walking for a period of sixty minutes and she was permitted to return to work. (S.A. Compl. Par. 18). Graham alleges that on September 9, 2004, she again requested medical leave, which she was permitted to take. (S.A. Compl. Par. 22). Nowhere in Graham's second amended complaint does Graham contend that she was not permitted to take medical leave when requested, and it is not contended that Graham was disciplined or fired for taking medical leave.

Graham's only grievance in this case is that she was not paid for the five hours that she was on medical leave on August 24, 2004, and that she was required to use less than one day of vacation time when she was on medical leave on November 9, 2004. (S.A. Compl. Par. 22). However, we agree with Defendants that Graham's allegations clearly indicate that Graham was provided with reasonable accommodation for her alleged disability. On the face of Graham's second amended complaint, it is clear that Graham was permitted to come to work as long as she was medically able to stand or walk for sixty minutes. On occasions where Graham was unable to stand or walk for a period of sixty minutes, Graham's second amended complaint clearly indicates that Graham was permitted to take medical leave.

Graham also alleges that she was provided with special privileges such as a handicapped parking space at work.  (S.A. Compl. Par. 14).  The ADA includes a non-exhaustive list of reasonable accommodations, which includes "part time or modified work schedules."  42 U.S.C. § 12111(9)(B).  Even though an employer's failure to accommodate a reasonable request for medical leave may violate the ADA, there is nothing in the ADA that requires an employer to provide paid medical leave.  42 U.S.C. § 12111(9).  Therefore, we find that since on the face of Graham's second amended complaint it is clear that the IDOC did not fail to make a reasonable accommodation for a disability of which they were aware, Graham has pled herself out of court on her ADA claims and we grant Defendants' motion to dismiss on those claims.

VI. State Law Claims

Graham states repeatedly in her second amended complaint that the claims she is bringing in the instant action are federal in nature and Graham has not referenced any state law claims.  However, to the extent that Graham's claims could be liberally construed as asserting a cause of action under Illinois law, this court would be required to determine whether the court should exercise supplemental jurisdiction over the remaining state claims, in light of the fact that we have dismissed the federal claims in the instant action.  Once the federal claims in an action no longer remain, a federal court has discretion to decline to exercise supplemental jurisdiction over any

remaining state law claims. *See Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1252 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial," the pendent claims should be left to the state courts); *Dargis*, 526 F.3d at 990 (stating that "district courts should exercise this discretion to relinquish jurisdiction over state law claims that remain after the dismissal of federal claims unless any of the following three circumstances exists: (1) the state law claims may not be re-filed because a statute of limitations has expired, (2) substantial judicial resources have been expended on the state claims, or (3) it is clearly apparent how the state claims are to be decided"). The Seventh Circuit has stated that there is no "'presumption' in favor of relinquishing supplemental jurisdiction" and that a court should retain jurisdiction where a statute of limitations would bar future suits, where "substantial federal judicial resources have already been expended on the resolution of the supplemental claims," and "where it is obvious how the claims should be decided." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-907 (7th Cir. 2007). The Seventh Circuit has further stated that in exercising that discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources." *Timm v. Mead Corp.*, 32 F.3d 273, 276 (7th Cir. 1994).

We have considered all of the pertinent factors and, as a matter of discretion, we decline to exercise supplemental jurisdiction over any state law claims that could

possibly be liberally construed from Graham's second amended complaint. *Dargis*, 526 F.3d at 990 (stating that "regarding state claims, state courts can provide a better forum when the issue being considered is a state actor's compliance with state law").


## VII. School District's Motion to Dismiss

The School District has also filed a motion to dismiss pursuant to Rule 12(b)(6) and Federal Rule of Civil Procedure 17(b), arguing that it is not an entity amenable to suit. The School District points out that it is not a separate legal entity from the IDOC. *See Peirick v. Indiana University*, 510 F.3d 681, 694 (7th Cir. 2007)(indicating that a named Defendant that is not a separate legal entity from a larger entity is not capable of being sued); *see also West By & Through Norris v. Waymire*, 114 F.3d 646-47 (7th Cir. 1997)(stating that "[t]he naming of the Town's Police Department as a defendant adds nothing; it is almost certainly not a suable entity separate from the Town"). The School District also notes that the only place that it is mentioned in Graham's second amended complaint is in the caption and Graham has pled no facts to plausibly state a claim against the school district, even if it were a suable entity. We agree and grant the School District's motion to dismiss.

## CONCLUSION

Therefore, based on the forgoing analysis, we grant the motions to dismiss.


_Samuel Der-Yeghiayan_
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   June 3, 2009